

## II Tyler PD

### 1. Absolutely Ridiculous Reports

(a) 16-027647 [20161112 1629]
  (1) 3 subjects reported the defendant and his friend for verbal altercation.
  (2) 3 subjects reported the defendant and his friend because they got offended, in anyway shape or form not an emergency.

(b) 17-017153 [20170814 1719]
  (1) The defendant was warned away from Super Cuts in Tyler TX by Phyllis Ford due to offensive topic of conversation.
  (2) Defendant was warned away from Super Cuts for having a reputation as a gun owner and talking about controversial issues. No emergency has occured.

(c) 17-024316 [20171125 1648]
  (1) Tobin called Tyler PD due to feeling uneasy and uncomfortable at the defendant.
  (2) Tobin asked the defendant a reason for notary. The defendant mentioned lawsuit. Tobin called the police because he felt "uncomfortable". Tyler PD then encouraged Tobin's behavior.

(d) 17-025732 [20171214 1411]
  (1) Monty Ethridge noticed the defendant and called the law enforcement.
  (2) Defendant was reported and warned away from Panera Bread because of the defendant's reputation, presence, and a private convo the defendant had on the phone regarding President Trump on previous day.

2. Maliciously Fraudulent Reports

  (a) 16-024598 [20161012 1755]
    (1) Homer responds to Target call of a wayward customer, speaks to Ashley Weeks, who accuses the defendant of making terroristic threats. No other person heard such threat.
    (2) Customers called LE on the defendant for making them feel uncomfortable by telling people to vote Trump for 2016 election. Ashley Weeks then maliciously and fraudulently accused the defendant that he made terroristic threats against all black people in the store.

  (b) 16-026535 [20161106 1225]
    (1) Hill documents a report on defendant regarding terroristic threat against the police and for BLM.

(2) The defendant is against BLM and had always been respectful to LE. This is a complete opposite of defendant's views. (Notice the caller wanted to remain anonymous.

(c) 16-02947 [20161213 0030]
(1) 3 friends have an altercation. Chavez reports assault.
(2) The defendant has never assaulted Chavez, intact the defendant stopped Lack from going overboard. Also Chavez assaulted Lack first.

(d) 17-01754 [20170818] [1238]
(1) Defendant reported for having radical political views during ~~[illegible]~~ uber ride. FBI office at Tyler tells Tyler PD that the defendant visits their office monthly and reports that he is being followed, and that the defendant has mental problems.
(2) Eric Polcotter ~~failed to recall~~ what the defendant said, to be almost a threat level. [made it appear] The defendant has never been to Tyler FBI office, and only called them once to report a pedophile. However, the FBI blatantly and maliciously lied to Tyler PD ~~[illegible]~~ about the defendant to make him seem mentally ill.

(e) 18-004376 [20180308 2002]
  (1) Caller unsettled by remark made by Yoo and called her mom and the police.
  (2) Defendant never mentioned school shooting.

(f) 18-005396 [20180322 2011]
  (1) Jonathan Horchler accused defendant Yoo of making terroristic threats with intent of school shooting at Brookshires.
  (2) The defendant never mentioned anything about school shooting nor recognized Horchler's presence. Horchler has been maliciously conspiring against the defendant. See UTPP reports attached.

3. Actually damaging reports.

(a) 16-028385 [20161202 1418h]
  (1) A Colby and his subordinates reported the defendant and 3 other friends, responding to a call from Peril Franklin and his family, trespassed onto the property with a deadly weapon with a malicious and criminal intent to seek revenge for what happened against Lack and Hernendez, thus committing aggravated assault. (No mention of any actual physical altercation.)
  (2) Matthew Lack stole and carried his pistol w/o his permission after repeatedly being told

not to. No agg assault was committed, just unlawful brandishing of firearm and firearm theft by Matthew Lack. No one was on the private property, everyone was on the public road. Lack was the only one being fully aggressive, and the defendant exchanged couple verbal insults involving no threat of imminent physical harm nor property damage. No one was seeking physical retaliation. No actual violence has occurred. Long, Hernendez, and the defendant prevented Lack from committing any acts of violence. The defendant did not report the theft of the firearm at that time because he considered Lack to be his friend. Nearly half of Colby's report and the entirety of his charge on the defendant was based on subjective assumptions rather than objective proven facts. The indictment was faulty and non compliant with this report. Lucas Machicek, the prosecutor for this case, submitted evidence/testamony to the Grand Jury during the agg assault case that he knew or should have known was false. Machicek was appointed co-counsel to Frank COan by Joseph Brown for unknown reasons for the defendant's current case in early September.

The video footage, if available, through security camera footage will clearly show that this is a fraudulent accusation.

(b) 18-001574 [20180126 1434]
(1) Defendant received a citation for "assault by contact" because Ramirez reported that the defendant groped her buttocks inside of her pants. Ramirez then proceeded to make 2 further reports to the Tyler PD when the defendant tried to file a complaint against her to the corporate and when he made a derogatory facebook status about her. The defendant is warned against contacting the corporate. (Also view 18-001636 and 18-002015)

(2) Ramirez maliciously falsely accused the defendant of sexually assaulting her because she was offended at the defendant's affluent family and political views. When the defendant exiting Cumberland Place after the tour, Ramirez gave the defendant and his roommate her business card with some paperwork, and acted calmly. The defendant was acting professionally and politely the whole tour. and upon exit he told Ramirez "Hail Trump Make America Great Again", which then Ramirez started showing offended facial expression. DT Forbey still gave the defendant a citation despite a complete lack of proof. Ramirez then proceeded to contact the LE twice more report the defendant was hurting her feelings via faceb

(C) 18-002159 [20180204]
  (1) Defendant arrested for CT. Bond set at $25,000 by Judge Clark.
  (2) Defendant was unaware of his status since he signed no document of CT warning against Walmart. Defendant was not causing disturbance. Also, $25,000 for a class b misdemeanor is against 8th amendment and common sense.

4. Incompetent / Negligent reports
 (a) 16-028626 [20161205 1512h]
  (1) The defendant reported burglary, believing it was retaliation from the "victim" of agg assault case. Loss of $1,136.62.
  (2) Lack informed the defendant before those "victim" of agg assault knew the defendant's address. Tyler PD did not even bother to check security camera.

 (b) 17-012168 [20170615 0251h]
  (1) The defendant called the police for assault and battery. D Russ reported that the defendant instigated the fight, and ruled it mutual combat.
  (2) The defendant NEVER consented to 2v.1 fight. The defendant expressed his views, then

~~Aguileras~~ Aguileras became belligerent and physically threatening. They initially asked the defendant to fight. The defendant said "ok, we can step outside!" Then Aguileras changed their minds and told the defendant to leave. As the defendant was leaving, Aguileras assaulted the defendant from his rear. Rus ruled it mutual combat for unknown but incompetent reasons and lied on the report.

(C) 17-020088 [2017 1004]
(1) Defendant reported damages that Lack caused him for insurance claim. Police ruled it civil matter.
(2) Matthew Lack indeed stole defendant's handgun resulting in the case 241-0072-17 and confiscation (as evidences) of the defendant's firearms. Also Lack used his truck several times w/o his permission. While the statue of limitation was still valid, the police still ruled it civil, despite of clear criminal conduct by Lack.

## II UT Tyler

1. UTTPD Reports
   (a) 2018-000051-1 [20180208]
      (1) Student being disruptive, saying "Hail Trump" and "Black History Month is a joke"
      (2) Not an emergency. Reporting person called LE and wasted time and resources.

   (b) 2018-000056 [20180206 2300]
      (1) An unnamed employee called the police and expressed concerns about hate speech of the defendant.
      (2) The employee called the LE for "Hate Speech" which is not even close to being an emergency. Then police proceeded to encourage this waste of LE's resources.

   (c) 2018-000065 [20180215 0902] [20180215 1207]
      (1) Dylan Wynne called LE to report the defendant of being disruptive. Then later someone else called LE for racial slur.
      (2) The defendant never used racial slurs on campus. The defendant did not threaten anyone nor caused any ruckus.

(d) 2018-00069 [20180216]
  (1) Paula Contois called LE because she was concerned about a statement made by the defendant.
  (2) The defendant never said FBI has taken his right to bear arms. The defendant was referring to violation of 2A being treason, which is punishable by execution. The police then proceeds to encourage these non emergency waste of resources by telling Contois to come in to talk to them.

(e) 2018-00043 [20180201 1431h]
  (1) Sawyer responded to person stating racial obscenities
  (2) The defendant never used racial obscenities.

(f) 2018-000067 [20180216]
  (1) 1900, an employee at coffee shop called cops on the defendant because she heard rumors about him and she felt uncomfortable when the defendant was just quietly texting.
  2000, Timothy Tran called cops on the defendant for talking about combatives on the phone. Emily Hobbs told the LE about Yoo's prejudice and anti semitism.
  (2) This time the defendant actually got reported for his presence and rumors w/o doing

anything disruptive. Then later the defendant was reported again for talking about combatives on the phone. (The defendant did not say he can choke people with 2 fingers, that is impossible to his knowledge) Then again reported for having a peaceful conversation just because those views were offensive.

(g) 2018-000020 [20180119 1709]
  (1) Defendant reported as a suspicious person. Later Sawyer ran TLETs on the defendant and found his previous arrest record.
  (2) Defendant reported for his opinions and political views. and resulted to LE looking up his arrest records.

(h) 2018-000039_2 [20180222]
  (1) Yoo was reported to be ~~saying~~ carrying a gun in his backpack.
  (2) The defendant never carried a gun on school campus and would never carry a gun in his backpack. The defendant is well trained on firearm safety. The defendant never claimed that "Black lives don't matter".

(i) 2018-00034_3 [20180221]
 (1) Jonathan Horchler reported the defendant for homicidal intent and terroristic threats.
 (2) Jonathan Horchler had been maliciously conspiring against the defendant ever since he met the defendant for unknown reasons. Horchler told numerous lies and made false reports against the defendant with malicious intent motivated by unknown reasons. (All lies are underlined with red). The defendant never threatened to kill anyone nor became aggressive or hostile at veteran's center. Infact, Horchler was rude from the moment he met the defendant. The defendant requests the court to grant subpoena against Horchler. Horchler made very malicious attempts to portray the defendant to be planning a terroristic activity.

(j) 2018-000039_6
 (1) Gregory Harry investigated Yoo's background, stated "Why there was no document offered that would have prevent Hank Yoo from ever possessing firearms" and follow up with NJ authorities.
 (2) This clearly shows 2 factors.
  (A) The FBI had no documentation to prove

the defendant was/is among 18 U.S.C. §922(g) category, and

(B) The FBI was looking for / conspiring to fabricate a reason or excuse to label the defendant a prohibited person.

(k) 2018-00039_7
  (1) Myers following up with Paul Fischer of RUPD about Yoo's background.
  (2) Fischer did not know the defendant's background clearly and spoke with contempt. Lied about the defendant's background in a condescending manner.

(l) 2018-00039_8 [20180321]
  (1) D Myers examining recordings of Yoo's snapchat story
  (2) Myers labels defendant's pump action shotgun as an auto weapon, display of complete incompetency.

(m) 2018-00039_9.
  (1) Jonathan Horchler reported Yoo for making a terroristic threat at Brookshires against UT Tyler. Seale tried to press charges on Yoo. ADA Coleman rejected the charge based on lack of grounds then Seale tried to get a court order to commit defendant to a

mental institution.
(2) Seale tried to press charges on the defendant based on a fraudulent hearsay. Clearly official misconduct. This proves severe malicious intent of the UTT LE against the defendant. Then Seale tried to get a court order to unlawfully confine the defendant to a psych based on hearsay and fraudulent accusation.

## III. Smith Co
1. Sheriff's office.

(a) 17-30425 [2017/1/29]

(1) David Biggs was called by Rangers and transported Yoo to ETMC ER with a peace officer warrant.

(2) Biggs wrote an incoherent and fraudulent report with horrible grammar. Biggs talked less than 5 minutes with the defendant. He came in with a decision already made up about the defendant to transport him to mental facility with a POW. Biggs considered the defendant mentally ill because of his perceived political views while completely failing to comprehend the defendant's actual political views (Biggs said "President of a socialist party when the defendant is a capital fascist.) Severe official misconduct. Also perjured about the defendant admitting confinement. The defendant told him "I do not consent to confinement." Biggs replied "I do not need your consent".

# IV. TX DPS

## 1. TX Rangers

(a) 2017 I-TRB-50019320  [20171129]

(1) Kim Allen, an employee of identigo, accused the defendant of making a terroristic threat and attempted to committ mass murder, while another customer present did not hear such threats. Rangers sent to investigate and interrogated the defendant in their office. Seized defendant's firearms for safe keeping for 72 hours while defendant was in ER then returned all of his firearms and ammunitions. Kim Allen failed to identify that other customer.

(2) Defendant was discussing Trump presidency and anti-semitic history of President Washington's regime. Allen fraudulently and maliciously reported that defendant threatened to kill Jews and Blacks in Washington DC. The defendant was interrogated at Ranger TXDPS station, and his apartment searched. Transported to ETMC ER for 48 hours but released since he was not a threat. Firearms and ammunitions returned to the defendant since he was not a prohibited person. The video footage will clearly show that this is a fraudulent accusation, if there is a security camera.

V. ETMC ER and Andrew Center.
  (a) 2017 11/29 - 2017/12/01 / 2017/12/13
   (1) The defendant was brought into ETMC ER under Peace Officer Warrant, interviewed by Camille Prinz from Andrew Center, passed all med exams, let go within 48 hours. Defendant was NOT put on meds.
   (2) Camille Prinz maliciously determined the defendant to be at acute risk, despite the only evidence she had was a lie from a highly incompetent deputy and a lowly corporate worker and maliciously labelled the defendant as schizophrenic after a 5 minute interview even though the defendant showed no sign of aggression. Despite pathetic effort of Biggs, the defendant was released. At Andrew Center, 14 days later, Angela Geter did not see the defendant to be in a crisis, and since Andrew Center was a psychiatric clinic not a psychological therapy center, it could not meet the defendant's request. However, she went along with Prinz on 2 factors and said "Previously risk to others".