## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Vs. | § | CRIM. ACTION NO. 6:18CR16 |
| HEON JONG YOO | § | |

## ORDER OF DETENTION PENDING TRIAL

On April 30, 2018, Defendant appeared for a detention hearing in accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), before United States Magistrate Judge John D. Love. Docket No. 22.  At the conclusion of the detention hearing, Defendant was ordered detained pending trial on the basis that he presents a risk to the safety of other persons and the community and that he presents as a flight risk.  Docket No. 37 at 65–66.

Defendant filed a motion to appeal detention on August 29, 2018.  Docket Nos. 47 and 48.  The Court held a hearing on this motion on October 10, 2018.  Docket No. 129.  For the reasons explained below and having considered the matter *de novo* pursuant to 18 U.S.C. § 3145(a), the Court concludes that pretrial detention is warranted.

### APPLICABLE LAW

The Bail Reform Act of 1984 (the Act), 18 U.S.C. § 3141, *et seq.*, empowers a court to order a defendants detention pending trial upon a determination that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.] 18 U.S.C. § 3142(e).  In enacting the Act, Congress recognized "the traditional presumption favoring pretrial release 'for the majority of Federal defendants.' " *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986).  The Supreme Court has observed that [i]n our society liberty is the norm, and detention prior to trial

or without trial is the carefully limited exception.□  *United States v. Salerno*, 481 U.S. 739, 754

(1987).   Under the Act, detention may be ordered only following a hearing.   18 U.S.C. §§

3142(e), (f).

18 U.S.C. § 3142(g) prescribes the factors that the Court must consider when determining

whether there is a condition or combination of conditions that will reasonably assure the safety

of any other person and the community:

> (1) the nature and circumstances of the offense charged, including whether the
> offense is a crime of violence, a violation of section 1591, a Federal crime of
> terrorism, or involves a minor victim or a controlled substance, firearm,
> explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties,
>> employment, financial resources, length of residence in the community,
>> community ties, past conduct, history relating to drug or alcohol abuse,
>> criminal history, and record concerning appearance at court proceedings;
>> and
>> (B) whether, at the time of the current offense or arrest, the person was on
>> probation, on parole, or on other release pending trial, sentencing, appeal,
>> or completion of sentence for an offense under Federal, State or local law;
>> and
> (4) the nature and seriousness of the danger to any person or the community that
> would be posed by the person's release.

"[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others

or community is sufficient; both are not required."  *See United States v. Fortna*, 769 F.2d 243,

249 (5th Cir. 1985).  The Court applies a clear and convincing evidence standard to determine

whether the Government has proven that Defendant poses a danger to community.  *See* 18

U.S.C. § 3142(f)(2)(B).   A preponderance of the evidence standard applies when deciding

whether Defendant is a flight risk.  *See Fortna*, 769 F.2d at 249 ("[T]he judicial officer making

[a determination as to flight risk should apply the simple preponderance standard.").

⬜When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate⬜s pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release.⬜  *Fortna*, 769 F.2d at 249.

## DISCUSSION

Defendant is currently charged with seven counts of violating 18 U.S.C. § 924(a)(1)(A), False Statement with Respect to Information Required to be Kept by Federal Firearms Licensee and one count of violating 18 U.S.C. § 922(g)(4), Possession of Firearm by Prohibited person. *See* Superseding Indictment, Docket No. 84.  The punishment range for Counts 1–7 is not more than five years, a fine of not more than $250,000 and a term of supervised release of not more than three years.  The punishment range for Count 8 is not more than 10 years, a fine of not more than $250,000 and a term of supervised release of not more than three years.

The Court has carefully reviewed the briefings in this matter (Docket Nos. 47, 58 and 89), the  transcript of the initial detention hearing before the Magistrate Judge (Docket No. 37), the additional testimonial and documentary evidence presented at the hearing on appeal and the report of the Pretrial Services Officer.  At the hearing, Special Agent James Reed of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified about Defendant's extensive history of making threats towards individuals and groups of people.  For example, Special Agent Reed testified about an instance in April of 2013 in which Defendant was transported to an emergency room by members of the Rutgers University Police Department after allegedly threatening to shoot his resident counselor, an instance in September of 2015 in which Defendant was taken to the Rutgers University Behavioral Health Care Center after allegedly shouting "death to the Middle East"  and an incident in November of 2017 when Defendant was transported to the East

Texas Medical Center after the Texas Rangers received reports that Defendant allegedly planned to travel to Washington, D.C. to "kill blacks and Jews."  Special Agent Reed testified that within the last two years, Defendant has had more than 20 reports with the Tyler Police Department and has been criminally trespassed from six businesses in Tyler, Texas, including all Walmart stores, Sam's Club, Panera Bread, Cumberland Place Apartments and both Tyler Supercuts locations. Defendant has been formally warned away from these businesses and may be arrested for trespass if he enters the premises for these businesses again.  The Court additionally heard testimony from Defendant's former roommate, Matthew Lack, who testified about occasions when Defendant had been violent with him and made threatening statements of violence towards others.

The Court finds credible the testimony of Special Agent Reed, Task Force Officer Gregory Harry of the Tyler Police Department, Officer Mike Medders, the chief of police at University of Texas at Tyler, and Mr. Lack, especially in view of the supporting documentary evidence of Defendant's numerous encounters with law enforcement agencies and mental health history.  The Court is further troubled by the nature of the charges brought against Defendant— that Defendant allegedly made false statements in order to obtain firearms.  The Court has also reviewed and considered the report of the Pretrial Services Officer presented at the hearing, which recommends that Defendant be detained pending trial.

Defendant's contentions that he was improperly detained based on perjured testimony, hearsay and submission of false police reports at the initial detention hearing before the Magistrate Judge, Docket No. 47 at 3, are unsupported by any evidence.  Similarly, Defendant's arguments that he has never been permanently involuntarily committed and that he has never had

his firearms confiscated for being a prohibited person, *id*. at 3–4, do little to assuage the Court's concerns or mitigate against the ample evidence of Defendant's violent statements and behavior.

The Court concludes on the basis of clear and convincing evidence that Defendant poses a danger to others and the community.  The Court further concludes that there is no condition or combination of conditions under which the Defendant could be released that would reasonably assure that the Defendant would not pose a danger to the community.

Additionally, considering the nature of the offenses, Defendant's lack of employment and financial resources of his own, *see* Docket No. 140-1, that Defendant has no family or any other ties to the Eastern District, Defendant's strong ties to South Korea, *see* Docket Nos. 129-2 and 129-3, and in considering that Defendant allegedly falsified his citizenship status in connection with his applications for a firearm license, the Court concludes by a preponderance of the evidence that Defendant would also pose a flight risk if released.  Though Defendant has surrendered his passport and provided an affidavit from Tina Simmons, the office manager at 1st Choice Bail Bonds, in which Ms. Simmons attests that Defendant fulfilled his bond conditions from December 5, 2016 until August 16, 2017 in connection with a Smith County aggravated assault charge, *see* Docket No. 133, on balance, the Court finds that there is no condition or combination of conditions in this case under which Defendant could be released on his own recognizance or unsecured bond that would reasonably assure Defendant's presence at trial.

It is therefore **ORDERED** that Defendant's motion to appeal detention (Docket Nos. 47 and 48) are **DENIED** and that Defendant shall remain detained pending trial.

It is further **ORDERED** that the Defendant shall remain committed to the custody of the United States Marshal and is to be kept, to the extent practicable, from persons awaiting or serving sentence or being held in custody pending appeal.  Defendant shall be afforded a

reasonable opportunity for private consultation with his standby defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**SIGNED this 22nd day of October, 2018.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE