USA v. Yoo                    §    6:18-CR-16.

Emergency Motion.
Appealing district court's decision
Motion to appeal detention.

U.S. COURT OF APPEALS
RECEIVED
OCT 29 2018
FIFTH CIRCUIT

I    The accused, pro-se, respectfully appeals the district judge Robert W Schroeder III's decision to detain the accused pre-trial, pursuant to Rule 9(a) and 25(a)(2)(CC) of the Federal Rules of Appellate Procedure.

II Reference the following from the accused's docket.
(1) Motion to appeal detention (#47) and its ~~exhibits~~ exhibits.
(2) The government's response to #47 (#58)
(3) The defendant's reply to the #58
(4) Malicious, vindictive, retaliatory prosecution motion and its exhibit.
(5) Update to malicious prosecution motion.
(6) Emergency Motion for pre-trial release [ for 18 USC §3142 reference]
(7) Motion for leave to appeal (#52)
(8) 20181010 Detention hearing transcript and exhibits.
(9) Motion for transcript (#131)
(10) order regarding #131
(11) Amended order regarding #131
(12) Order denying bail on 2018/023
(13) Exhibits for motion to change venue.
(14) Unopposed ~~for~~ emergency motion for immediate pre-trial release [ for 18 USC §3164 reference ]
(15) Order for continuance (#35) [ For the dates]
(14) Emergency Motion to appeal district judge's decision, motion to compel production [ for transcript reference ]

## II 18 USC §3164

1. ~~(B)~~ The ~~petitioner~~ accused had been detained 200+ days as of this date, which is over double the amount of 90-day time limitation set by 18 USC §3164 (b), (c). for detention of any federal defendant. The ~~pet~~ accused was supposed to be released no later than 20180704.

2. This could have been brought up much earlier if the accused had a law library access, which all federal detainee are entitled to. On 20181010, Jeff Haas gave the accused "Federal Criminal Code and Rules" After about a week of intense study, the petitioner discovered 18 USC §3164. and other essential codes.

3. §3161 (h) factors are irrelevant to this 90 day time limitation. This is an absolute 90-days limitation. [§3161(h) factors are ~~irrelevant~~ relevant to §3161 (c) time computation.]
+ [Notice the ~~time computation~~ "computing the time" for §3161 (h) ~~is~~ v. "computing the time limitation" for §3164 (b). ]



IV 2nd detention hearing of 20181010

1. accused's witnesses.

(a) Tina Simmons: The accused's previous bail bonds agent.

(1) Agreed to be the accused's witness at will.

(2) Accused filed notice of witness

(3) On 20181003, the accused a letter from the court that the hearing got postponed to 20181010. The accused called 1st choice and Informed Missy of this change of date. However, Simmons was unaware of the date change and showed up at the Texarcana court house on 20181004 and waited all day. On 20181010, the accused was surprised to find that Simmons was absent. This form of mis communication and undue burden would not have happened if the petitioner was out on bail.

(4) Simmons submitted affidavit on 20181011.

(b) Anthony Railsback: Smith County pre-trial officer. Schroeder denied subpoena on the grounds that "The accused showed no inability to pay".

(c) Jack Skeen Jr. Smith County Judge for 241-0072-17. Schroeder denied subpoena for same reason.

2. Prosecution and their witnesses.

(a) 1. Frank Coan.

(1) There were severe stuttering by Coan. To the accused knowledge, Coan does not suffer from the medical condition.

speech impediment.

(2) Frivolous, misleading, and fraudulent questions to Reed.

(3) Purposely did not serve the accused with a witness list prior to hearing but filed a fraudulent certificate of service. (Reference formal objection to denial of motion to strike witnesses and its exhibits).

(4) During the cross examination of the accused's self testamony, Coan conspired to entrap the accused into fraudulently admitting the previous unlawful confinements to RWJUH and Carrier Clinic as commitment to the mental institution along with Schroeder. The accused fiercely combated Coan's attempt by citing NICS Improvement Amendments Act of 2007, Addington v. Texas 441 US 418 (1979), 27 CFR § 478.11, and asserting the difference between a temporary confinement and formal commitment. Coan and Schroeder told the accused "Just answer the question in yes or no format". The accused asserted that he had never been formally committed following a proper due process and hearing.

(5) Claimed that the accused is a danger because the accused believes in right to self defense.

(6) Basically raised same perjured and frivolous arguments like the 1st detention hearing.

(7) provided 0 factual evidentiary basis.

(b) **Lucas Machicek: Coan's Co-Counsel.**
   (1) Brief role questioning Matt Lack with misleading, frivolous, and perjured questions and objections during cross examination.
   (2) Not a credible nor ethical prosecutor [Case 241-0072-17 which Machicek was the prosecutor on, was based on abuse of discretion by both LEO and the prosecution, and perjured testimony to the grand jury.]

(c) **James Reed.**
   (1) Selectively read the reports in attempt to mislead the court. Called out by the ~~prosecu~~ accused during the cross examination.
   (2) Targetted the accused's political beliefs.
   (3) Demonstrated utter incompetency and ignorance of federal law, state law, and political scopes. Called out by the accused during cross examination.
   (4) Submitted fraudulent and inconsistent report / records as evidences which were infested with material inconsistencies.
   (5) Became upset that the accused was "insulting his honor".
   (6) Credibility annihilated by the accused.

(d) **Matthew Douglass Lack : The only convicted co-defendant for 241-0072-17.**
   (1) Did not deny that Machicek offered him a deal to testify against the accused.
   (2) Committed numerous perjuries. Exposed by the accused.
   (3) Highly inconsistent, baseless, ignorant, and incoherent.
   (4) Credibility annihilated by the accused.

(e) **Gregory Harry** was on the list but did not testify. (dkt # 117 and 121) However, while sitting at the gallery nodded and shook his head at the accused.

during cross examination by Coan, possibly in attempt to subconsciously influence the accused.

3. Judge Schroeder.

(a) The accused had to ask Schroeder several times whether Schroeder was attempting to practice law from the bench and object in behalf of the prosecution, due to his repeated and unwarranted interruptions and objections. Each time he denied it but continued the disruptive and biased behavior. Several times Schroeder asked "Mr. Yoo, how is this relevant" when the accused was destroying the credibility of the prosecution's witnesses. It is evident that Schroeder expected the accused to be defensive and reactive, rather than offensive and proactive. Schroeder was clearly upset that the accused proved far more competent and sharp than he expected.

(b) Schroeder denied almost every single one of the accused's motions and objections while granting every single motions and objections of the prosecution. The accused was never served a witness list prior to the hearing so the accused filed motion to sanction based on Rule 11b of the Federal Rules of Civil Procedure and Rule 49(a) of the FRCP. Schroeder denied them. Schroeder however denied subpoena for 2 of the material witnesses of the accused.

(c) The accused filed several judicial notices, including but not limited to: US v. Salamale (2017 case, a pedophile released on $125,000 secured bond), US v. David Wayne Trotter (2018 case for production of child pornography, released out on $150,000 secured bond), US v. Durtin Lee (2018 case

* On 2018/1025, Jeff Hass brought the detention motion.
Schroeder denied bail to the accused with same basis as judge Love.
The ~~petitions~~ accused's analysis below is accurate. Schroeder also
misleadingly cites the federal codes.

for assault and hate crime. Released out on ankle monitor
and curfew), US v. Currijedo (2018 major drug case, both defendants
from out of state, unsecured bond), and US v. Glusha
(child pornography, Released out on unsecured bond).]
Schroeder neither confirmed nor denied them, infact
just completely ignored them without even commenting on
them. [The accused made these judicial notices to argue
that actually dangerous people get bailed/bonded out
every day, including murderers and child molesters.]

(d) Schroeder denied bail after 12 days of delay. [Note
that the deadline for motion for continuance was 2018/1022.
It is possible that Schroeder reserved ruling on
detention until 2018/1022 for these reasons:
(1) To prevent the accused from filing continuance to
     appeal bail, ~~and~~
(2) To interfere with the ~~petitioner's~~ accused's trial preparation
(3) To give emotional distress to the accused to
     get him distracted pending trial.]

On the grounds that the accused is a danger
to the community based on testimonies of James Reed
and Matthew Lack [The witnesses who showed
gross incompetency and incredibility] that the
accused made threats and attempts to injure and kill people.
[Based on perjured and fraudulent hearsay, which got
disproven, rather than factual evidentiary basis.] Also
having no ties to East TX and no personal financial means of
support [Despite 2 declaration of promised financial support
(of food and shelter especially) submitted by the accused's mother

and grandfather ] along with the accused's ties to South Korea [ Nevermind the fact that the accused is a permanent resident. ], Tina Simmon's affidant inadequate. [Even though it clearly states that the accused religiously checked in with them. ], it was the "court's decision" that the accused is a flight risk. Schroeder also mentioned Nathan Manley's who showed apparent malice and incompetence, pretrial service report and declared that "No condition that would reasonably guarantee the appearance of the accused through unsecured bond" [ The accused also clearly suggested secured bail bond. ] [ Charles Van Cleef read the order out to the Accused over the jail phone around 2018/023 1100 hours, and this is accurate to the best of the accused's knowledge ].

## V. Conditions of detention facilities

1. Gregg Co Jail.

  (a) Legal Process violation.

    (1) No law library [ Reference exhibits for motion to appeal detention ].

    (2) No adequate communication method.

      (A) Over priced phone calls ~$4.00 - 4.50 / 15 minutes.

      (B) Struggle getting hold of the phone [ In separation units, where the accused was kept most of his stay at Gregg County due to being labelled as "protective custody", 12 cells share 1 phone. Guards, upon request of an inmate, is required to

bring the phone to the cell's door. The inmate then uses the phone through the "bean hole", a small opening on the door for trays. This is very uncomfortable and harsh on joints, especially when trying to take notes during the call. Also the guards frequently ignore the inmates' requests. Due to this posture while calling, the phone being the only method of research, the accused often develop joint pain especially on knees, which often lasts few days. The accused also requested to use the phone at 0400 several times, since he has a friend who is available at that hour. Though completely discretionary and has ability to turn the phones on at will, Gregg Co Jail staunchily refuses the accused to have a phone access at that hour, arguing that it's against jail policy. There is no legislative policy that prohibits a pro-se defendant to have phone access at 0400.]

(C) Significantly over priced stamps, envelopes, pen, and paper from the commissary, which is absolutely essential for the accused's defense and filing motions

(D) Unwarranted delay regarding communication with the court and DOJ. It is not uncommon for a mail from the court or DOJ to reach the accused in longer than 10 days.

1. (iii) ⊗⊗ (3) No internet / computer access

(A) No ability for the accused to directly check his docket, causing unwarranted delay, undue burden, and irreparable harm. The ~~not~~ accused needs to be able to print out his previously filed motions, exhibits, and notices, and items among his discovery at will for adequate defense. [A lot of entries in the accused's docket are still sealed. The accused's stand by council never answers the phone and the accused's friends usually have to pay and even then are denied from viewing several entries of the docket.

(B) No email access. The accused forced to use unreasonably expensive [around $1-2/ minute] international phone call to communicate directly with his family in South Korea.

(C) No ability for the petitioner to obtain his own discovery other than asking his family to pay for an investigator.

(4) No ability to file administrative appeals / suits.

(5) No ability to reach the court or other phone numbers which leads to automated directory.

(6) Charged 10 ¢/page even for legal papers and copies by Gregg Co Jail

(b) Health risk and other deficiencies

(1) Poor sanitary condition. Frequent roaches and fruitflies, slight bug

* Most court documents improper and not respected pose risk
at following federal standards and respecting rights of a pro-se defendant
[42 USC § 1983, 1985]

(2) Unreasonable and hazardous A/C exposure.
Getting A/C blasted down on the accused's
face while he sleeps. Jail kept at unhealthily
cold temperatures to encourage purchasing thermals
from commissary, which are significantly overpriced.
~~accused~~ accused restricted to 1 thin bedsheet and 1 extremely
low quality blanket for insulation.

(3) The accused restricted to 3 hours of recreation
per week, often with no sunlight [Indoor recreation]
It was not uncommon that the accused received
1 or 2 hour recreation for the week.

(4) The accused kept at 9' X 6' room 23 - 24 hours per day

(5) The accused is given an extremely uncomfortable
and borderline painful mattress, pillow, and stool.

(6) The accused is fed food with significantly deficient
nutritional value.

(7) The accused is suffering medical problems that he
did not experience before such as lower back and
knee pain.

(8) The accused also unable to watch news and keep
current in a separation cell.

(9) Even getting a nail clipper, toilet paper, and haircut is a
struggle

(10) Gregg Co Jail does not have a clock for the inmates.
Hard to keep track of time.

I. It is clear that through the intentional infliction of
emotional distress, fatigue, and deprivation of rights under color of law,
Coan, Machicek, Love, Mitchell, and Schroeder are conspiring to coerce the accused
into taking the unconscionable plea deal.

\* Report 13-15051 by RUPD among exhibits.
\* Carrier Clinic discharge paper is among exhibits for the malicious prosecution action
\* The accused can elaborate on 20130405 event.

# VI NICS and other administrative suits.

[Reference NICS Improvement Amendments Act of 2007]

1. 20130419, the accused was entered into NICS as "Adjudicated mentally defective" [NRI 1630400673]

2. 20150925, the accused was entered into NICS as "Adjudicated Mentally Defective / Committed to a mental institution" [NRI 1726660288

3. Pursuant to NICS Improvement Amendments Act of 2007, Addington V. Texas 441 US 418 (1979), in order for an individual to be labelled as these categories, an individual must have a formal court, board, commission, or other lawful authority's order following a proper due process and a hearing.

4. On 20130405, the ~~patient~~ accused was unlawfully confined to RWJUH ER by the Rutgers PD. [Reference 13-15051] The hospital staff lied on the ~~patient~~ accused's admission papers, even completely contradicting RUPD report, saying that the ~~patient~~ accused threatened to shoot his RA. Upon interviewing 2 screeners, who were malicious and incompetent, the accused was transported to Carrier Clinic on the same day. On 20130408, the Superior Court of Somerset County of New Jersey issued a temporary order, pending a hearing [See attached exhibit] for involuntary commitment, via Judge Fred H Kumpf. The hearing was set for 20130423. The accused, however, was released from Carrier Clinic on 20130419, and the hearing never took place. [Note that on the report 13-15051 it says "You did not threaten to harm anyone."

It also says voluntary admission while RWJUH says involuntary]. [See Carrier Clinic Discharge Papers]

5. On 20150421, the ~~petitioner~~ accused was unlawfully confined to RWJER by RUPD for expressing his political views in an assertive manner while on a phone call with his friend ["Death to Middle East"] [According to RUPD report, this too was voluntary. The RWJUH report says involuntary.]. ~~I~~ The RWJUH ER lied on their report claiming that the accused made homicidal threats, and that the accused was committed to a mental institution on 2011 for homicidal threats also. [2011 the accused was living in South Korea attending an international school.] The accused was transported to Carrier Clinic after interviews with malicious and grossely incompetent screeners on 20150923. Judge Kevin M Shanahan of the Superior Court of Somerset County NJ issued temporary order, pending a hearing for involuntary commitment, on 20150924, and the hearing date was set for 20151006. However, the ~~pet~~ accused was released on 20150930 and the hearing never took place.

6. The accused was never served with the paperwork of neither of these temporary confinement orders prior to September of 2018. The petitioner did not know that these orders existed. [During 1st detention hearing on 20180430, SA James Reed admitted during cross examination by Mickelson, that he did not see any judicial paperwork regarding

the accused's mental health history ]

7. On 20160119, the accused ~~appealed / inquired reasons~~ ~~it~~ was denied of a firearm purchase. The accused appealed / inquired reason (s) for denial shortly after. On 20160126, the FBI responded vaguely and did not state any reason why petitioner was personally denied. On March 2016, the FBI affirmed the denial without stating ~~states~~ reasons. [ The accused was processing into the US Army at the time, which was the accused's life long goal since middle school. If the accused was aware that he had been labelled as adjudicated mentally defective by the FBI NICS [Which turned out to be the reason for the denial of entry to the military ], the accused would have immediately notified his recruiter and would have vigorously challenged this fraudulent entry.

8. Since mid 2016, the accused's family attorney in NJ, Atty. Matthew Jeon, was tasked to removing hospital records of these two unlawful confinements. Even among his discovery, Jeon did not have the temporary confinement orders by the Somerset Co Court. nor the NICS entries. The only discovery that Jeon had were hospital reports.

9. Prior to the arrest of the accused, numerous local, state, and federal LE were aware of the fact that the accused was a gun owner. No one ever told the accused that the accused had been labelled as a prohibited

person [Because he is not] nor confiscated any of the accused's firearms for such reason. On 2017 1129, the TX Rangers seized the ~~petition~~ accused's firearms for safe keeping only while the accused was unlawfully confined to ETMC ER by completely incompetent David Biggs [see the transcript] On 2017 1201, the accused was released. On 2017 1204, the Rangers returned the accused's firearm to the accused. [On one of the UTTPD reports, Gregory Harry stated "Why isn't there a document that would permanently prevent Too from owning a firearm.❓ See exhibits for Motion to Change Venue]

{10} The accused discovered these two fraudulent entries at Smith County Jail while viewing the discovery files of Hawk, among them the criminal complaint affidavit by James Reed.

{11} It is nearly impossible to go through proper channels to challenge these unlawful entries under detention.

{12} Upon release, the accused plans to file motion for leave to appeal or motion to stay and challenge these fraudulent entries prior to trial, to promote fair trial and ensure the accused's due process is observed, and to correct any and all erroneous, falsified, malicious, and negligent government entries and records that have harmed the accused and are the sources of charges against him and his confinement.

VII ~~the~~ Due to the criminal conspiracy of the prosecution and the court, undue burden and irreparable harm were already done on the accused. Nevertheless, despite the ~~direct of~~ deprevation of rights and violation of due process, along with ● attempted emotional torment by the prosecution and the district court, the accused had made significant progress as a pro se defendant against 3 prosecutors. [Imagine what accused can do with proper communication methods, access to internet and law library, proper nutrition and adequate exercise.] To prevent any further undue burden, ~~and~~ irreparable harm, and deprevation of the accused's due process, the accused ~~●●~~ requests to be out on trial [and pending appeal if convicted] and for the frivolous, perjured, misleading, ~~and~~ malicious, and unlawful order from Schroeder to be overturned and stricken.

[The trial is on 20181113]

The accused also requests the court to take the supporting motion into account ~~for~~ regarding the transcript of the hearing and take notice of the references.

The accused also requests expedited ruling on these motions due to the time shortage.

20181025
Hank Too

USA V. Yoo | 6:18-CR-16

Emergency
Motion to appeal indigent status
Motion to appeal district judge's decision.
Motion to compel production (Supporting motion to Appealing Detention)

Around middle of September, the accused sent a financial affidavit to proceed In Forma Pauperis, declaring himself to be indigent. The accused was not informed of disposition of this motion. The accused then re-submitted the financial affidavit around early October.

On 20181010 at Texarcana, during his 2nd detention hearing, the accused was informed of the court's reception of his financial affidavit which was filed in mid September. Judge Schroeder was unclear how to rule on it despite the fact that the accused clearly showed his indigency. Schroeder informed the accused that he needs to examine more factors possibly have a hearing on it before ruling on the accused's motion to proceed indigent.

Since the accused has submitted the financial affidavit, numerous subpoena, transcripts, and other materials needed for adequate legal proceeding and defense had been denied, including subpoena of Anthony Railsback (Smith Co pre-trial office) and Judge Jack Skeen Jr to the witness stand for the hearing on 20181010, transcript request

for hearing on 20180925 and 20181010.

The accused informs the court since arrest on 20180904, the accused lost nearly everything of his possession. The accused also had been out of work for 6 months+ being detained in Smith Co Jail and Gregg Co. Jail. The accused family does support him through commissary and did pay for his ~~attorney~~ 2 ~~cost~~ hired attorneys, however to proceed everything at the expense of the accused himself and his family is causing the accused irreparable harm and undue burden.

Furthermore, the accused informs the court that he is an independant adult. The possession and wealth of the accused's family are not the accused's own. The accused, ~~will be~~ for more than 6 months under detention with no law library and adequate communication methods, is fighting with (metaphorically) both hands tied behind his back.

The district court's indecisiveness on accused's indigency status is clearly a criminal conspiracy to impair his ability to adequately represent himself even further. Such as on 20181010 during the detention hearing, Judge Schroeder abused his discretion and several times showed bias favoring the prosecution (also denying the accused's motion to strike ~~rather~~ witness on legitimate grounds). The prosecution, ~~had~~ ~~been~~ ~~on~~ also displayed

severe malice and incompetence, such as trying to entrap the accused with the judge into saying "yes" to "have you ever been committed to a mental institution" when the accused clearly and intelligently stated "pursuant to 27 CFR §478.11, NICS Improvement Amendments Act of 2007, and Addington V. Texas 441 US 418, I have never been (to the best of accused's knowledge) formally committed.", Coan and Shroeder insisted that the accused answer this unconscionable question with simple "yes" or "no". Also Coan lied to the accused that §922 (g)(4) is an aggravated felony. ~~overt~~ ~~████████████████████████████~~. Also James Reed, one of the witnesses for the prosecution and the ATF agent who originally filed "applications" for criminal complaint and search warrant, demonstrated utter incompetence during the cross examination. Another witness, Matthew Lack, committed numerous perjury and did not deny that Machicek and Coan offered him a deal to testify against the accused. All this can be more than sufficiently proven through the transcript of the hearing.

The accused utterly destroyed the credibility of the prosecution and the prosecution's claim that the accused should remain under detention because the accused is a flight risk and danger to the community. Also the accused informed the court of several reasons why he needs bail, one of them being filing administrative appeals and civil

actions to correct any and all erroneous, falsified, malicious, or negligent government records that have harmed the accused and are the sources of charges against him and his confinement; and the accused's ~~entries~~ plan to file motion for leave to appeal or motion to stay upon pre trial release. All these entries are documented.

On 2018/0/11, the court granted the defendant's motion to receive the transcript of the hearing on 2018/0/10. Then on 2018/0/15, the court amended the order and wrote that the ~~defendant~~ accused ~~has to purchase it through the~~ clerk since the accused ~~to~~ did not show his inability to pay. On 2018 10/15, the accused received a mail from Shea Sloan, the official reporter for the court, that total due for the transcript is $730.00.

$730.00 is well beyond the accused's financial ability especially considering the fact that the accused is currently still under detention and had not been working for more than 6 months. Also due to the arrest, the accused lost nearly every thing including but not limited to his vehicle.

The accused is already bearing undue burden and suffering irreparable harm having to use significantly overpriced phone ~~and~~ ~~services~~ for his legal research and assistance and purchasing the materials necessary for his legal defense via severely over priced commissary

5

The accused suspects the court contributing to the criminal conspiracy of Coan, Machicek, BATFE, FBI, and others by imposing illogical and unconscienable financial burden against the accused, hoping that the accused never obtain the transcript or file necessary subpoena against people who filed false report or made false entry against the accused, which would annihilate the credibility of the prosecution and any and all individuals part of this criminal conspiracy.

Therefore, the accused respectfully requests that the accused declared indigent (proceed informa pauperis) and the transcripts of hearing on 20180823, 20180925, and 20181010 released at the court's expense; them being necessary for the defense and the transcript for 20181010 being necessary to file interlocutory appeal for pre-trial release it Schroeder maliciously orders the accused to remain under custody, further violating his due process.

Rule 3 and Rule 4 of the Federal Rules of appellate procedure

2018 1017 Hank You

\* Update

On 2018|0023, the accused was informed by Charles Van Cleef that the accused was denied bail. The accused also recognized that there are several orders by the court that the accused had not received dating far back.

The accused is currently proceeding with application for writ of habeas corpus, along with appeal of district court's decision 2nd detention hearing

Transcript is an essential evidence of this application and the motion to appeal district court's decision on detention.

The accused respectfully requests the court to compel production of 20181010 hearing at the district court's expence. transcript.

2018 1023 Hank You

In the US Court of Appeals for 5th Circuit

USA V. Yoo                    |    6:18 - CR - 16

## Motion for order to show cause.

The accused, pro-se, respectfully requests the court to issue an order to show cause for determination that the accused has not shown inability to pay for the transcript of 20181010 detention hearing, 20180823 pro-se hearing, and numerous subpoena filed by the accused, despite 2 previous financial affidavits submitted which is accurate to the best of accused's knowledge w/o method of verification, by the US district Court for Eastern District of Texas at Tyler Division.

The accused also requests the court of appeals to compel the district court the reason for avoiding prompt ruling on the accused affidavit to proceed in forma pauperis.

20181025 Hank Yoo.

*[handwritten left margin: "Perjury"]*
*[handwritten: "Obvious bias / abuse of discretion."]*
*[handwritten: "~~Interlocutory~~ Other high lights"]*

*[stamp top right: "U.S. RECEIVED OCT 29 2018 FIFTH ... APPEALS"]*
*[handwritten: "903-283-2820"]*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Vs. | § | CRIM. ACTION NO. 6:18CR16 |
| HEON JONG YOO | § | |

### ORDER OF DETENTION PENDING TRIAL

*[handwritten right: "I specifically pointed out how it was not in accordance with 18 USC § 3142(f) in the Emergency Motion for Pretrial Release."]*

On April 30, 2018, Defendant appeared for a detention hearing in accordance with the

Bail Reform Act, 18 U.S.C. § 3142(f), before United States Magistrate Judge John D. Love.

*[handwritten right: "Schroeder did not"]*

Docket No. 22. At the conclusion of the detention hearing, Defendant was ordered detained

*[handwritten right: "rebut it her 'correct' me if I was wrong"]*

pending trial on the basis that he presents a risk to the safety of other persons and the community

and that he presents as a flight risk. Docket No. 37 at 65–66.

Defendant filed a motion to appeal detention on August 29, 2018. Docket Nos. 47 and

48. The Court held a hearing on this motion on October 10, 2018. Docket No. 129. For the

reasons explained below and having considered the matter *de novo* pursuant to 18 U.S.C. §

3145(a), the Court concludes that pretrial detention is warranted.

### APPLICABLE LAW

*[handwritten left: "Court has to still abide by the Code. Here Schroeder is making legal discretion not justified"]*

The Bail Reform Act of 1984 (the "Act"), 18 U.S.C. § 3141, *et seq.*, empowers a court to

order a defendant's detention pending trial upon a determination that "no condition or

combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). In enacting the Act,

Congress recognized "the traditional presumption favoring pretrial release 'for the majority of

Federal defendants.' " *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986). The

Supreme Court has observed that "[i]n our society liberty is the norm, and detention prior to trial

or without trial is the carefully limited exception.□ *United States v. Salerno*, 481 U.S. 739, 754

(1987). Under the Act, detention may be ordered only following a hearing. 18 U.S.C. §§

3142(e), (f).

18 U.S.C. § 3142(g) prescribes the factors that the Court must consider when determining

whether there is a condition or combination of conditions that will reasonably assure the safety

of any other person and the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

"[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others

or community is sufficient; both are not required." *See United States v. Fortna*, 769 F.2d 243,

249 (5th Cir. 1985). The Court applies a clear and convincing evidence standard to determine

whether the Government has proven that Defendant poses a danger to community. *See* 18

U.S.C. § 3142(f)(2)(B). A preponderance of the evidence standard applies when deciding

whether Defendant is a flight risk. *See Fortna*, 769 F.2d at 249 ("[T]he judicial officer making

[a determination as to flight risk should apply the simple preponderance standard.").

Page 2 of 6

*Handwritten annotations:*

§ 3142 (g)
is it applicable.
Schroeder
selectively
cited
§ 3142 (g)
here.

They have my passport. Korea is not Mexico. Also I have nowhere to go in But Texas, the court supplied no clear ~~orders~~ factual evidentiary basis

. □When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate□s pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release.□ *Fortna*, 769 F.2d at 249.

## DISCUSSION

Defendant is currently charged with seven counts of violating 18 U.S.C. § 924(a)(1)(A), False Statement with Respect to Information Required to be Kept by Federal Firearms Licensee and one count of violating 18 U.S.C. § 922(g)(4), Possession of Firearm by Prohibited person. *See* Superseding Indictment, Docket No. 84. The punishment range for Counts 1–7 is not more than five years, a fine of not more than $250,000 and a term of supervised release of not more than three years. The punishment range for Count 8 is not more than 10 years, a fine of not more than $250,000 and a term of supervised release of not more than three years.

The Court has carefully reviewed the briefings in this matter (Docket Nos. 47, 58 and 89), the transcript of the initial detention hearing before the Magistrate Judge (Docket No. 37), the additional testimonial and documentary evidence presented at the hearing on appeal and the report of the Pretrial Services Officer. At the hearing, Special Agent James Reed of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified about Defendant's extensive history of making threats towards individuals and groups of people. For example, Special Agent Reed testified about an instance in April of 2013 in which Defendant was transported to an emergency room by members of the Rutgers University Police Department after allegedly threatening to shoot his resident counselor, an instance in September of 2015 in which Defendant was taken to the Rutgers University Behavioral Health Care Center after allegedly shouting "death to the Middle East" and an incident in November of 2017 when Defendant was transported to the East

*Handwritten margin notes:* Where is a Criminal complaint for a terror threat? Disproven. [See the transcript.]

*Handwritten bottom note:* Death to Middle East = Political opinion ≠ terror te

*Important fact: I have 0 criminal record. [No conviction of any sort]*

*The credibilities of both Reed and Lack were annihilated by the accused. [See the transcript]*

Texas Medical Center after the Texas Rangers received reports that Defendant allegedly planned to travel to Washington, D.C. to "kill blacks and Jews." Special Agent Reed testified that within the last two years, Defendant has had more than 20 reports with the Tyler Police Department and has been criminally trespassed from six businesses in Tyler, Texas, including all Walmart stores, Sam's Club, Panera Bread, Cumberland Place Apartments and both Tyler Supercuts locations. Defendant has been formally warned away from these businesses and may be arrested for trespass if he enters the premises for these businesses again. The Court additionally heard testimony from Defendant's former roommate, Matthew Lack, who testified about occasions when Defendant had been violent with him and made threatening statements of violence towards others. *after I pointed out numerous incompetency and inconsistency.*

The Court finds credible the testimony of Special Agent Reed, Task Force Officer Gregory Harry of the Tyler Police Department, Officer Mike Medders, the chief of police at University of Texas at Tyler, and Mr. Lack, especially in view of the supporting documentary evidence of Defendant's numerous encounters with law enforcement agencies and mental health history. *while they bailed out pedophiles and drug dealers.* The Court is further troubled by the nature of the charges brought against Defendant— *alleged   citizenship status not relevant to eligibility* that Defendant allegedly made false statements in order to obtain firearms. The Court has also reviewed and considered the report of the Pretrial Services Officer presented at the hearing, which recommends that Defendant be detained pending trial.

Defendant's contentions that he was improperly detained based on perjured testimony, hearsay and submission of false police reports at the initial detention hearing before the *Exhibit 1, Transcript? Cross examination? It was pretty supported* Magistrate Judge, Docket No. 47 at 3, are unsupported by any evidence. Similarly, Defendant's arguments that he has never been permanently involuntarily committed and that he has never had *"never been. I said formally committed, not permanently committed."*

Page 4 of 6

his firearms confiscated for being a prohibited person, *id.* at 3–4, do little to assuage the Court's concerns or mitigate against the ample evidence of Defendant's violent statements and behavior.

*[handwritten: Based on perjured hearsay not factual evidentiary basis.]*

The Court concludes on the basis of clear and convincing evidence that Defendant poses a danger to others and the community. The Court further concludes that there is no condition or combination of conditions under which the Defendant could be released that would reasonably assure that the Defendant would not pose a danger to the community.

*[handwritten: I have 0 criminal record]*

*[handwritten: Yeah, I was in jail past 6 months]*

Additionally, considering the nature of the offenses, Defendant's lack of employment and financial resources of his own, *see* Docket No. 140-1, that Defendant has no family or any other ties to the Eastern District, Defendant's strong ties to South Korea, *see* Docket Nos. 129-2 and 129-3, and in considering that Defendant allegedly falsified his citizenship status in connection with his applications for a firearm license, the Court concludes by a preponderance of the evidence that Defendant would also pose a flight risk if released. Though Defendant has surrendered his passport and provided an affidavit from Tina Simmons, the office manager at 1st Choice Bail Bonds, in which Ms. Simmons attests that Defendant fulfilled his bond conditions from December 5, 2016 until August 16, 2017 in connection with a Smith County aggravated assault charge, *see* Docket No. 133, on balance, the Court finds that there is no condition or combination of conditions in this case under which Defendant could be released on his own recognizance or unsecured bond that would reasonably assure Defendant's presence at trial.

*[handwritten: Despite the declaration from his family]*
*[handwritten: Despite this claim, Schröeder still does not grant me to proceed in forma pauperis]*
*[handwritten: Never applied for FFL, but for my Tx CHL I even sent the scan of my permanent resident card]*
*[handwritten: I also requested for possibility of a secured bond.]*

It is therefore **ORDERED** that Defendant's motion to appeal detention (Docket Nos. 47 and 48) are **DENIED** and that Defendant shall remain detained pending trial.

It is further **ORDERED** that the Defendant shall remain committed to the custody of the United States Marshal and is to be kept, to the extent practicable, from persons awaiting or serving sentence or being held in custody pending appeal. Defendant shall be afforded a

reasonable opportunity for private consultation with his standby defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SIGNED this 22nd day of October, 2018.

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

# STATE OF NEW JERSEY

SUPERIOR COURT
COUNTY OF SOMERSET

IN RE THE MATTER OF <u>HEONJONJ YOO</u>

<u>TEMPORARY</u> ORDER FOR THE INVOLUNTARY COMMITMENT OF AN ADULT

This matter having being brought before the Court on this 8th day of April 2013 for a Temporary Oder for Commitment to Treatment pursuant to *N.J.S.A.* 30:4-27.10(a), specifically seeking the involuntary commitment of Heonjonj Yoo, an adult (herein referred to as "patient") to inpatient treatment; and

The two necessary clinical/screening certificates having been presented to the court in the form required by *N.J.S.A.* 30:4-27(b); and

The court, upon review of the documents received, finding there to be probable cause to believe that the above-named patient is in need of involuntary commitment to treatment in accordance with the standard set forth in *N.J.S.A.* 30:4-27(m);

IT IS on this 8th day of April 2013 ORDERED that:

1.    The above-named patient be involuntarily committed to treatment and admitted to Carrier Clinic, unless an alternative placement is provided pursuant to the authority of the Commissioner of Human Services pending a court hearing with respect to the issue of continuing need for involuntary commitment to treatment, said hearing be conducted within 20 days from the initial commitment; and

2.    The court hearing (referred to in paragraph 1, above) is hereby scheduled for 10:00am on the 23rd day of April 2013 at Carrier Clinic; and

3.    County Counsel of Middlesex County is hereby assigned to present, at said hearing, the case for continuing involuntary commitment to treatment; and

4.    The following attorney is hereby assigned to represent the patient: John Kwasnik Esq.

5.   Notice of the time, date and location of the above scheduled hearing shall be served no less than 10 days prior to hearing date, upon the patient, patient's counsel, patient's guardian (if any), county counsel referred to herein, and patient's nearest relatives (include addresses):

Soyoun Yoo
15 Fourth Street
Closter, NJ 07624

The county adjuster of the county in which the patient has legal settlement, the director, chief executive officer or other individual having custody of the patient, and the following individual (include addresses):

_____

_____

_____

6.   The notice (referred to in paragraph 5 above) shall be served upon the patient, patient's guardian (if any) and patient's counsel and shall include a copy of this Order, a statement of patient's rights at the court hearing (*N.J.S.A.* 30:4-27.14) and the screening and/or clinical certificates and any other documents submitted in support of patient's involuntary commitment; and

7.   Service upon the patient shall be by personal service, all other persons specified herein to receive notice shall be served by _____
(mode of service)

with the following exceptions: _____

_____

_____; and

It is furthered ordered that _____

_____

_____

_____
Honorable Fred H. Kumpf, JSC



**FILED**

SEP 2 4 2015

KEVIN M. SHANAHAN, J.S.C.
CHAMBERS

**STATE OF NEW JERSEY**

**SUPERIOR COURT
COUNTY OF SOMERSET**

IN RE THE MATTER OF <u>**HEONJONG YOO**</u>

<u>**TEMPORARY ORDER FOR THE INVOLUNTARY COMMITMENT OF AN ADULT**</u>

This matter having being brought before the Court on this 24th day of September 2015 for a Temporary Order for Commitment to Treatment pursuant to *N.J.S.A.* 30:4-27.10(a), specifically seeking the involuntary commitment of Heonjong Yoo, an adult (herein referred to as "patient") to inpatient treatment; and

The two necessary clinical/screening certificates having been presented to the court in the form required by *N.J.S.A.* 30:4-27(b); and

The court, upon review of the documents received, finding there to be probable cause to believe that the above-named patient is in need of involuntary commitment to treatment in accordance with the standard set forth in *N.J.S.A.* 30:4-27(m);

IT IS on this 24th day of September 2015 ORDERED that:

1.      The above-named patient be involuntarily committed to treatment and admitted to Carrier Clinic, unless an alternative placement is provided pursuant to the authority of the Commissioner of Human Services pending a court hearing with respect to the issue of continuing need for involuntary commitment to treatment, said hearing be conducted within 20 days from the initial commitment; and

2.      The court hearing (referred to in paragraph 1, above) is hereby scheduled for 1000am on the 6th day of October 2015 at Carrier Clinic; and

3.      County Counsel of Middlesex County is hereby assigned to present, at said hearing, the case for continuing involuntary commitment to treatment; and

4.      The following attorney is hereby assigned to represent the patient:
Joseph Bilal Esq.

5.   Notice of the time, date and location of the above scheduled hearing shall be served no less than 10 days prior to hearing date, upon the patient, patient's counsel, patient's guardian (if any), county counsel referred to herein, and patient's nearest relatives (include addresses):

Soyoun Yoo
15 Fourth Street
Closter, NJ 07624


The county adjuster of the county in which the patient has legal settlement, the director, chief executive officer or other individual having custody of the patient, and the following individual (include addresses):

_____

_____

_____

6.      The notice (referred to in paragraph 5 above) shall be served upon the patient, patient's guardian (if any) and patient's counsel and shall include a copy of this Order, a statement of patient's rights at the court hearing (*N.J.S.A.* 30:4-27.14) and the screening and/or clinical certificates and any other documents submitted in support of patient's involuntary commitment; and

7.      Service upon the patient shall be by personal service, all other persons specified herein to receive notice shall be served by __*Certified Mail*__
                                                                (mode of service)

with the following exceptions: _____

_____

_____ ; and

It is furthered ordered that _____

_____

_____


_____
Judge Signature

**KEVIN M. SHANAHAN, J.S.C.**
Print or Stamp Judge Name



Sent 2018|0 2/5

In compliance with
28 USC §1746.

Heun Jung Yoo (Hank Yoo)   6:18 ~CR - 16
101 E Methvin St
Longview TX 75 601

US Appellate Court Clerk
600 Maestri Place
New Orleans  LA  70130