In ~~the~~ ... ~~Eastern~~ ~~Texas~~ ~~Division~~

USA v. Yoo ⟨CLERK, U.S. DISTRICT COURT RECEIVED DEC - 6 2018 EASTERN DIST. OF TEXAS⟩ 6:18 - CR - 16

Motion to vacate conviction and dismiss with prejudice.

I. Introduction: The accused, Hank Yoo, pro-se, demands the court to vacate his conviction and dismiss the case 6:18-CR-16 based on the fact that the case had been fruits of the poisonous tree, criminal conspiracy to deprive the accused of his constitutional rights, and malicious prosecution.

II Argument.

1. 20130405 hospitalization: Around 20130404 1300-1400 hours, at the Livingston dining hall at Rutgers University, the accused and his friends were having lunch when the accused started discussing about obtaining a firearm license, which was eavesdropped by two of dining hall employees, Stephanie Oates and Panagioti Dafnos, who made a fraudulent and unwarranted police call around 2100 hours. Oates and Dafnos reported that the accused stated that his family sells guns, and was discussing owning guns, buying guns, and making guns, then "an individual from residence life did not know who they were messing with. [Even RUPD specifically stated "Yoo did not specifically threaten to cause any harm to anyone or state he was going to" ] The RUPD [reporting E Ruff (#3768)] arrived at the accused's residence around 0122 hours. The RUPD witnessed no commission of crime nor any irrational behavior which would give them a probable cause and/or grounds to apply for a psychiatric warrant pursuant to NJAS 30:4-27.6. By misleading the ~~petitioner~~ accused with false pretexts and assumptions of it being something like 20min to 1 hour interview at an office, the RUPD had gotten the ~~petitioner's~~ accused's ~~consent~~ misled consent, not a fully informed consent, to be voluntarily transported

the accused was also persecuted for his interest in weapons, MMA, and his right wing political views. University of Connecticut staff/faculty had actively attempted to censor his speech, along with the LE of the UCONN, who once even entered the accused's residence in his absence w/o his permission. (Catherine Cocks and Kim Hill being the main conspirators)

to the RWJUH ER. [Notice that the accused was peacefully studying with his friends in a t-shirt and gym shorts when the RUPD arrived, then changed into a full 3 piece suit expecting an office interview not an ER confinement.] The accused, after waiting in the ER for more than 1 hour, told the ER staff that he had tests coming up and he had to leave. The accused was bewildered when the ER staff told him that he's not allowed to leave [Reference 30:4-27.3 and 30:4-27.20 of NJAS for voluntarily admitted patients.] The accused, having come voluntarily, did not understand why he was being held against his will. [It was later noted that the hospital staff made malicious and fraudulent reports stating that the accused was involuntarily transported to the hospital for threatening to shoot his RA.] Couple hours later the accused saw screeners who were extremely biased and grossly incompetent, including Kenneth Kaufman [The accused wonders the reason for screening if the patient's statements are automatically disregarded. Also, the screeners even used the accused's alleged diagnosis when the accused was a minor.] The accused tried to assert his right to leave several times citing the constitution, and was met with threats of restraints and sedation. This event is the poisonous tree. Everything else is its fruit. [On the 2015 report, note that Boutsikaris, Allende, and Embrescia lied that the accused was committed to a mental institution for homicidal threats in 2011 in NJ (Boutsikaris and Allende) when in reality the accused was in Korea attending an international school in 2011 and was never in NJ; the accused was committed previously for uploading pictures of guns and making terroristic threats (Embrescia)]

2. Federal codes and legal basis.
(a) 27 CFR §478.11 defines the definitions for "Adjudicate mentally defective" and "committed to a mental institution". [Note "The term (committed to a mental institution) does not include a person in a mental institution for observation or voluntary admission to a mental institution"]
(b) NICS Improvement Amendments Act of 2007
(1) ~~sec.~~ sec.101(c) ~~~~ defines the standards for adjudications and commitments related to mental health
(A) Sec 101(c)(1)(C), which is applicable to the petitioner, states that "No dpt. or age. shall provide to the Atty Gen. record of adjudication or commitment if it was based solely on a medical finding of disability, ~~and~~ w/o an opportunity for a hearing by court, board, commission, or other lawful authorities.
(B) Sec. 101(c)(3), states the agency must provide notice, to the individual that it conducts proceedings against to label such person as 18 USC § 922(g)(4)
(c) Addington v. Texas  441 US 418(1979) stated that ~~the individual~~ a "clear and convincing" standard of proof more ~~than~~ substantial than a mere preponderance of evidence is required for a commitment, since ~~an~~ an outcome of a civil commitment proceeding has such weight and gravity ~~~~ on individual liberty,

* To label a person prohibited under 18 USC §922(g)(4) based on a temporary hospitalization via exparte communication between a psychiatrist and a court would be equivalent to labelling a person prohibited under 18 USC §922(g)(1) based on a felony indictment rather than a felony conviction. A dismissed felony indictment is not a prohibiting factor; therefore a temporary hospitalization which resulted with administrative discharge is not a prohibiting factor.

(d) U.S. v. Rehlander 666 F.3d 45 (2012), the 1st Circuit appellate court ruled that exparte ~~restraining proceeding~~ proceedings may justify temporary hospitalization, but it would be violation of an individual's 2nd Amendment rights to bear arms and 5th Amendment rights to due process to permanently deprive an individual of right to bear arms. An adversary proceeding with proper due process, representation, and hearing is required for a commitment or adjudication for federal procedures. 18 USC §922(g)(4).

(e) US v. Giardina 861 F.2d 1334 (1988) [is notable even if it occurred prior to the enactment of NICS Improvement Amendments Act of 2007.] The 5th Circuit appellate court ruled that temporary detentions do not constitute as formal commitments for purpose of 18 USC §922(g)(4).

(f) US v. McIlwain, ~~this~~ 772 F.3d 688 (2014), the 11th Circuit appellate court affirmed conviction because the defendant received a formal hearing and was represented by an attorney. [Which did not happen to the petitioner. The petitioner had never even met the attorneys that they allegedly assigned to the petitioner and the petitioner never had a hearing, nor was the petitioner involuntarily confined according to the RUPD.]

(g) Gun Control Act of 1968 sec 101 states the purpose of the act, which is to aid LEO in their fight against crime and violence, not to place any undue or unnecessary restrictions on law abiding citizens. [The petitioner has NO criminal record.]

Pub. Law
90-618
title I
101

hospitalization. N.J.S.A 30:4-27.10(a) for temporary hospitalization based on ex parte communication between a psychiatrist and a court, and a formal commitment following a hearing N.J.S.A. 30:4-27.15(a). During a hearing, a patient has a right to due process guaranteed by N.J.S.A. 30:4-27.14.

(h) The 2nd Amendment of the US Constitution states "A well regulated militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

(i) The 5th Amendment of the US Constitution states "..., nor be deprived of life, liberty, or property, without due process of law; ..."

3. History / record of my "mental health" in RWJUH and Carrier Clinic [dates.]

(a) 20130405 - 20130419
 (1) 20130405: RUPD report 13-15051, admission to RWJUH ER then Carrier Clinic.
 (2) 20130408: Temporary order signed by Fred H Kumpf.
 (3) 20130419: Discharge from Carrier Clinic.
 (4) 20130423: Scheduled hearing by Fred H Kumpf which never occurred due to discharge.

(b) 20150921 - 20150930
 (1) 20150921: RUPD report 15-6019, admission to RWJUH ER then
 (2) 20150923: Admission to Carrier Clinic.
 (3) 20150924: Temporary order by Kevin Shanahan.
 (4) 20150930: Discharge from Carrier Clinic
 (5) 20151006: Hearing scheduled by Kevin Shanahan which never occurred due to discharge.

(c) 20151005: Admission to RWJUH ER, released in couple hours. [Sent to hospital ER for accidentaly carrying a knife at a "weapon free zone".]

\* No free the town assigned court attorneys to the hearing dates.        6
\* The ~~accused was~~ court assigned Atty. John Kwasnik for 2013 and Atty. Joseph Bilah to represent the accused ~~for~~ for upcoming hearings. The accused had never even for 2015 seen nor spoken to these attorneys.

## 4. NICS Record dates.

(a) 20130419: "Adjudicated mentally defective entry [NRI 1630406673]

(b) 20150925: "Adjudicated mentally defective/committed to a mental institution" entry [NRI 1726660288]

(c) 20160119: The petitioner's very first interaction with NICS. His purchase [NTN 340H3TY] of a shotgun was denied.

(d) 20160119 - 20160318: The petitioner filed inquiry/appeal on those denial, demanding to know the reason for denial. NICS, however, either completely failed to or refused to inform the petitioner the specific reason for denial which are above two entries. The petitioner informed NICS that he's a permanent resident, with 0 criminal convictions, and ~~also~~ ~~denial~~ suspecting the possibility of Rutgers records or any previous unlawful confinement to hospitals being entered as a factor, the petitioner also submitted the cognitive assessment report by Andrew Daren. Again, without ~~telling that the~~ ~~to~~ informing the petitioner that he had been fraudulently labelled as "adjudicated mentally defective/committed to a mental institution", NICS affirmed denial on 20160318.

## 5. Military enlistment

(a) Since January 2015, the petitioner became adamant about joining the US military, which was his goal career since middle school. The petitioner was confused and frustrated why he kept on getting

denied from enlistment despite having 95/99 ASVAB score. This year (2015) alone, the petitioner tried enlisting through 5 different recruiters and still was not informed that "adjudicated mentally defective/committed to a mental institution" entry was the reason why the petitioner was the reason why the petitioner was getting denied. The petitioner thought an accidental entry of ADHD diagnosis was the reason for denial, so the petitioner focused on proving that he does not have ADHD, which the first assessment with Dr. Andrew Daren was about.

(b) On 20160126, the petitioner swore into the US Army at Dallas MEPS with a 4 year contract of infantry. The petitioner was scheduled to ship out to Fort Benning for basic training on 20160808.

(c) Had the FBI NICS properly informed the petitioner on 20130419 of the entry pursuant to NIAA 2007 Sec. 101(c)(3) or at least informed the petitioner of the entries during 20160119-20160318 inquiry/appeal, the petitioner would have immediately informed his recruiter to put his enlistment on hold and would have gone through the proper channels to ensure the fraudulent entries were discarded of to properly pursue his dream career of military enlistment.

(d) Sometime during April of 2016, the petitioner received a call from MEPCOM that he had been disqualified.

(e) The petitioner even contacted Congressman Sam Johnson for help, even then the MEPCOM did not inform either the petitioner nor the congressman of the fraudulent NICS entries.

✱ Tyler residents also have history of contacting and reporting the petitioner to LE 8 and on many occasions ~~tried~~ making fraudulent police calls for being offended at petitioners views and speeches. Tyler PD actively responded to these irresponsible, ~~cold~~ wasteful, and unlawful calls, and sometimes even encouraged this unacceptable behavior.

(f) Still suspecting hospital records, sometime during the year of 2016, the petitioner's family hired Attorney Matthew Jeon to expunge the hospital records of RWJUH and Carrier Clinic. Jeon still did not discover the NICS entries.

(g) The petitioner still tried to pursue enlistment, this time into the United States Marine Corps, with the help of Lcp. Joseph Austin Wynn, his good friend.

6. Case # 241 - 0072-17 Aggravated Assault 241-0576-17

(a) Synopsis.

(1) On 20160202, the petitioner and his 3 ~~support~~ friends were arrested for aggravated assault. [TX PLC 5§22.02.]

(A) Matthew Lack insisted on confronting the individuals who allegedly robbed Carlos Hernendez, ~~or~~ assaulted Lack, and stole Lack's vehicle. The petitioner recommended calling the police. Lack ~~did did~~ not cooperate. The petitioner and his friend, Jesse Long, agreed to accompany Lack, but informed Lack that he must disengage if the situation deteriorates. However, the petitioner and his friends decided to be armed just incase for ~~the~~ if the worst case scenario were to occur.

(B) Lack however, upon exiting the accused's vehicle, got into a heated discussion with the people at the property. The heated discussion degenerated to hostile confrontation. The petitioner repeatedly told Lack to get back in the truck.

* * Petitioner has not seen the indictment, until this case 6:18-CR-16
itself of the 241-0072-17
and
241-0576-17 case

According to Lack, one of the residents of the property
that he was facing pulled a Taurus Judge on him, so
therefore Lack displayed the petitioner's Ruger LCP,
which the petitioner did not permit Lack to carry.
The petitioner took the pistol away from Lack and
the petitioner and his friends dragged Lack back
to Truck and left. This incident was recorded
by one of the residents.
(C) The Tyler PD then caught up with the petitioner's
vehicle and pulled the petitioner and his friends
over at gun points. After asking series of
questions, all 4 of the petitioner's group was
transported to Smith County Jail.
(D) Sgt A. Colby (#11298) was the lead in this arrest.
(2) Indictment. 20170126, 20170420 stated *
all 4 co-defendants "intentionally and knowingly threaten Deril Franklin
with imminent bodily injury by pointing a firearm at
Deril Franklin" when in reality no one actually
pointed a firearm at anyone and only Lack
brandished a firearm.
(3) The case was dismissed on 20170727.
(b) Legal basis.
(1) §22.02. ⌀ of Texas penal code describes defines
5 aggravated assault. It is defined as
(A) Causes serious bodily injury to another, including the
person's spouse, or
(B) Uses or exhibits a deadly weapon during the commission
of the assault.

(c) Analysis.

(1) Abuse of discretion on Tyler PD part. No aggravated assault was committed, ~~but would by either~~ ~~section~~ pursuant to TX penal code 5§22.02. [The only person that could possibly commit "Agg Assault" would be Matthew Lack according to the "Victim statement" by Deril Franklin, but not according to the video report of R. A. Strother- (10622), strictly going by non hearsay evidence.]

(2) Even the "victim statements" are mostly inconsistent.

(3) Witnesses other than victims claimed that they did not witness a weapon except for Wesley Wood.

(4) The reports has some consistencies however:

(A) Only Lack was witnessed displaying a weapon.

(B) The petitioner took the pistol away from Lack. The petitioner's interaction with the residents was limited to insults and racial slurs. The petitioner did not display any weapon, ~~was or~~ anything physical in a violent manner, nor even threatened the residents.

(C) Long and Hernendez had 0 interactions with the residents. [But was still charged with Agg Assault.]

(5) The grand jury testamony was perjured, malicious, and misleading. Lucas Machicek is guilty of either perjury or subordination of perjury. Jason Parrish was ineffective by not tackling this issue.

(6) Should have been dismissed with prejudice.

7. Texas Concealed Handgun License (#0673530)

(a) Summary of events.

(1) Around 20160207, after receiving required training by Timothy Dodds, the petitioner applied for TX Concealed Handgun License.

(2) After the petitioner submitted necessary documents such as a copy of his permanent resident card, the petitioner received his CHL on 20160524. On the question whether he had been treated for mental health, the petitioner answered no since he was never required to receive any form of this treatment.

(3) Around 20160705 Sam Owens (#518) of Prosper PD filled out a revocation affidavit with reasons being the denial into the US Army and "Appears to leaning towards radical thinking"

(4) Around 20160802, Conrad Rodriguez (#8351) of TX DPS filled out a revocation affidavit that the petitioner had omitted the fact that he had been treated in a mental health institution and admitting to DCCCDPD. [DCCCD PD told the petitioner that his interview with them would remain confidential. DCCCD PD coerced the petitioner to tell them about Rutgers incident. The petitioner also never waived his right to counsel during this forced "interview"]

(5) Around 20160831, shortly after receiving "seeking revocation"

notice, the petitioner submitted an expert recommendation from Andrew Daren (#020211) that the petitioner is mentally sound to be capable of sound judgement in the storage and use of a handgun. [Andrew Daren did the cognitive assessment back in November 2015.]

(6) Around 20160915, Lee Arnold, Carolyn Carmen, and Thomas Coopwood of TX DHS decided that the petitioner is incapable of exercising sound judgement with a CHL.

(7) Around 20160927, TXDPS issued a renewed CHL to the petitioner with an updated address.

(8) Around 20160928, Kathryn French, the legal secretary of TXDPS, sent the petitioner a notice that the department decided to revoke his CHL. The petitioner appealed. ~~of the hearing~~
~~petition it. Decision about~~

(9) Around 20161203 Robert Main of Tyler PD (#11939) filled out 3rd affidavit for the revocation of the CHL following Rodriguez and Owens, the reason for revocation being the agg assault arrest.

(10) Jean O'Shaw (Bar #24004847) of TX DPS submitted the 2nd petition for revocation shortly after this ~~arrest~~ indictment [first being around 20160928.] citing the code section 411.180 of Texas government code.

(11) On 20170202, ~~the petitioner filled~~ Kathryn French sent a mail that the revocation hearing was set for 20170228 at Smith County's Justice of Peace Court Precinct 2.

(12) On 20170206, Kathryn French sent a mail to the petitioner stating that the hearing had been postponed to 20170309.

(13) On 20170210, French sent a mail to the petitioner stating that the hearing had been postponed to 20170315.

(14) On 20170315, the petitioner did not appear at the hearing due to recommendation from Jason Parrish, the attorney for the case 241-0072-17, and the judge affirmed revocation.

(15) On 20171106, the petitioner purchased a shotgun using his CHL. The next day he exchanged the shotgun due to defect. Using his CHL.

(16) On 20171129, the TX Rangers confiscated his CHL.

(b) Analysis.

(1) TX GC §411.172 determines eligibility. Examining all factors listed, the petitioner was eligible.

(2) The petitioner was not informed that any statement that the petitioner made to DCCCD PD would be used against him. He also did not waive his right to counsel. [DCCCD PD stated that the interview would not be used against him.]

(3) Sam Owens of prosper PD ~~abused~~ abused his discretion to politically persecute the petitioner.

(4) Pursuant to TX GC §411.186, upon felony indictment or class A or B misdemeanor charge, the department must suspend, not revoke, the CHL

until the disposition of the case. The ~~petitioner~~ department, however, did not suspend and postpone the petitioner's hearing until after the disposition of the case 241-0072-17 and 241-0576-17, preventing the petitioner from receiving an impartial and just hearing along with proper due process. Also Jason Parrish, either ~~due to~~ malice, negligence, or incompetence, gave the petitioner completely ineffective counseling regarding this issue ~~and~~ and did not even attempt to represent ~~me~~ the petitioner. The CHL was unlawfully revoked.

(5) The TX DPS completely disregarded the recommendation of Andrew Daren, who actually put the petitioner through 8 hours of rigorous evaluation.

(6) The emails exchanged between TX DPS members demonstrate their conspiracy to deprive the petitioner of his gun rights.

(7) This event also traces its origin to the poisonous tree, 20130405 unlawful confinement.

(8) Regardless of the CHL status, the petitioner should have been eligible for firearm purchase on 2017/1/06 and 2017/1/07.

(9) The petitioner had 0 accidental discharge, had never been convicted of ANY crime at the point, and the TX DPS and DHS had no factual evidentiary basis not legal basis to claim that the ~~petitioner~~ petitioner was incapable of exercising sound judgement with respect to the proper use and storage of a handgun.

* David Biggs could not even spell properly or use proper grammar. He also
labelled the petitioner "mentally ill" due to the petitioner's "weird pritical views"
while labelling the petitioner as a socialist, which is completely opposite of the
petitioner's views

## 8 No Confiscation.

(a) FBI had visited the petitioner's residence 3 times,
once during 2016 and twice during 2018 with most
recent one being 20180323 by Gregory Harry.
[Gregory Harry conducted unlawful intel gathering
during this visit pretending this visit is to give "lite knows"]
The FBI was well aware of the petitioner's gun
ownership. The FBI has never attempted to confiscate
the firearms, nor informed the petitioner that he had
been labelled as a prohibited person.

(b) TX Rangers visited the petitioner on
20171129. David Biggs from Smith County Sheriff's
office unlawfully confined the petitioner to ETMC ER.
TX Rangers seized the petitioner's firearm for "safe keeping
only". The petitioner was released from ETMC ER
on 2017/1201 and the Rangers returned his firearm
on 20171205.

(c) There were several other visits by local LE and
several times the petitioner publicly protested with his
rifles, shotguns, and pistols. The petitioner was never
arrested nor had his firearm confiscated.

9. Tyler TX FBI Office's criminal conspiracy.

(a) On Tyler PD report 17-017054, dating back to
20170818, the Tyler FBI office told P.P. Matthews
(#9776) of Tyler PD that "Yoo comes to their office about
once a month to complain that he is being followed, or
that he is a "Target", and aware of that Yoo has mental
problems." The petitioner has never been to the Tyler FBI

* After the petitioner had been transported to St Georges by JJS, the
petitioner suffered through incompetence, malice, and negligence of the ETMC medical staff.
and the screener, Camille Prinz, who perjured severely on her screening report, [If the
petitioner was actually a threat and danger, the petitioner would have gotten committed
through a court hearing, not released within 48 hours. ]

office nor know their address. This is a demonstrative lie
in attempt to paint a picture of the petitioner as a
mentally ill individual. The only time that the petitioner contacted
Tyler FBI office was by calling them on the phone to
report a pedophile in Washington State named Nathan Crane.

(b) On UT Tyler PD report 2018-000039_6, Gregory
Harry stated "Why isn't there a document which would
permanently prohibit Hank Yoo from possessing a firearm."
proving that                    actually a
(1) The petitioner was never ~~a~~ prohibited person and
(2) FBI and several gov agencies had conspired to make
    the petitioner one.

10. Search and seizure warrant. by James R Reed
 (a) Contents                    probable cause section
  (1) The search warrant application is pretty much congruent
      to the criminal complaint affidavit except for the
      last part, which targets the petitioner's social media
      activity and political views.
  (2) The search warrant application asks⁻ authorization
      for seizure of completely irrelevant and inadmissible
      items such as the petitioner's electronics, medical records,
      etc.
 (b) Analysis.
  (1) FRCrP Rule 41(c) governs which items are admissible
      under search and seizure warrant.
  (2) §924(a)(1)(A) and §922(a)(6) ~~were~~ are document fraud
      charges regarding firearms. Any evidence or fruits
      would be with the dealer not the petitioner. Even counting

the firearms that the petitioner owned as "fruits of the crime", [in that case, only the Mossberg 590 tactical (serial # R188306) and SW VE 40 (# RBM 9366) were involved in the ~~firing~~ alleged charges of §924 (a)(1)(A) and §922 (d)(6), and 3 other firearms that the ATF seized that day were not, thus inadmissible.] There is no justification for seizing the petitioner's cell phone, hard drive, etc. [2 of the firearms that the ATF seized, SN:00021ONW and SN: TE94562, had not even been mentioned on the criminal complaint and affidavit by James R Reed.]

(3) The ATF, the prosecution, and the court had likely been attempting to generate/manufacture false charges using the items seized such as terroristic threats, ~~manufacturing~~ fake id, etc, and did manufacture a fake charge of 18 USC §922(g)(4). [Note that during the 1st detention hearing of 20180430, Reed stated that ~~these~~ he does not see a judicial order regarding the petitioner's mental health.

(4) The search was conducted after the arrest and in absence of the petitioner.

(5) The petitioner raised several motions regarding the search warrant. Schroeder either denied all of them, to the best of the petitioner's knowledge, or refused to rule on them.

11. Administrative forfeiture.

(a) Synopsis.

(1) Around late May 2018, the petitioner received a notice from the BATFE that they are seeking to administratively

\* The unconscionable plea deal suggested by Coan to include Criminal petitioner's 4 firearms (SN: R188306, FFK027370, TE94562, RBM9366). Van Cleef became the petitioner's atty on 20180814, which means the so called "administrative forfeiture" did not occur until the petitioner refused the plea deal.

forfeit the petitioner's Para 1911 (SN: 00021ONW) and 4587 rounds of ammunition. The petitioner promptly challenged it.

(2) Around 20180817, the petitioner's attorney at that time, L. Charles Van Cleef, informed the petitioner that the prosecution had "administratively forfeited" 4/5 of the seized firearms. The petitioner never had been notified of this "seeking administrative forfeiture."

(3) On 20180926, Coan stated on his response (dkt #101) that a certified notice for the "administrative forfeiture" was mailed to the petitioner at Gregg County Jail on 2018 0427. This is a lie.

(4) On 20181115, the jury forfeited the petitioner's Para 1911 and ammunition. Judge Schroeder entered order of forfeiture on 201811. The petitioner filed an appeal on 20 181120.

(b) Analysis

(1) Forfeiture is a post conviction procedure. Rule 32.2 of FRCP.

(2) Upon refusing the unconscionable plea deal suggested by Coan, the prosecution "administratively forfeited", which in truth unlawfully forfeited or stolen, 4 of the petitioner's firearms without an opportunity for the petitioner to challenge the unlawful forfeiture, to prevent the petitioner from getting those firearms back upon acquittal or reversal of conviction following appeal.

(3) Coan claims that a written notice had been sent to the petitioner at Gregg Co Jail around 20180427, but the petitioner did not challenge the "administrative forfeiture" while challenging the "administrative forfeiture" of para 1911 and 458

19

rounds of ammunition. This is a complete ~~too~~ and blatant lie and a severely logically flawed statement. The petitioner, being a firearm enthusiast and made great effort to build his collection over the course of two and half years, without any doubt would have promptly challenged it if properly notified. Coan then claims that the notice had been posted on the "official government website" for "30 consecutive days" as required. However, (A) Gregg Co Jail has no internet access for the inmates and (B) None of the petitioner's friends were also aware of it. Coan's attempt to defend his position utterly logically fails ~~has~~ to disprove his malicious and incompetent prosecution.

(4) This only ~~proves~~ confirms ~~that~~ the criminal conspiracy of the DOJ to deprive the petitioner of his constitutional right to bear arms.

(C) Superceding Indictment.

(1) Since June, Coan had been attempting to coerce the ~~accused~~ petitioner into pleading guilty under the threat of imposing a superceding indictment of 18 USC § 922(g)(4).

(2) It is highly likely that Coan knew that he had no grounds for this charge. I see the testimony of James R Reed during the cross examination of detention hearing on 20180430 and affidavit by Sandra Coleman I, therefore not starting the case with this charge.

(3) On 20180919, the petitioner's Emergency Motion for Pretrial Release had been ~~been~~ registered to the docket. On 20180919, Coan filed superceding charges. On 20180920, the grand jury returned the indictment. Coan likely filed

* Reed also lied on several occasions in his report that he based his testimony on to mislead the court.

* Coan also lied on numerous occasions that §922(g) is an aggravated felony, and dug his own grave by citing 8 USC §1101(a)(43)(E). [Simple possession is not illicit trafficking] and stating that the code states §922(g) is an aggravated felony on dkt#186

       this charge to

    (A) Prevent the petitioner from getting guaranteed release pursuant to 18 USC § 3142(f)(1), and

    (B) To justify his unlawful motion to detain on 20180406. Since pursuant to 18 USC § 3142(f)(1), §924(a)(1)(A) and §922(a)(6) are not subject to detention hearing [also 18 USC § 3142(e)] and the petitioner should have been released from initial appearance. See US v. Berrios-Berrios 791 F.2d 246 (2nd Cir 1986) and US v. Salero 481 US 739, 754 (1987)

    (4) The superceding indictment mentioned for feiture of the petitioner's para 1911 and 4587 rounds of ammunition.

12. Pro-se hearing and 2nd detention hearing.

    (a) During 1st detention hearing, 20180430, Reed, Harry, and Medders were called to witness stand to testify against the petitioner labelling him a threat. All 3 committed numerous perjuries along with Coan and submitted 0 factual evidences, only hearsay. Coan labelled the petitioner a "prohibited person" w/o any factual evidentiary basis or legal bases [Note Reed stated that he does not see any judicial findings among the petitioner's mental health records.]

    (b) During pro-se hearing of 20180823, Coan blatantly lied that the petitioner admitted that he is schizophrenic to LEO to prevent the petitioner from proceeding pro-se, which is his constitutional right.

    (c) During 2nd detention hearing of 20181010, Coan and Reed came up with a "temporary order" regarding the unlawful confinement of 2013 and 2015. Machlak subpoenaed Matt Lack, the only convicted one of the case

21

* Schroeder purposely did not rule on majority of the motions. During pretrial Conference, the petitioner filed for continuance ~~or the~~ schroeder denied it. Then the petitioner filed for stay. Schroeder denied it also, preventing critical pretrial motions from taking effect and preventing the petitioner from calling in witnesses, etc.

241-0072-17 and 241-0576-17, and coached Matt Lack to commit numerous perjuries. [Lack did not deny Machicek offering him deal to testify against the petitioner regarding his deferred probation.] Machicek and Lack attempted to turn the guilt of the case to the petitioner but failed miserably during cross examination. Coan, near the end of the hearing, showed his blatant disregard and contempt for the petitioner's right to self defense and the 2A in general, revealing the prosecution's political bias, stating "The defendant stated that he will not hurt anyone unless in self defense. That's exactly the reason why he is a danger." [See the transcript] Schroeder also committed perjuries and contradicted himself in his order for detention (dkt #149).

13. Pretrial conference and Trial.

(a) Coan, Machicek, and Locker called in 0 actual witnesses with first hand personal knowledge of alleged 2013 and 2015 "commitment" such as the psychiatrists involved, RUPD ~~LEOs~~ LEOs for the report 13-15051 and 15-60199, etc. [The accused actually did along with Malicious prosecution motion, which Schroeder denied due to "did not show inability to pay or significance of these witnesses" while completely ignoring the petitioner's financial affidavit to proceed informa pauperis. The petitioner re-filed the subpoena for his witnesses during the pretrial conference, which contained psychiatrists and LEO with first hand knowledge. Schroeder ~~denied~~ did not rule on them for being "too late" ~~and~~, and ~~he~~ asked the petitioner why hasn't he submitted the informa pauperis

* The accused attempted to enter several self-authenticating documents *exhibits* into the evidence, ~~which~~ were actually pertaining to the guilt or innocence. Though it was obvious that the grounds to enter those evidence existed, Schroeder either outright denied them or ultimately refused to recognize them as evidences, while being very lenient to the prosecution

motion that Court mailed him on 2018/11/02. The petitioner neither received it nor have docket access at Gregg Co. Jail.

(b) Coan and Machicek repetitively attempted to mislead the jury and the court regarding the law especially on NFAA Sec.101(c)(1)(C) and Abramski v. US. 134 S.Ct 2259.

(c) Despite the letter and color of the law, Schroeder sided with Coan and Machicek in terms of jury instructions and went along with their suggestions, even reading the ~~original~~ *which is made* suggestion prior to the petitioner's objection out to the jury after repeated objection by the petitioner and after Schroeder repeatedly told the petitioner "We will discuss and settle on the jury instructions later".

(d) Coan, *Locker,* and Machicek repetitively attempted to portray the petitioner as a threat to the society. During closing statement Machicek claimed the petitioner is a threat/danger openly and directly. [ Asking "are these type of guns for hunting/sporting or tactical?" ]

(e) Schroeder denied staying forfeiture pending appeal. The jury forfeited the petitioner's 1911 and 457 rounds of ammunition.

(f) James Reed and Locker: "Now is Mr. Yoo a prohibited person?" "Yes, he's a convicted felon." *I don't know the spelling*

(g) For reasons unknown, Schroeder prohibited several vhordire(?) questions prepared by the petitioner.

(h) The prosecution still had the 4 firearms that the ATF allegedly "administratively forfeited" during trial on display. The petitioner called out they were unlawfully "forfeited."

(i) Prosecution abused their discretion [such as objecting whenever they were cornered.] The judge purposely did not let any of the petitioner's exhibits

self proclaimed proficiency through vast experience became deaf, dumb, and blind upon cross examinations. This had been the ~~common~~ pattern among the prosecution's witnesses. Either these witnesses overstated their credentials or were being evasive.

into the evidences except for 1. Several times the petitioner tried to put the federal codes and Law Enforcement reports on display via projectors, and Schroeder only allowed 2 or 3 instances even though there were obvious grounds. [such as RUPD reports of 13-15051]

(j) Schroeder denied the petitioner's request for bench trial.

(k) After the trial, Joseph Brown, Coan, Machicek, and immediately Locker's boss, gave a press release attempting to portray the petitioner as a potential mass shooter and how this case is a great example of the federal, state, and local LEO working together to stop the threat, that the petitioner possessed firearms while having been involuntarily committed to mental institutions multiple times, and how LEOs had to " get him off the street" or it could have "ended badly." Brown proved/exposed the prosecution's true agenda: Political persecution. [The petitioner has 60+ police reports against him and never been charged with a threat or any ~~to~~ violent crime (except for 241-0072-17 and 241-0576-17, which Machicek perjured to get an indictment and which was abuse of discretion on Tyler PD part from the beginning, and which was ultimately dismissed) nor the prosecution has any factual evidentiary basis that the petitioner is a threat.] [The petitioner ever had 0 accidental discharge]

(l) See the transcript and see political beliefs of Machicek, Coan. [Petitioner ~~#~~ is a hardcore Trump supporter]

(m) Reed actually confirmed during cross examination that the way that petitioner owned firearms was the safest and responsible way [storing to them in safe, etc]

24

* The only one who had actually suffered irreparable harm from this criminal conspiracy and these fraudulent police reports is the petitioner himself.

* Prosecution ~~Cour~~ kept on switching back and forth between 457 and 458 rounds of ammunition.

III. Conclusion: The right to bear arms [2A] and freedom of expression/speech ~~are~~ [1A] are constitutionally protected rights granted by our founding fathers. Several different government agencies, colleges/universities, ~~████ ████ ████~~ medical staff, and even random civilians have conspired against the petitioner to deprive him of life, liberty, and property due to the petitioner's strong nationalism towards America, advocacy for 2A to the very letter of the law, and other non-mainstream and non-conformist political views of his which many individuals find offensive. [Being verbally offensive is not a crime.] Although the petitioner did not even have a Class-C misdemeanor conviction nor has actually threatened nor planned to harm anyone, throughout the case 6:18-CR-16 and throughout his life, the petitioner had been denied of his 5A right to life, liberty, and property, and due process [and 6A right to adequate counsel and right to call witnesses during the case 6:18-CR-16] by being ~~i █████~~ denied bail and confined in a facility w/o a law library, email, docket access, etc and which is far below federal minimum standards of detention in all aspects, and by getting subpoenas denied while his in forma pauperis status being refused to be ruled on by the court (see other habeas corpus applications for further details on detention and 6A violation) To prevent further unwarranted undue burden and irreparable harm, and to uphold actual justice and letter and color of the law, the petitioner ~~████████~~ demands ~~██~~ the honorable court to ~~██████~~ release the petitioner from custody, ✓~~and~~ to vacate his conviction, with prejudice and dismiss the case so the petitioner can clear his name, get back to his life, and to follow his pursuit of happiness, and ultimately to uphold and defend the constitution and spirit of this ~~████~~ great nation.

* The accused was reported for playing dixie on piano
* FBI and ATF were possibly attempting to use "potential school shooter" narrative
to fabricate a probable cause for unlawful arrest of the accused on
2018 0406. [The arrest warrant was either fraudulent, defective, or non existent.]
  [see Brown's press release.]

II Arguments (additional info)

14. U.T Tyler.

(a) Students: Students at UT Tyler made numerous fraudulent
reports against the accused in attempt to remove him from
the campus or to portray the accused as a danger to the society
and paint the picture as a "potential school shooter" without
any factual evidentiary basis nor legal basis. [The worst one
being Jonathan Horchler who actually stalked the accused.
even outside of the school.] In reality. they just hated
the fact that the accused was not timid and was vocal
about his political views, and even the fact that the accused
have those political views itself. [How the accused was very out
spoken about his support for President Donald Trump, going
around yelling "Hail Trump" with a Roman salute]
The students used calling the police as a method to silence
the accused eventhough it was apparent that there was no
emergency of any kind.

(b) Faculty/staff: David Hill, with complete disregard for
the accused's due process or rights as a student, gave
the accused 2 inschool suspension which the accused was
limited to travelling to class and back to his residence.
[Eventhough the accused had meal plan, the accused was
prohibited from going to dining hall during these month
long inschool suspensions] The UT Tyler admin eventually
kicked the accused out of the school because the accused
did not disclose the fact that he attended UCONN,
even though the accused did not receive any credit
from UCONN.

* The accused's case is pretty much based on the criminal conspiracy of the DOJ, LEUs, Medical staff personnel, and faculties of the universities, students, and the people in general attempting to pathologize dissent.

(c) Law Enforcement: The UTPD actively responded and even encouraged the irresponsible and unlawful behavior of the students and harrassed the accused. The UTPD also conspired against the accused with RUPD, UCOMN, and FBI, in attempt to portray him as a threat without any factual evidentiary basis or legal basis. [Chief Medders of UTPD told the accused that he had always been respectful to LE and that they (UTPD) had no problems against the accused, which was recorded by the accused. Then Medders completely contradicted himself during the detention hearing of 20180430 and committed numerous perjuries. Medders also tried to silence the accused and violate his 1A rights while the accused was going to UT Tyler by telling him to censor his offensive speech. I

[Notice of harmless error: Any "petitioner" should be considered as "accused" if it is used to substitute the first person narrative of Hank Yoo. FRCrP 52 (a). Since for reasons unknown and illogical, Gregg Co Jail does not have white outs for the commissory and will not let the accused borrow it.]

20181201. Hank Yoo.