IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| | § CASE NUMBER 6:18-CR-00016-RWS |
| v. | § |
| | § |
| | § |
| HEON JONG YOO | § |

## ORDER

Before the Court is Defendant's Motion for Judgment of Acquittal (Docket No. 261); Defendant's Supplemental Motion for Judgment of Acquittal, Request for Judicial Notice, and Reminder to Rule on the Motion (Docket No. 329); Defendant's Supplemental Motion for Judgment of Acquittal (Docket No. 337); and Defendant's Supplemental Motion for Judgment of Acquittal (Docket No. 360). The government filed a response to Defendant's Motion for Judgment of Acquittal (Docket No. 275). After considering the briefing and evidence submitted by the parties, as well as the record in this matter, the Court finds that Defendant's motions should be **DENIED-IN-PART** and **DENIED-AS-MOOT-IN-PART**.

*Background*

On April 18, 2018, a federal grand jury in the Eastern District of Texas returned a seven-count indictment against the Defendant, Heon Jong Yoo. *See* Docket No. 10. On September 19, 2018, an eight-count superseding indictment was returned against the Defendant. *See* Docket No. 84. Defendant was charged with seven violations of 18 U.S.C. § 924(a)(1)(A) for falsely listing his country of citizenship on ATF Form 4473s as "United States of America." *Id.* Defendant was

also charged with a violation of 18 U.S.C. § 922(g)(4) for unlawfully possessing a firearm after having been committed to a mental institution. *Id.*

At the conclusion of trial, the jury returned a guilty verdict on all counts. *See* Docket No. 247. Defendant now brings the instant motions for judgment of acquittal and related relief.

*Discussion*

### A. Judgment of Acquittal

The Federal Rules of Criminal Procedure provide that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." FED. R. CRIM. P. 29(c). In considering a motion for a judgment of acquittal, the court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2064 (2012); *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012); *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir.), *cert. denied*, 133 S. Ct. 673 (2012).

"The trial court may not substitute its own subjective interpretation of the evidence for that of the jury's." *United States v. Varkonyi*, 611 F.2d 84, 85 (5th Cir.), *cert. denied*, 446 U.S. 945 (1980) (citing *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979)). Indeed, the court must "consider the evidence in the light most favorable to the government, drawing 'all reasonable inferences and credibility choices in support of the verdict.' " *United States v. Demmitt*, 706 F.3d 665, 677 (5th Cir. 2013); *accord United States v. Anderson*, 559 F.3d 348, 535 (5th Cir.), *cert. denied*, 557 U.S. 913 (2009). Moreover, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilty, and

the jury is free to choose among reasonable constructions of the evidence." *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir.), *cert. denied*, 517 U.S. 1228 (1996); *accord United States v. Meza*, 701 F.3d 411, 418 (5th Cir. 2012). "A court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (quoting *Jackson*, 443 U.S. at 319). Therefore, "the only question . . . is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.

    a. <u>Counts I – VII: Violations of 18 U.S.C. § 924(a)(1)(A)</u>

Section 924(a)(1)(A) provides for criminal penalties against "whoever knowingly makes any false statement or representation with respect to the ***information required by this chapter to be kept*** in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter." 18 U.S.C. § 924(a)(1)(A) (emphasis added). The Defendant does not attack the sufficiency of the government's evidence or the falsity of the information he provided with respect to his citizenship on ATF Form 4473. Rather, he contends that citizenship information does not fall within the scope of "information required to be kept" pursuant to § 924(a)(1)(A). *See* Docket Nos. 261, 360.

In support, Defendant provides the text of 27 CFR §§ 478.124(a)–(c) and states that "none of the above codes specifically define the '[i]nformation required to be kept' pursuant to 18 U.S.C. §§ 924(a)(1)(A) and 924(a)(3)(A)." Docket No. 261 at 2–3. The Defendant then cites *Abramski v. United States*, 573 U.S. 169, 191 (2014), for the proposition that the only information on ATF

Form 4473 required to be kept by Federal Firearms Licensees ("FFLs") is the transferee's name, address and date of birth. *Id*. at 3. Defendant's arguments are misplaced.

Section 924(a)(1)(A) criminalizes the falsification of information that is required to be kept under "this chapter." 18 U.S.C. § 924(a)(1)(A). Because section 924(a)(1)(A) falls within chapter 44 of title 18 of the United States Code, the term "this chapter" refers to chapter 44. Within chapter 44 is Section 923(g)(1)(A), which requires a licensed dealer to "maintain such records of . . . sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe," and section 926(a), which directs the Attorney General to prescribe necessary rules and regulations to "carry out the provisions of this chapter." 18 U.S.C. §§ 923(g)(1)(A), 926(a). Accordingly, regulations issued by the Attorney General in furtherance of Chapter 44 are also enforceable under Chapter 44.

Under 27 C.F.R. 478.124(a), the Attorney General requires a licensed dealer to record every firearm transaction to an unlicensed individual "on a firearm transaction record, Form 4473." *See Alexander v. Sandoval*, 532 U.S. 275, 284 (2001) ("[R]egulations, if valid and reasonable, authoritatively construe the statute itself."). It is undisputed that ATF Form 4473 requires applicants to indicate their country of citizenship and that the Defendant entered this information falsely. *See* Gov. Exh. 3; Trial Tr. (November 15, 2018) at 78:11–16, 86:5–89:23.

Moreover, *Abramski* does not support the Defendant's argument that section 924(a)(1)(A) is only violated upon falsification of name, address and date of birth. In *Abramski*, the issue before the Supreme Court was whether "a customer's statement that he is the 'actual transferee/buyer,' purchasing a firearm for himself, when in fact he is a straw purchaser, buying the gun on someone else's behalf" is a violation of § 924(a)(1)(A). *Abramski*, 573 U.S. at 175. The Supreme Court found that falsifying the true purchaser's name, date of birth and address is a violation of

§ 924(a)(1)(A). *Id*. at 188–189. The Court did not, however, state that § 924(a)(1)(A) was only violated by falsifying those three points of information.

The Court "consider[s] the evidence in the light most favorable to the government, drawing 'all reasonable inferences and credibility choices in support of the verdict.' " *Demmitt*, 706 F.3d at 677. The government provided uncontroverted evidence in support of its charge that the Defendant falsely listed his country of citizenship as the United States of America on ATF Form 4473 during seven separate firearms transactions. *See* Gov. Exhs. 1, 4–7. The government also provided evidence that ATF Form 4473 and its contents qualify as information required to be kept by FFLs pursuant § 924(a)(1)(A). Trial Tr. (Nov. 13, 2018) at 222:23–223:6 (P. Reese).

Defendant has not established that the jury's finding was so insupportable as to fall below the threshold of bare rationality. Accordingly, the instant motions for acquittal are **DENIED** with respect to counts I–VII.

      b. <u>Count VIII: Violation of 18 U.S.C. § 922(g)(4)</u>

Section 922(g)(4) makes it unlawful for "any person who has been adjudicated as a mental defective or who has been committed to a mental institution to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(4). Defendant claims that acquittal is proper with respect to count VIII because the government did not establish that he was "adjudicated as a mental defective" or "committed to a mental institution." Docket No. 261 at 5; *see also* Docket No. 360.

In support, the Defendant asserts that section 101(c)(1)(C) of the National Instant Criminal Background Check System Improvement Amendments Act (the "NIAA") provides that "[n]o department or agency of the Federal Government may provide to the Attorney General any record

of an adjudication related to the mental health of a person or any commitment of a person to a mental institution if the adjudication or commitment, respectively, is based solely on a medical finding of disability, *without an opportunity for a hearing* by a court, board, commission, or other lawful authority." NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, 12 Stat. 2559 (2008) (emphasis added). To establish that the Defendant had previously been committed to a mental institution, the government relied on reports by medical professionals as well as temporary orders for the Defendant's involuntary commitment issued by New Jersey's state courts. *See* Gov. Exhs. 9–13. The Defendant argues that, because he was never afforded an opportunity for a hearing, the evidence relied upon by the government was provided to the Attorney General in violation of the NIAA. Docket No. 261 at 7–9.

Again, Defendant's argument is misplaced. Section 101(c)(1)(C) of the NIAA does prohibit federal agencies and departments from providing mental health information to the Attorney General when the subject individual has not had an opportunity for a hearing. But the evidence regarding the Defendant's mental health history was not provided by a federal department or agency—it was provided by New Jersey state officials.[1] *See* Govt. Exh. No. 9.

The Defendant cites an Eleventh Circuit opinion for the point that "whether an individual has been committed to a mental health institution under 18 U.S.C. § 922(g)(4) is a question of

---

[1] In the Supplemental Motion for Judgment of Acquittal (Docket No. 337), Defendant asserts that "FBI NICS is a Federal Agency," but provides no supporting argument. The Court interprets this statement as Defendant's attempt to argue that the FBI, as a federal agency, is prohibited from transmitting mental health information to the Attorney General pursuant to section 101(c)(1)(C) of the NIAA. The Court presumes that Defendant intends to further argue that even if the mental health records were initially provided by the state, those records were first delivered to the FBI and then transmitted to the Attorney General. As an initial matter, the Court notes that the FBI exists under the jurisdiction of the Attorney General and reports to the same. Moreover, section "101(c)(1) is simply inapplicable to the instant matter because this statute subsection applies only to situations where a federal agency or department was the entity that conducted the adjudication or commitment. Reading § 101(c) as a whole, it is clear that this section of the NIAA refers to commitments and adjudications by federal agencies and departments, rather than by state courts or other state entities. Where the NIAA applies to states, it explicitly states as much." *Keyes v. Lynch*, 195 F. Supp. 3d 702, 712–13 (M.D. Pa. 2016) (internal citations omitted).

federal law," presumably to establish that the New Jersey state records are defective evidence. *United States v. McIlwain*, 772 F.3d 688, 694 (11th Cir. 2014). The Court notes that the portion of *McIlwain* cited by Defendant actually cites a Fifth Circuit opinion, which further held that in making this determination, the court "may seek guidance from state law." *United States v. Giardina*, 861 F.2d 1334, 1335 (5th Cir. 1988).

Defendant then relies on *U.S. v. Rehlander*, which is both non-binding authority and distinguishable. 666 F.3d 45 (1st Cir. 2012). In *Rehlander*, the court reversed the defendants' convictions under section 922(g)(4) and held that "the *ex parte* procedures employed under [Maine's mental health law] may justify temporary hospitalization but not a permanent deprivation of the right to bear arms – permanent given the lack of any meaningful way ever to recapture that right." *Id*. at 47. Because Maine did not have an approved relief-from-disabilities program available to individuals like the defendants, the *Rehlander* court concluded that the defendants "were permanently deprived of a right to bear arms[.]" *Id*. at 49. Here, however, Defendant was committed in the state of New Jersey, which does have an approved relief-from-disabilities program. Trial Tr. (November 14, 2018) at 122:19–123:24 (Testimony of B. Barker); *see* N.J.S.A. § 30:4-80.8 (permitting person committed to mental institution by court order to petition for expungement of commitment records). Accordingly, Defendant was not permanently deprived of his right to bear arms. Defendant's reliance on *Rehlander* is unpersuasive.

Defendant has not established that the jury's verdict was so insupportable as to fall below the threshold of bare rationality. Accordingly, the instant motions for acquittal are **DENIED** with respect to count VIII.

## B. Judicial Notice and Reminder

Defendant requests that the Court take "judicial notice of the entire 134 S. Ct. 2259, *2274; 189 L. Ed. 2d 262, **286; 2014 U.S. Lexis 4170, ***45." Docket No. 329 at 1. Each of these citations references the *Abramski* case, cited and discussed above.

Under Federal Rule of Evidence 201(a), a court may take judicial notice of adjudicative facts. Facts subject to judicial notice are those which are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Given the Court's discussion of *Abramski* above, the Court's awareness of the case and its authority, where applicable, is duly confirmed. As such, the Defendant's request for judicial notice is **DENIED-AS-MOOT**.

Lastly, the Defendant seeks to remind the Court to rule on Defendant's Motion for Judgment of Acquittal (Docket No. 261). Docket No. 329 at 2. The Court is aware of its duty to consider and rule on motions, hence the instant Order. Defendant's request is, therefore, **DENIED-AS-MOOT**.

*Conclusion*

For the reasons discussed above, Defendant's Motion for Judgment of Acquittal (Docket No. 261), Defendant's Supplemental Motion for Judgment of Acquittal (Docket No. 337) and Defendant's Supplemental Motion for Judgment of Acquittal (Docket No. 360) are **DENIED.** Defendant's Supplemental Motion for Judgment of Acquittal, Request for Judicial Notice and Reminder to Rule on the Motion (Docket No. 329) is **DENIED-IN-PART** and **DENIED-AS-MOOT-IN-PART**.

It is so **ORDERED**.

**So ORDERED and SIGNED this 11th day of February, 2019.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE