1           IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF TEXAS
2                    TYLER DIVISION

3   UNITED STATES OF AMERICA      )
                                              DOCKET NO. 6:18cr16
4        -vs-                     )
                                              Tyler, Texas
5                                 )   8:32 a.m.
    HEON JONG YOO                     November 15, 2018
6
                     TRANSCRIPT OF TRIAL
7         BEFORE THE HONORABLE ROBERT W. SCHROEDER III,
             UNITED STATES DISTRICT JUDGE, AND A JURY
8
                     A P P E A R A N C E S
9
    FOR THE GOVERNMENT:
10
    MR. LAUREL FRANKLIN COAN, JR.
11  MR. LUCAS R. MACHICEK
    MR. RYAN LOCKER
12  ASSISTANT U.S. ATTORNEYS
    110 North College, Ste. 700
13  Tyler, Texas  75702

14  FOR THE DEFENDANT:

15  MR. HEON JONG YOO
    PRO SE
16  101 E. Methvin St., Ste. 559
    Longview, Texas 75601
17
    STANDBY COUNSEL:
18
    MR. JEFF LYNN HAAS
19  ATTORNEY AT LAW
    100 E. Ferguson, Ste. 908
20  Tyler, Texas 75702

21
    COURT REPORTER:          MS. SHEA SLOAN
22                           FEDERAL OFFICIAL REPORTER
                             211 W. Ferguson
23                           Tyler, Texas 75702

24
    Proceedings taken by Machine Stenotype; transcript was
25  produced by computer-aided transcription.

1                              INDEX

2                                             PAGE

3

4    OBJECTIONS TO THE CHARGE                   4

5    RULE 29                                   34

6

7                        * * * * * * * *

8

9    WITNESS              DIRECT    CROSS    REDIRECT

10
     GREGORY HARRY           52
11
     HEON JONG YOO           67        86      102
12

13                        * * * * * * * * * *

14

15                                            PAGE

16

17   GOVERNMENT AND DEFENDANT REST            106

18   JURY CHARGE                              110

19   CLOSING ARGUMENT:  BY MR. MACHICEK       127

20   CLOSING ARGUMENT:  BY MR. YOO            141

21   CLOSING ARGUMENT:  BY MR. COAN           156

22   VERDICT OF THE JURY                      165

23

24

25

1                      FORFEITURE PROCEEDINGS

2

3                                              PAGE

4   OPENING STATEMENT:  BY MR. YOO          168

5

6                      * * * * * * * * * *

7   WITNESS               DIRECT    CROSS    REDIRECT

8   JAMES REED              169       172

9

10                     * * * * * * * * * * *

11          FORFEITURE PROCEEDINGS EXHIBIT INDEX

12  GOVERNMENT'S
13  EXHIBIT NO.            DESCRIPTION          PAGE

14      28              PARA 1911 EXPERT         171
                        .45 CALIBER PISTOL
15
        29              AMMUNITION               171
16

17                     * * * * * * * * * * *

18                                             PAGE
19

20  JURY CHARGE                             177

21  CLOSING ARGUMENT:  BY MR. LOCKER        180

22  CLOSING ARGUMENT:  BY MR. YOO           181

23  VERDICT                                 184

24  TRIAL CONCLUDED                         192

25

1               P R O C E E D I N G S

2           (Defendant present - Jury out.)

3           THE COURT:  Okay.  Good morning to everyone.

4           We are on the record.  It is about 8:30.  We need

5  to address jury instructions and anything else that needs to

6  be dealt with before we begin with the jury at 9:00 o'clock.

7           I know the parties have exchanged instructions, and

8  I don't have any particular preference about what we start

9  with or who starts.  I know Mr. Yoo has provided some

10  instructions with respect to Count 8, and I know the

11  Government has -- has provided instructions on all of the

12  counts.

13          So, whoever wants to begin, may do so.

14          MR. YOO:  Sir, I have filed instructions on Count 1

15  through 7 too.

16          THE COURT:  Okay.  I think those -- my sense,

17  general sense, is the instructions on Counts 1 through 7 were

18  essentially agreed.  I didn't see really any substantive

19  differences.  I think the main disputes between the parties

20  concern Count 8.  Am I wrong about that?

21          MR. YOO:  No, sir -- yes, sir, you are actually

22  wrong about that.  The main -- main difference in terms of

23  jury instructions concerning Count 1 through 7.

24          THE COURT:  Okay.  Well then, let me hear from you,

25  Mr. Yoo.

1          MR. YOO:  All right.  So when I examined the

2   proposed instructions by Frank Coan -- lawyer Frank Coan,

3   Lucas Machicek, and D. Ryan Locker, all three of them, right?

4   They state that -- say that Section 924(a)(1)(a) makes it

5   a -- sorry.  Count 1 through 7 of Superseding Indictment

6   charges the Defendant Heon Jong Yoo with making false

7   statement with respect to information required to be kept by

8   a federal fire -- firearms licensee in violation of 18 USC

9   924(a)(1)(A).

10          And then it proceeds on saying Title 18, United

11   States Code, Section 924(a)(1)(A) makes it a crime for anyone

12   to knowingly make any false statement or representation with

13   respect to the information required by this chapter to be

14   kept in the record of a person licensed under this chapter or

15   in applying for any license or exemption or relief from

16   disability under the provisions of this chapter.

17          And then it states that federal law requires

18   licensed dealers to record every firearm transaction to an

19   unlicensed individual on a firearm transaction record known

20   as the ATF Form 4473.  Federally licensed firearm dealers are

21   also required to maintain each ATF Form 4473 obtained in the

22   course of transferring the custody to -- of firearms.

23          For you to find the Defendant guilty of these

24   crimes, you must be convinced that the Government has proved

25   each of the following beyond a reasonable doubt:

1          First, that the Defendant made a false statement in

2     the ATF Form 4473.

3          Second, that the Defendant made a statement to a

4     federally -- federally licensed firearm dealer.  Third, that

5     the Defendant knew that the statement was false.

6     Statement -- a statement is false if it was untrue when it

7     was made.

8          And then he said, see 18 USC 924(a)(1)(A), 27 CFR

9     478.124, Alpha and Bravo.  Abramski vs. United States, yeah.

10         First of all, let me address defect of the visa

11    references.  27 CFR 478.124 states:  The manner of federal

12    firearms licensee -- I mean, manner of the ATF 4473 forms to

13    be kept under federally licensed firearm dealers and

14    basically FFLs.  I am -- this is not --

15         All right.  924(a)(1)(A), the code does not state

16    anything about 4473, and I am not challenging the fact that

17    4473 forms are required to be kept by the federal firearm

18    licensing.

19         THE COURT:  Then why are these two sentences that

20    you are concerned about important?

21         MR. YOO:  Because he completely omitted the first

22    part, "informations required to be kept."  Those are very

23    specific, sir.  "Informations required to be kept."

24    So -- and --

25         THE COURT:  But help me understand why that makes a

1   difference, Mr. Yoo.  You have to explain why that matters.
2   You have not done that yet.
3            MR. YOO:  I have -- I have done it, sir.  The
4   charge is not -- not about -- the charge is not -- not about
5   the form itself.  The charge does not say any false
6   information on the ATF 4473 form.  The charge states
7   information required to be kept on the 4473 -- no,
8   information required to be kept by the records of FFL.  The
9   charge itself does not state anything about 4473.
10           Now, Mr. Coan is purely focusing on the -- on the
11  Form 4473, and he even stated on the jury instruction,
12  federal law requires licensed dealers to record every firearm
13  transaction -- this is redundant, and this is even
14  misleading, you know.
15           THE COURT:  How?
16           MR. YOO:  Again, the charge -- the code,
17  924(a)(1)(A) does not state anyone about the 4473.  And so my
18  proposed jury -- my proposed references are, yeah, I mean, he
19  can keep 27 CFR 478.124, but he also needs to include 27 CFR
20  478.125.
21           And that specifically defines records -- specific
22  records -- no.  Specific information required to be kept
23  within the records.  It lists out.
24           Also, Abramski vs. United States is about strawman
25  purchase.  In a strawman purchase Abramski gave wrong name,

1    wrong address, and wrong date of birth, which should have

2    been Alvarez's name, Alvarez's date of birth, and Alvarez's

3    address.

4           Yes, one of -- it says section.  I actually have

5    the whole LexisNexis note about Abramski vs. United States.

6    One of its -- its sections does state that, you know, any

7    information required to be kept pertaining to ATF 4473 form

8    makes it illegal.  That -- Abramski got convicted of

9    924(a)(1)(A) because he gave false name, false address, and

10   false date of birth because his name, his address, and his

11   date of birth is different from Alvarez.

12          And then he got convicted of 922(a)(6) because he

13   answered fraudulently on -- on answering 11A, 11 Alfa of the

14   ATF Form 4473.  Are you the actual buyer and transferrer of

15   the firearm?  No.  In this case Alvarez was the actual

16   transferrer and the buyer of the firearm.

17          So that -- and the -- Coan also completely omitted

18   18 USC, Section 922(b)(5).  And that code specifically

19   describes word by word information required to be kept.  I

20   mean you can't -- you can't dispute that, sir, because that

21   is what it states.  I am just -- I am just stating -- I am

22   just stating what it states, so this is my proposed jury

23   instructions regarding 123.

24          One, the Defendant made false statements to an FFL.

25          Two, the false statements regarding -- no.  Sorry.

1    The false statements were regarding information required to

2    be kept by FFL records pursuant to this chapter.

3             Three, the Defendant knew it was false.

4             I mean, that sounds fair, right?  I mean, then the

5    jury can decide which informations are required to be kept.

6             I only have minor disputes when it comes to

7    Count 8.

8             THE COURT:  All right.  Let me hear from

9    Mr. Coan.

10            MR. COAN:  Your Honor, good morning.

11            THE COURT:  Good morning.

12            MR. COAN:  Just for the purposes of the record, we

13   have submitted -- United States has submitted a complete set

14   of proposed jury instructions.  The only non-pattern, meaning

15   non-Fifth-Circuit pattern charges, proposed charges, are 22,

16   23, and the unanimity, proposed unanimity charge No. 24.

17            With respect to proposed jury instruction No. 22

18   which would go to Counts 1 through 7, as the Court is aware,

19   the Fifth Circuit does not have a pattern instruction on this

20   particular substantive offense.

21            The United States researched the issue and proposed

22   a jury instruction that is adapted from the pattern charges

23   in the Eighth and the Eleventh Circuit.  It correctly states

24   the law.  Federal law does require the licensed dealers to

25   create and maintain the ATF Form 4473.  And, therefore, it is

1    a record that is required to be kept by the dealers.

2              My biggest concern with the -- and I understand

3    that the citations that we -- that are contained in our

4    proposed instructions and that are contained in the

5    Defendant's instructions are not part of the final charge.

6              And so whatever -- whatever he may cite or whatever

7    the United States may cite is not going to be seen by the

8    jury.  That is simply to advise the Court of where the

9    authority from which these proposed charges are drawn.

10             My biggest concern with the Defendant's proposed

11   instruction is -- was stated perfectly by the Defendant.

12   And, that is, he would like to argue a question of law to the

13   jury.  And, that is, to ask them to make a determination as

14   to whether an ATF Form 4473 is a record that is required to

15   be kept by the licensed dealer.  That is a question of law

16   for the Court.

17             MR. YOO:  Objection.  I wasn't disputing that --

18             THE COURT:  Mr. Yoo, let Mr. Coan finish.

19             MR. COAN:  So my concern about the Defendant's

20   charge is, without including specific reference to the ATF

21   Form 4473, then implicitly that is going to permit the

22   Defendant to argue that something other than the ATF Form

23   4473 is required to be kept by the federally licensed

24   dealers.  That is not the state of the law.  That could

25   create confusion for the jury.  And so that is why there

1   is -- primarily why there is a distinction between the

2   Government's proposed charge, No. 22, and the Defendant's

3   proposed instruction for Counts 1 through 7.

4           On the legal argument -- and let me back up a

5   little bit, a little housekeeping.  The Defendant's Standby

6   Counsel provided the United States with a copy of a motion, a

7   Rule 29 motion yesterday evening.  It was never filed.

8           The United States prepared a written response, and

9   we did not file it because the way ECF works, I have to be

10  able to link it to a motion.  That was submitted to the Court

11  Clerk this morning.  And arguments on this issue are

12  contained in the -- in the Government's response brief.

13          The 922(b)(5) and the 478.125 regulation that

14  Mr. Yoo is relying on for this argument that he wants to try

15  to make to the jury that the 4473 is not required or that

16  some information less than what is included in the 4473 is

17  what is actually required, is -- offbase.

18          922(b)(5) and 478.125 relate to a totally separate

19  record.  Those are the acquisition and disposition records

20  that Mr. Freese testified about the other day.  They are

21  records that are in addition to the ATF Form 4473.

22          Those records do not -- they don't negate the

23  Form 4473, they don't limit the Form 4473.  They are in

24  addition to the Form 4473 and are records that the licensed

25  dealers are required to keep.

1       What is required to be kept for the purposes of

2   this case and this charge under 924(a)(1)(A) are the ATF

3   Forms 4473.

4       With respect to Abramski, certainly recognize that

5   the false statements, the specific false statements that were

6   charged in that case are factually different than the false

7   statements that are charged in this case.

8       However, the Defendants in that case made the

9   precise argument that the Defendant is raising here.  And,

10  that is, that the information contained in Section A was not

11  required to be kept by the licensed dealer.  And the Supreme

12  Court said that is incorrect.  Everything on the Form 4473 is

13  required to be kept.  Nothing in that opinion relies upon 18

14  USC 922(b)(5) or 27 CFR 478.125.

15      THE COURT:  Okay.

16      Mr. Yoo, short response?

17      MR. YOO:  Yes, sir.  Would you take a look at

18  Abramski vs. United States yourself?  And it repeatedly

19  mentions 922(b)(5) as reference to information required to be

20  kept.

21      And I was not disputing the fact that ATF -- sorry,

22  not -- not ATF, FFL dealers are required to keep ATF Form

23  4473.  That was -- that was not in the -- like that was not

24  in the -- in the question.  I wasn't objecting to that.  I

25  know that ATF Form 4473 are required to be kept by FFL

1    dealers I believe for 20 years.  Yes.  So -- but --

2             THE COURT:  Was there a suggestion --

3             MR. YOO:  Sir -- sir.

4             THE COURT:  Mr. Yoo --

5             MR. YOO:  May I please explain?

6             THE COURT:  Yes.  Go ahead.

7             MR. YOO:  Yeah.  Please, please, please do not

8    object for the Prosecution.

9             So, yeah, the charge -- if I read the charge

10   924(a)(1)(A) word by word, it is knowingly makes any false

11   statement or representation with respect to the information

12   required by this chapter to be kept in the record of a person

13   licensed under this chapter or in applying for any license or

14   exemption or relief from disability under the provisions of

15   this chapter.

16            It does not specifically state anything about ATF

17   Form 4473.  It does, however, state -- specifically state

18   information -- information required to be -- required by this

19   chapter to be kept in the records of a person licensed under

20   this chapter.

21            So all I'm saying is -- all I'm saying is let's go

22   by the word -- word -- letter and the color of the law in the

23   section, 18 United States Code 924(a)(1)(A) and put that

24   exact letter and color of the law in the jury instruction and

25   let the jury decide.

1          Actually, Abramski vs. United States, this

2     LexisNexis note, this is -- this is how I found out

3     922(b)(5), and also I have only minor dispute regarding the

4     Count 8.

5          THE COURT:  Hold on just a minute, Mr. Yoo, before

6     we get there.

7          Was there a proposed sentence that you suggested be

8     included in the instruction on Counts 1 through 7 that was

9     not contained in the Government's proposal?

10          MR. YOO:  Yes.  I would like the -- first of all,

11     I -- I would like the -- the Government's proposal to be

12     stricken actually.  But --

13          THE COURT:  Mr. Yoo, we are past that point.  You

14     have told me that there was a sentence that you wanted added

15     that the Government had not included in its proposal and

16     that -- it was my understanding that that would satisfy you.

17     Can you tell me, number one, is that not right?

18          MR. YOO:  Sir, not added.

19          THE COURT:  I'm sorry?

20          MR. YOO:  Not added.  Corrected.

21          THE COURT:  All right.  Well, what was the sentence

22     you proposed?

23          MR. YOO:  One, the Defendant made false statements

24     to an FFL.

25          Two, the false statements were regarding

1    information required to be kept by FFL records pursuant to

2    this chapter.

3           Three, the Defendant knew it was false.  I mean,

4    that is pretty straightforward, and we can let the jury

5    decide.

6           THE COURT:  Mr. Yoo, we are not communicating, sir.

7    I am talking about in the instruction itself --

8           MR. YOO:  Instruction itself.

9           THE COURT:  Right.  So Counts 1 through 7 --

10           MR. YOO:  All right.

11           THE COURT:  -- if you would look at --

12           MR. YOO:  I was -- I was --

13           THE COURT:  -- if you would look at the

14    Government's proposed jury instruction No. 22.

15           MR. YOO:  I am looking at it, sir.

16           THE COURT:  Okay.

17           MR. YOO:  So do you see the first -- the second

18    paragraph which starts with Title 18?

19           THE COURT:  I do.

20           MR. YOO:  Okay.  So go down to the chapter and the

21    period.  And then do you see the federal law requires --

22           THE COURT:  I do.

23           MR. YOO:  -- section?

24           THE COURT:  I do.

25           MR. YOO:  Yes.  That is redundant and significantly

1    misleading.  I mean --

2             THE COURT:  Okay.  Hold on.

3             MR. YOO:  That is for the jury --

4             THE COURT:  Mr. Yoo.  So it is the last two

5    sentences of the second paragraph of the Government's

6    proposed jury instruction No. 2 -- 22 that you have a problem

7    with; is that correct?

8             MR. YOO:  Yes, I do believe --

9             THE COURT:  Okay.  So do you have something to -- a

10   sentence that you wanted to add before those twenty -- before

11   those last two sentences that would satisfy you.

12            MR. YOO:  No.  Those -- that sentence must -- must

13   be taken out because that is not -- that is not for the

14   Prosecution to decide.  That is for the jury to decide.

15            THE COURT:  Well, the jury is not going to decide

16   what federal law requires.  That is a question of law.

17            MR. YOO:  I understand, but the law -- exactly the

18   law -- law itself, 924 -- 18, United States Code 924(a)(1)(A)

19   states, "information required to be kept."  I mean,

20   that -- that is the law, sir.

21            So I am just saying that in the proposed jury

22   instruction, let's strictly go by the law, not add -- not add

23   my interpretation to it, not add Frank Coan's interpretation

24   to it, not add anyone's interpretation to it.

25            THE COURT:  Okay.

1        MR. YOO:  Let's just go by the letter of the law.

2        THE COURT:  Thank you.

3        MR. YOO:  That's all I'm saying, sir.

4        THE COURT:  Thank you, Mr. Yoo.

5        Mr. Coan, explain to me why those two sentences are

6   necessary.

7        MR. COAN:  We can take them out, so long as the

8   first element is that the Defendant made a false statement in

9   the ATF Form 4473.

10       THE COURT:  I think that is -- does that satisfy

11  you, Mr. Yoo?

12       MR. YOO:  Huh?

13       THE COURT:  Does that satisfy you?

14       MR. YOO:  Pardon?  If they take these two sentences

15  out, yes, it satisfies me.  But --

16       THE COURT:  Okay.

17       MR. YOO:  -- they also have to change the first,

18  second, and third --

19       THE COURT:  First, second, and third --

20       MR. YOO:  -- section.  You know, for you to find

21  the Defendant guilty of these crimes, you must be convinced

22  that the Government has proved each of the following beyond a

23  reasonable doubt.  First, second, and third.  I mean,

24  changed.

25       First, the -- the -- the Defendant made false

1  statements to a FFL.  I mean, yeah, that is the letter and

2  color of the law.

3        THE COURT:  Well, it is the form that you made the

4  statements on, right?

5        MR. YOO:  Right.  But the form is not the charge.

6        THE COURT:  Okay.

7        MR. YOO:  Second, the false statements were

8  regarding information required to be kept by FFL records

9  pursuant to this chapter.  That is just straightforward.

10  There is no misleading there.  There is no deception there.

11        Third, the Defendant knew it was false.  I mean --

12  hey, I mean, do you want me to read out 924(a)(1)(A) --

13        THE COURT:  No.

14        MR. YOO:  -- again?

15        THE COURT:  Mr. Yoo, I think I understand what your

16  position is.

17        MR. YOO:  Yeah.

18        THE COURT:  So --

19        MR. YOO:  That is pretty straightforward, isn't it?

20        THE COURT:  Thank you, Mr. Yoo.

21        Mr. Coan?

22        MR. COAN:  The proposed jury instruction No. 22

23  already recites Section 924(a)(1)(A) including the language

24  that the Defendant wants to be included.  The ATF Form 4473

25  is, in fact, required to be kept in the records of a person

1    licensed under this chapter.

2              MR. YOO:  Did I dispute that?

3              MR. COAN:  He doesn't seem to disagree with it.  I

4    am not sure what the objection is to the first element in the

5    proposed instruction No. 22.

6              THE COURT:  What is the dispute?

7              MR. YOO:  My objection is that is not -- that is

8    not what the charge states.  The charge states information

9    required to be kept in the FFL record.  The charge is very

10   specific.

11             MR. COAN:  Well, actually, the code section is

12   recited in proposed jury instruction No. 22.  That should

13   address the Defendant's concerns.

14             The Superseding Indictment charges him with making

15   a false statement in the ATF Form 4473, which is required to

16   be kept in records of the licensed dealer.

17             MR. YOO:  Yeah, but --

18             MR. COAN:  Again, I am not following what the

19   objection is to the first element.

20             MR. YOO:  Is the jury going to see the code?  Is

21   the jury going to see the code -- unaltered code -- code --

22   code itself?  Unaltered and non -- non-misleading code.  I

23   mean basically the code itself, not the code that you changed

24   and give them.  As long as the jury is going to see -- I

25   mean, yeah, if -- if the jury is going to see the actual 18

 1    USC, Section 924 like this (indicating) --

 2            THE COURT:  Mr. Yoo, you have been provided with a

 3    copy of the Government's proposed instructions, and you have

 4    had an opportunity to provide proposed instructions of your

 5    own.  And so I am trying to sort of navigate those two.

 6            Mr. Coan has offered to take out those two

 7    sentences in the second paragraph of proposed instruction No.

 8    22 to satisfy your concerns.

 9            I think I understand what the argument is.  We are

10    going to go ahead and proceed with discussion on Count No. 8.

11    And then we are going to start with the jury at 9:00 o'clock,

12    which is just a few minutes from now.

13            MR. YOO:  Sir --

14            THE COURT:  So I am going to reserve ruling --

15            MR. YOO:  Sir --

16            THE COURT:  Mr. Yoo, I am speaking now.  I am going

17    to make a decision based upon the argument of Counsel and

18    your argument, Mr. Yoo, and I will make a determination this

19    morning about how the Court will instruct the jury, and I

20    will provide you with a copy of that and give you an

21    opportunity to put any remaining objections you have on the

22    record.

23            Now, with --

24            MR. YOO:  So, just to be clear --

25            THE COURT:  With respect to Count 8, what are your

1  concerns?

2          MR. YOO:  Before we proceed, just to be clear, you

3  also got the one, two, and three for the Counts 1 through 7,

4  right?

5          THE COURT:  I understand what your argument is.

6          MR. YOO:  Okay.  Good.

7          For Count 8, I just want the -- the -- on the

8  second part, you know, the -- on the specific first, second,

9  and third instructions, that before the Defendant possessed

10  the firearm, the Defendant had been committed to a mental

11  institution in accordance with the federal definition of

12  commitment.  27 CFR, Section 478.11.

13          And on the reference section, I would like for

14  y'all -- you -- I would like for you to include public law

15  110180, NICS Improvement Amendments Act of 2007.

16          The letter and color of the law in there is pretty

17  clear, sir.  I mean -- I mean, it literally states the

18  standard for commitment.

19          THE COURT:  So do you have a case that you can cite

20  me from the Fifth Circuit or any other circuit in the United

21  States that supports your position on this, Mr. Yoo?

22          MR. YOO:  Yes.

23          THE COURT:  All right.  Let me hear it.

24          MR. YOO:  So I mostly focused on -- on case laws

25  after NICS Improvement Amendments Act had been enacted.

1   But -- but from the Fifth Circuit there is United States vs.

2   Giardina.

3         THE COURT:  Yes, and I have read Giardina.  How

4   does that case support your position?

5         MR. YOO:  Because that case law states that --

6   Giardina's -- Giardina's conviction was reversed because

7   he -- he has never been -- been through a formal hearing.

8         THE COURT:  Under Louisiana law.

9         MR. YOO:  I understand, but we are -- 922(g)(4) is

10   a federal law here.

11         Are you objecting on behalf of the Prosecution,

12   sir?

13         THE COURT:  No, I am trying to understand your

14   argument here because Giardina refers to Louisiana law, and

15   the law involved in this case is New Jersey law.

16         MR. YOO:  What about --

17         THE COURT:  And all of that testimony came in

18   yesterday without objection from you.

19         MR. YOO:  I actually raised several

20   counter-arguments when -- when she was testifying about the

21   New Jersey law, sir.  I have specifically pointed out that

22   this concerns federal law.  This -- this -- this does

23   not -- not concern New Jersey law.

24         THE COURT:  Okay.  So tell me how the Giardina case

25   supports you.

1         MR. YOO:  Sir.  You do not -- you do not cut

2  Mr. Coan off this way, sir.

3         THE COURT:  No, I am asking you to tell me how does

4  the Giardina case support you?

5         MR. YOO:  Giardina case -- Giardina's conviction

6  was reversed because he has not been through a formal

7  hearing.

8         Also, I have other cases.  United States vs.

9  Rehlander, 2012, 666 F.3d 45.  And it --

10         THE COURT:  Mr. Yoo, I have read the Rehlander case

11  too.  So go ahead and tell me how it supports you.

12         MR. YOO:  I was about to explain, sir.

13         THE COURT:  Okay.

14         MR. YOO:  In Rehlander case -- in Rehlander case,

15  Rehlander argues that it is unconstitutional to -- to

16  permanently deprive someone of their Second Amendment right

17  to bear arms without the proper due process, so it was

18  violation of his Second Amendment rights and Fifth Amendment

19  rights, and this case is after -- this case is after the

20  enactment of NICS Improvement Amendments Act of 2007.

21         So he argued that there are two processes in, I

22  believe Maine -- yeah.  One is just -- just like what I

23  received, quote, unquote, the temporary commitment order

24  which is actually a temporary confinement and a summons for

25  the actual involuntary commitment hearing.

1          Now --

2          THE COURT:  Was that the evidence -- was that the

3     testimony?

4          MR. YOO:  What?

5          THE COURT:  Was that the testimony?

6          MR. YOO:  From who?

7          THE COURT:  From the witnesses, that it was a

8     temporary commitment order?

9          MR. YOO:  Larsen.  Sir, Larsen -- Larsen proved to

10    be completely incompetent of federal law, sir.

11         THE COURT:  So was the testimony that the events in

12    New Jersey resulted in a temporary commitment order --

13         MR. YOO:  That's what Larsen --

14         THE COURT:  That's what you just told me.

15         MR. YOO:  That's what Larsen stated.  I mean -- I

16    mean -- I am just going by what -- what -- what Larsen

17    stated, sir.  I am not testifying right now, you know.  I'm

18    just saying.  But -- but what I am saying is, in the United

19    States vs. Rehlander, his conviction was also reversed

20    because he has not been through an actual adversary

21    proceeding, and he argued that an ex parte communication

22    between the psychiatrist and the Court does not -- does not

23    provide the ground for permanent -- permanent deprivation of

24    Second Amendment right.

25         And there is one more case, sir, United States vs.

1   McIlwain, 2014.  In that case the Defendant's conviction was

2   affirmed because he had been through a formal hearing.  I

3   have not -- I have never been through a formal hearing, sir.

4        And on the -- on the RUPD reports, it clearly

5   states that I was transported there voluntarily.  And

6   that -- that -- that 2013-04-05, that case had been the

7   poisonous tree.  Everything else are basically the fruits.  I

8   mean -- hold on.  Hold on.  Let me talk to my Standby Counsel

9   for a second.

10       (Pause in proceedings.)

11       MR. YOO:  After this argument, I would like to make

12  a Rule 29 motion.

13       THE COURT:  Well, the jury is waiting.  So do you

14  have anything else you want to say about the instructions?

15       MR. YOO:  Instructions in terms of Count 8, yes.  I

16  would like for y'all to add -- on the reference section

17  United States vs. Rehlander, 27 CFR 478.11, and Addington vs.

18  Texas.

19       THE COURT:  Okay.  Thank you.

20       MR. YOO:  On the Addington --

21       THE COURT:  Mr. Coan, short response.

22       MR. COAN:  Thank you, Your Honor.  The Government's

23  proposed jury instruction No. 23 is adapted from Fifth

24  Circuit Pattern Jury Instruction No. 2.43D, which is the

25  possession of firearm by a convicted felon.  Also a 922(g)

1 offense.

2          As the Court is aware, whether the Defendant

3 possesses the prohibiting characteristic that would trigger

4 application of 922(g) is a question of law for the Court.

5          The fact -- for example, in the prior conviction

6 context, whether that conviction qualifies as a felony -- as

7 a crime of punishment for more than one year would be a

8 question of law for the Court whether the conviction existed.

9 The fact of that conviction is the question for the jury.

10         The Government is concerned with the Defendant's

11 proposed instruction with this, in accordance with the

12 federal definition of commitment.  It is asking the jury to

13 make a determination of law.

14         And so we can argue that determination of law and I

15 am happy to do that and address Giardina and Rehlander and

16 McIlwain; but for the purposes of the charge itself, the

17 United States' objection to the Defendant's proposed

18 instruction is this language that talks about "in accordance

19 with the federal definition of commitment"

20         MR. YOO:  There is a core difference between

21 collaterally attacking the prior felony conviction with --

22 with my case.  I mean -- I mean, honestly, I believe that

23 even -- even permanently depriving anyone of possessing a

24 firearm is completely unconstitutional.

25         However, the key difference between collaterally

1  attacking felony conviction is that a felon -- convicted

2  felon had served -- either had been served proper due process

3  pursuant to the Fifth Amendment of our Constitution through

4  either bench trial or jury trial, and -- and had been

5  informed of right to appeal and had been through adequate

6  representation by counsel of his choice or -- or by him or

7  her representing his or herself.

8          However in my case there was no due process.  This

9  is strictly ex parte communication that --

10          THE COURT:  Is there any dispute that it was

11  actually formal court order of commitment?

12          MR. YOO:  Sir --

13          THE COURT:  Mr. Yoo, can you answer my question?

14  Is there any dispute about that?

15          MR. YOO:  Yes.

16          THE COURT:  All right.  What is the dispute?

17          MR. YOO:  What is the -- what is the difference

18  between a temporary confinement and a formal commitment?

19          THE COURT:  What is the dispute with my statement

20  that there was a formal court order of commitment arising out

21  of New Jersey?

22          MR. YOO:  That was not a formal court order, sir.

23          THE COURT:  Why not?

24          MR. YOO:  Because I wasn't served a proper due

25  process.  I had not been through an adversary hearing.  And

1   I -- that order was issued strictly -- strictly through an

2   ex parte -- ex parte communication, which the hospital staff

3   lied.

4           The police report strictly states that Yoo did not

5   threaten to harm -- harm anyone specifically.  That is what

6   it -- is stated in the police report.  However, I don't know

7   where -- where Yoo threatened to shoot his RA came from.

8           Also, among the hospital reports for 2015 they say

9   that I had been -- been, what, like committed to a mental

10  institution for homicidal threats back in 2011 in New Jersey?

11  I was never in New Jersey in 2011, sir.  I was -- I was

12  attending an international school in South Korea.

13          So that entire incident -- those entire two

14  incidents -- incidents resulted from fraudulent hospital

15  reports.  And also, what is the point of screening the

16  patients if the patients -- if what the patients tell the

17  screeners are completely disregarded, and those -- those

18  screeners come in with pre-judgment anyway.

19          THE COURT:  Okay.  So perhaps you didn't receive an

20  adversarial hearing --

21          MR. YOO:  Yes, I have never --

22          THE COURT:  Hold on.

23          MR. YOO:  -- received an adversarial hearing.

24          THE COURT:  And it may have been ex parte, but

25  wasn't the testimony that you were examined by two different

1  screeners before the Court reviewed and made the

2  recommendation.

3      MR. YOO:  Those screeners never took my -- my

4  statements into account.  What is -- sir, sir, what is the

5  purpose of even screening patients if -- if the patients'

6  statements would be completely disregarded?

7      And also are you saying that the screeners are

8  always truthful, and that they don't lie?  And are you saying

9  that RUPD reports and the hospital reports do not contradict

10  each other?  And are you saying that I wasn't voluntarily

11  admitted pursuant to RUPD reports?  Because the facts are

12  pretty clear, sir.

13      And, sir, you as a Federal Judge needs to be the

14  champion of the United States Constitution.  You know

15  the -- due process is solidly defined in the Fifth Amendment

16  of our Constitution.

17      THE COURT:  Well, let me make some comments about

18  8.  I don't think the law -- I mean, I have read the cases

19  that you cited to me Mr. Yoo, the Giardina case out of the

20  Fifth Circuit, the Rehlander case out of the First Circuit.

21  And the McIlwain case out of the Eleventh Circuit, I think.

22      The McIlwain case contains a fairly good survey of

23  other circuits' decisions.

24      With respect to the Giardina case, as I understand

25  it, the Fifth Circuit vacated a Section 922(g)(4) conviction,

1    as you said, when they held that the individual had not been

2    committed under the meaning of the Louisiana statute.

3         That Defendant had been detained for two weeks of

4    mental health treatment under the order of a physician, and

5    the Fifth Circuit held that an essential element of the 924

6    section was a formal commitment, which in Louisiana and under

7    Louisiana law required a formal action by a state district

8    court.

9         The Giardina case cited the Hansel case, which was

10   an earlier case out of the Eighth Circuit where that Court

11   reversed a conviction under the predecessor to 922(g) where

12   the Defendant had been hospitalized pursuant to a county

13   mental health board order.

14        And, although the order did result in a temporary

15   hospitalization, the Eighth Circuit held that it was not a

16   commitment under the statute because it did not comply with

17   the two-step formal process under Nebraska law.  And what the

18   Eighth Circuit said in that case, which is cited with

19   approval by the Fifth Circuit in the Giardina case, is that

20   there is nothing in 18 USC 922(h), the predecessor to 922(g),

21   which indicates an intent to prohibit the possession of

22   firearms by persons who had been hospitalized for observation

23   and examination where they were found not to be mentally ill.

24   The statute makes it clear that a commitment is required.

25        And, as I said, the Fifth Circuit cites with

1     approval that language from the Eighth Circuit.

2          So one possible compromise here is to instruct the

3     jury slightly differently on Count 8 from either the

4     Government's proposal or the Defendant's proposal.  And it is

5     as follows:

6          First, the Defendant knowingly possessed a firearm

7     as charged in the Superseding Indictment.

8          Second, that the Defendant had been committed to a

9     mental institution before the Defendant possessed the

10    firearm.

11         And, third, that the firearm possessed traveled in

12    interstate commerce.

13         And then we would instruct the jury that, as a

14    matter of law, Count 8 does not include a person who is

15    hospitalized for observation and examination where they were

16    not found to be mentally ill.

17         And my goal in proposing that instruction is, I

18    think, satisfies the Government's desire that the jury make a

19    determination about whether there was commitment to a mental

20    institution, and yet it allows you, Mr. Yoo, to make your

21    arguments with respect to the ATF regulations.

22         How does that sound?

23         MR. YOO:  That sounds -- that actually sounds like

24    a good compromise, especially -- especially considering the

25    fact that I have actually, you know -- when you said found

1    not to be mentally ill.  I was never ordered to be put -- put

2    under any form -- form -- form -- sorry, ordered to be put

3    under any formal treatment, so, yeah --

4              THE COURT:  Could you live with that, Mr. Yoo?

5              MR. YOO:  Yes, sir.

6              THE COURT:  All right.  Mr. Coan, could the

7    Government live with that?

8              MR. COAN:  Your Honor, I apologize.  I wasn't

9    taking good enough notes as to the precise language.

10             If the Court -- if we could talk about the exact

11   language.  Here is my concern, again, for record purposes,

12   Your Honor, is that it would be asking the jury to make a

13   determination that is really left to the Court, and that is

14   whether the Defendant had been committed to a mental

15   institution under applicable law.

16             THE COURT:  Well, I mean, that is --

17             MR. COAN:  That is my only concern.

18             THE COURT:  -- at some level, Mr. Coan, that is

19   what the Government's instruction does.  The Government's

20   proposal was that before the Defendant possessed the firearm

21   the Defendant had been committed to a mental institution.

22             And I think that's, as I understand the

23   Government's suggestion, that is a question of fact that the

24   jury can make a determination about, based on the testimony

25   of the witnesses yesterday and the documents that have been

1   admitted into evidence from Middlesex County, New Jersey, and

2   Mr. Yoo's anticipated testimony this morning.

3           MR. COAN:  Again, expressing it for record

4   purposes, Your Honor.

5           THE COURT:  I understand.  Well, let me suggest

6   this:  You all maybe visit among yourselves.  It satisfies

7   Mr. Yoo's concerns.  See if you all can live with it.

8           I do think in some respects the precise issue that

9   Mr. Yoo, certainly in the Fifth Circuit, raises, is very

10  close to being an issue of first impression.  And I have not

11  been cited to cases from any other circuit by either side

12  that are really on point.

13          I have read all of the cases, as I have indicated,

14  and I think the argument is slightly different here.

15          So with those preliminary comments, I look forward

16  to having your -- having your thoughts about those.

17          So let me suggest that, Mr. Yoo, you are getting

18  ready to take the stand, I understand, and testify?

19          MR. YOO:  Yes, sir.  Before all that, I would like

20  to make the Rule 29 motion.

21          THE COURT:  All right.

22          MR. YOO:  Before Rule 29 regarding the instruction,

23  I have just got state one -- one -- one more phrase for the

24  record.

25          NICS Improvement Amendments Act of 2007, Title 1,

1   Charlie, 1, Charlie -- no.  Title 1 Section 101 Charlie 1

2   Charlie.

3           Thank you.

4           Okay.  Motion for judge of acquittal -- hold on.

5           (Attorney conference the record.)

6           MR. COAN:  Your Honor, may I respond very briefly

7   on the NICS Improvement Amendments Act?

8           THE COURT:  Yes.

9           MR. COAN:  I had tried to make clear yesterday in

10  one of our bench conferences that, with respect to defining

11  "committed to a mental institution," that legislation is

12  irrelevant.  The definition within the legislation refers

13  back to 922(g)(4), and we have cited the legislative history

14  in our response to the Defendant's Rule 29 motion that makes

15  clear that it was Congress's intent to leave the law with

16  respect to 922(g)(4) unchanged.

17          MR. YOO:  Objection.  He actually did not refute

18  any of my claims whether to NICS Improvement Amendments Act

19  of 2007 that defines standards of commitment pursuant to the

20  letter and color of the law.

21          And, yeah, I would like to proceed with Rule 29

22  motion.

23          THE COURT:  Very briefly, Mr. Yoo.

24          MR. YOO:  Motion of judgment of acquittal.  So I am

25  charged with seven counts of violation 18 United States Code,

1    Section 924(a)(1)(A), false statement with regard to

2    information required to be kept a FFL, and one count

3    violation of 18 United States Code, Section 922(g)(4),

4    possession of a firearm by a prohibited person, by a person

5    who has been committed to a mental institution.

6          I contend that a violation of 18 United States

7    Code, 924(a)(1)(A), requires the -- requires the Prosecution

8    to prove beyond a reasonable doubt that I provided false

9    information either in the record of receipt or disposition or

10   in the AT -- and in the ATF Form 4473, specifically false

11   information -- false specific informations in the form.

12   Yeah.  And in the ATF record, said information being required

13   to be kept by law.  The false information alleged to be

14   provided is that -- that I stated that I was a United States

15   citizen, when, in fact, I was not a United States citizen.

16         But I contend that -- that pursuant to 27 -- 27 CFR

17   the code -- code of federal regulation, Section 478.125, it

18   does not state anything -- so, like, it does not mention the

19   word "citizenship" at all.

20         And also, pursuant to 18 United States Code, 922

21   Bravo 5, it specifically states if -- required to be kept

22   pursuant to this chapter; name, date of birth, and the place

23   of residence.  This is also mentioned in Abramski vs. United

24   States -- code -- numerous times that the Prosecution cited

25   to -- to refute my argument, numerous times.

1          So that -- that -- that the -- that the evidence

2     shows that -- that the false statements were -- were made,

3     you know.  However, it wasn't -- it wasn't -- it wasn't

4     regarding information required to be kept to sustain a

5     conviction on -- on the charge of 18 United States Code,

6     Section 924 Alfa, 1, Alfa pursuant to the letter and the

7     color of the law.

8          Also, there is no -- there is no intent of

9     deception here because if I intended to deceive, first of

10    all, I would not have admitted my firearm possession to any

11    of the law enforcement that has visited my premise.  Also, I

12    will not be visiting a federal firearm licensee dealer.  I

13    would have bought guns from -- bought like altered guns from

14    like the back of the trunk, prohibited -- that is not the

15    case here.

16         I did fill out those ATF Form 4473, and the only

17    two sections that the -- I actually stated the false

18    statements were the place of birth and country of

19    citizenship, which has -- which has no effect in law

20    enforcement's ability to track me down or -- if a violent

21    crime was to occur.

22         On the -- also -- sorry.  I also contend

23    that -- that -- that the evidence is legally insufficient to

24    obtain conviction for a violation of 18 United States Code,

25    Section 922 Golf 4, pursuant to the NICS Improvement

1    Amendments Act, Section 101 Charlie 1 Charlie for the

2    standards for commitment and adjudication because it was

3    purely a medical finding.  I had not had opportunity to have

4    an adversary hearing, and that my due process was not served

5    properly.

6             And pursuant to United States vs. Rehlander, 666

7    F -- sorry, 666 Foxtrot 3 Delta 45, First Circuit, 2012, and

8    United States vs. Giardina, 6 -- sorry, 5th 61 Foxtrot 2

9    Delta 1334, Fifth Circuit, 1989, the evidence was not

10   sufficient to sustain that it was a formal commitment

11   pursuant to 27 federal -- code of federal regulations,

12   Section 478.11.

13            And the person who testified on that behalf

14   yesterday, Dr. Larsen, she said that she is

15   completely incomp -- she did admit that she is completely

16   incompetent in terms of federal gun laws and the federal

17   standards for mental health -- sorry, commitment -- committed

18   to the mental institution.

19            So, therefore, I respectfully request this

20   Honorable Court to uphold the Constitution of the United

21   States and enter an order of acquittal so I can get back to

22   my -- my life.

23            THE COURT:  Thank you, Mr. Yoo.

24            Mr. Coan, you filed a written response that has not

25   yet been docketed.  I have been provided a copy of it.  I

1    assume when Mr. Yoo gets his written motion filed on the

2    docket, you will get the Government's response added to the

3    docket as well.  But would you like to be heard briefly now

4    on the Defendant's motion?

5              MR. COAN:  Certainly, Your Honor.

6              In Counts 1 through 7, the Defendant has been

7    charged with making any false statement or representation

8    with respect to information required by Chapter 44 of the

9    United States Code.

10             The elements required for the Government to

11   establish with proof beyond a reasonable doubt are that the

12   Defendant made a false statement with respect to information

13   required to be kept by the licensed dealers.

14             Two, the Defendant made the statement to a

15   federally licensed firearms dealer.

16             And, three, the Defendant knew the statement was

17   false.

18             The Defendant has not challenged the sufficiency of

19   the Government's evidence as to any of these elements.

20   Instead, what he argues is that the country of citizenship

21   information is not required to be kept by the federally

22   licensed firearms dealer, and that is simply incorrect.

23             Section 923(g)(1)(A) requires a licensed dealer to

24   maintain such records of sale or other disposition of

25   firearms at his place of business for such period and in such

1    form as the attorney general may by regulations prescribe.

2           Under 27 CFR 478.124, subsection (a), the attorney

3    general requires a licensed dealer to record every firearm

4    transaction to an unlicensed individual on a firearms

5    transaction record, that is, a Form 4473.  This form includes

6    information about the prospective buyer's country of

7    citizenship.  Reference to 27 CFR 478.124, subsection (c).

8           The dealer is required to retain as part of the

9    required records each Form 4473 obtained in the course of

10   transferring custody of the firearms.  That is 27 CFR

11   478.124, subsection (b).

12          Under Abramski vs. United States, all of the

13   information required by the ATF Form 4473 is information

14   required to be kept for the purposes of Section 924(a)(1)(A).

15          To the Defendant's statutory argument, the language

16   of Section 922(b)(5) includes the following -- well, let me

17   back up.

18          That section prohibits the sale or delivery of a

19   firearm or armor-piercing ammunition by a licensed dealer to

20   any person unless the licensee notes in his records, required

21   to be kept pursuant to Section 923 of this chapter, the name,

22   age, and residence of such persons.

23          Section 923 is precisely what I just referenced,

24   which requires the attorney general to prescribe regulations

25   including 27 CFR 478.124, regarding the Form 4473.

1          The related regulation for Section 922(b)(5) is

2    cited by the Defendant as 27 CFR 478.125.  That regulation

3    provides, quote, when such disposition is made to a

4    non-licensee, the firearms transaction record, Form 4473,

5    obtained by the licensed dealer, shall be retained until the

6    transaction is recorded, separate from the licensee's

7    Form 4473 file, and be readily available for inspection,

8    closed quote.  That is subsection (c), 27 CFR Section

9    478.125(c).

10         As I mentioned earlier when we were arguing the,

11   charge the Defendant's focus on 922(b)(5) and 27 CFR 478.125,

12   is not incorrect.  It is just a different record.  That

13   record is the acquisition and disposition record that the

14   dealer completes and that the dealer is required to keep.

15         The ATF Form 4473 is the official transaction

16   record of every firearms transaction involving an

17   over-the-counter sale that takes place -- interstate sale

18   involving a federally licensed firearms dealer.

19         One does not negate the other or limit the other or

20   modify the other.  They are two separate types of records.

21   The information required on the Form 4473 is information that

22   is required to be kept in the records of the licensed

23   dealers.

24         He has lied on that form, as shown by the

25   Government's evidence that he is not a citizen of the United

1   States.  He indicated that he was a citizen of the United

2   States on the seven occasions charged in the Superseding

3   Indictment.

4          And the intent to deceive argument is irrelevant

5   here.  The intent is not an element that the Government is

6   required to prove.  The falsity of the statement is what the

7   Government is required to prove.

8          With respect to Count 8, there are essentially

9   three elements that the Government is required to

10  demonstrate; that the Defendant knowingly possessed a

11  firearm; that before the Defendant possessed the firearm, he

12  had been committed to a mental institution; and that the

13  firearm possessed traveled in interstate commerce.

14         The Defendant does not challenge the sufficiency of

15  the Government's evidence as to Elements 1 and 3.  His

16  argument focuses on the legal sufficiency of Element 2, that

17  is, whether he had been committed to a mental institution.

18         He is charged under Section 922(g)(4).  That

19  provision of the United States Code does not define

20  "committed to a mental institution."  However, federal

21  regulations prescribe that the phrase means:  The formal

22  commitment of a person to a mental institution by court,

23  board, commission, or other lawful authority.  That is 27

24  CFR, Section 478.11

25         The Government introduced records, specifically

1    Exhibit 9, and witness testimony, specifically Dr. Larsen's

2    testimony, that Mr. Yoo was involuntarily committed to a

3    mental institution pursuant to court orders in 2013 and again

4    in 2015.  That evidence satisfies the definition provided in

5    the federal regulations.

6            As the Court is aware, the United States vs.

7    Giardina instructs that, although that is question of federal

8    law, the Court can look to state law in making the

9    determination as to whether the prohibited characteristics,

10   specifically whether the Defendant has been committed to a

11   mental institution, satisfies the -- satisfies

12   Section 922(g)(4).

13           Mr. Yoo's involuntary commitments took place in the

14   State of New Jersey.  In New Jersey the state law requires a

15   temporary court order for an involuntary commitment.  And the

16   court proceedings may be initiated by the submission of two

17   clinical commitments, at least one of which is prepared by a

18   psychiatrist.

19           Upon receipt of these documents, a court makes a

20   determination as to whether there is probable cause to

21   believe the person is in need of involuntary commitment of

22   treatment.

23           If the court finds probable cause, it shall enter a

24   temporary order authorizing the assignment of the person to

25   an outpatient treatment facility or admission or retention of

1    the person in the custody of the facility pending a final

2    hearing.

3          Again, the Government introduced records,

4    Exhibit No. 9 and the testimony Dr. Victoria Larsen, that

5    Mr. Yoo was involuntary committed to a mental institution in

6    accordance with New Jersey law.

7          The arguments, again, with respect to the NICS

8    Improvement Act, that does not change the definition of New

9    Jersey law, nor does it change the definition provided in the

10   federal regulations under 27 CFR, Section 478.11.

11         As to the Rehlander decision, I know that the Court

12   has reviewed that decision.  Without going into the

13   distinctions between Maine's mental health law and New

14   Jersey's mental health law, I will just say that what

15   bothered the First Circuit in that case is that the

16   commitment under Maine law in that particular situation

17   operated as a permanent deprivation of the Defendant's gun

18   rights.  That is not the case here.

19         Mr. Yoo is not permanently deprived of his gun

20   rights.  New Jersey has a relief from disabilities program

21   that has been approved in accordance with the NICS

22   Improvement Act, and he can apply for relief under that

23   program, and upon a sufficient showing, would be able to have

24   his commitment orders expunged from the record, and the legal

25   effect of that would be as if he had never been prohibited in

1  the first place.

2         So New Jersey already addresses the constitutional

3  concerns that Rehlander expressed and the First Circuit

4  relied upon as basis for the decision here.

5         The Government has introduced sufficient proof to

6  support submission of all pending charges for the jury's

7  consideration.  And the United States would ask that the

8  Defendant's motion be denied.

9         THE COURT:  Thank you, Mr. Coan.

10        All right.  Here is what I am going to do --

11        MR. YOO:  May I --

12        THE COURT:  Very briefly.

13        MR. YOO:  So, first of all --

14        THE COURT:  Mr. Yoo?

15        MR. YOO:  Yes, sir.

16        THE COURT:  The jury has been waiting about 45

17 minutes now.

18        MR. YOO:  Yes, sir.  Well, very briefly.

19        First of all, I did not -- not -- not contest -- I

20 did not contest the fact that the -- the FFL are required

21 to be -- I mean, required to keep ATF Form 4473.

22        Also I need you to look at 18 United States Code,

23 Section 923 Golf 1 Alfa.  That is actually the regulatory

24 code for a licensed importer, licensed manufacturer, and a

25 licensed dealer, and how they shall maintain records of

1   importation, production, shipment, receipt of sale, and other

2   disposition of firearms.  And that is directly related to the

3   code 922 Bravo 5.

4           Also, also we are not talking about New Jersey law

5   here.  We are talking about federal law.  This is not -- this

6   is not New Jersey state court.  Yes -- yes, I get it --

7           THE COURT:  Mr. Yoo --

8           MR. YOO:  In the State of New Jersey --

9           THE COURT:  Mr. Yoo.

10          MR. YOO:  -- I do not have right --

11          THE COURT:  Mr. Yoo.

12          MR. YOO:  -- to bear arms.

13          THE COURT:  Mr. Yoo, commitment is a question of

14   state law.  It is a function of state law.  You are not

15   committed in federal courts.  You are committed in state

16   courts.  So how can it not be -- I understand your argument

17   with respect to the CFR's, but how can it not be at least

18   informed by state law?

19          MR. YOO:  I was never informed of that -- that

20   court -- court order nor by NICS.  I inquired --

21          THE COURT:  That doesn't answer my question, sir.

22   How is the determination that the jury is going to be asked

23   to make in this case not informed by New Jersey law?

24          MR. YOO:  Because 922(g)(4) is a federal law.

25          THE COURT:  Okay.

1        MR. YOO:  There is a federal standards for what

2   should be considered a formal commitment in terms of NICS

3   entry 922(g)(4).

4        THE COURT:  All right.  Let's move on with your

5   next argument.

6        MR. YOO:  All right.  That's it.

7        THE COURT:  All right.  So, Mr. Yoo, I am required,

8   in responding to a motion under Rule 29, not to assess the

9   credibility of the witnesses or to weigh the evidence or draw

10  any inferences of facts -- of fact from the evidence.

11        My role, the Court's role, is simply to decide

12  whether the evidence, when viewed in the light most favorable

13  to the Government, is sufficient for any rational trier of

14  fact to determine there has been guilt established beyond a

15  reasonable doubt.

16        I do think under the circumstances presented in

17  this case and the evidence that has been adduced over the

18  last two days of trial, does support a finding that the

19  evidence, when viewed in the light most favorable to the

20  Government, is sufficient for a rational trier of fact to

21  find guilt based upon a reasonable doubt.

22        With respect to Counts 1 through 7, there was

23  testimony that the Defendant, who is not a United States

24  citizen, falsely testified to federally licensed firearms

25  dealers located within the Eastern District of Texas on the

1    ATF Form 4473 that was used in each of seven different

2    firearms transactions, that his country of citizenship was

3    the United States.

4          With respect to the 8th count, the Government's

5    evidence has demonstrated that the Defendant was committed to

6    a mental institution by Court orders on two occasions prior

7    to his knowing possession of five firearms, all of which had

8    traveled in interstate commerce.

9          With respect to the -- your statutory argument that

10   you have made, I am going to -- I am going to reserve a

11   decision on that part of the motion, and we will proceed with

12   the trial and submit the case to the jury.

13         And then I will decide the motion after the jury

14   returns a verdict, if it does, of guilty.  And, of course, we

15   will make that determination at that time.

16         The written motion for judgment of acquittal

17   pursuant to Rule 29 that you have made in Court has not been

18   filed in the docket on written form.  I will look forward to

19   that happening; and once that has occurred, I will more

20   carefully review it, as well as the Government's response,

21   which will be filed once the Defendant's response is filed on

22   the docket -- or once the Defendant's motion is filed on the

23   docket.

24         Now, I do want to confirm with you, Mr. Yoo, that

25   you do intend to take the stand this morning and testify in

1  your behalf.  I want to also confirm that you understand and

2  that Mr. Haas has had a conversation with you regarding your

3  constitutional right not to testify.  You have a right not to

4  testify just as you have a right to testify.  And it is your

5  determination which you want to do.  But I do want to confirm

6  that you understand that.

7           MR. YOO:  Yes.

8           THE COURT:  You do?

9           MR. YOO:  Yes.

10          THE COURT:  And have you had and opportunity to

11 visit with Mr. Haas, and has he explained to you that you

12 have a right to testify and a right not to testify.

13          MR. YOO:  Yes.

14          THE COURT:  All right.  Mr. Haas, would you like to

15 add anything?

16          MR. HAAS:  No, Your Honor.  I think that covers it.

17          THE COURT:  Okay.  Anything else before we have the

18 jury brought in?

19          MR. YOO:  Yes, sir.  Did you know how many "I don't

20 know" answers that the Government's witnesses -- so-called

21 expert witnesses answered?  "I don't know."  "I don't know."

22 "I don't know."  Like that.

23            But -- all right.  Just clarifying, so you are

24 reserving your decision, correct?

25            THE COURT:  I am denying it with respect to your

```
 1    arguments on the basis of sufficiency of evidence.  The

 2    motion is denied.

 3              With respect to your statutory arguments, I am

 4    reserving decision on those.

 5              MR. YOO:  All right.  So -- so -- sorry.  Let me be

 6    clear.  On the evidentiary part, you are denying it.  On the

 7    statutory part, you are reserving your decision.

 8              THE COURT:  That is correct.

 9              MR. YOO:  All right.  On the evidentiary part, I

10    object and reserve my right to appeal.  Thank you, sir.

11              THE COURT:  Anything further?

12              MR. YOO:  No, sir.

13              THE COURT:  Thank you.

14              Mr. Coan, anything further?

15              MR. COAN:  No, Your Honor.  Thank you.

16              THE COURT:  All right.  Let's have the jury brought

17    in.

18              COURT SECURITY OFFICER:  All rise for the jury.

19              (Jury in.)

20              THE COURT:  Please be seated.

21              Good morning.  Ladies and Gentlemen of the Jury,

22    welcome back.

23              I do apologize for our needing to keep you waiting

24    this morning.  I may not have warned you on Tuesday when we

25    started this trial, and if I failed to do so I apologize,
```

1   there are times during the course of every trial where I must

2   visit with the lawyers and the parties outside of your

3   presence about legal and other evidentiary matters that need

4   to occur outside of your presence.

5        We were here and started promptly early this

6   morning.  But, unfortunately, that took a little more time

7   than I anticipated.  So my apologies for making you wait this

8   morning.

9        When we concluded the day yesterday, the Government

10  had rested in its case, and we have resolved the legal

11  matters that -- that needed to be resolved.

12       And at this point the Defendant may call his first

13  witness.

14       MR. YOO:  I would like to call Gregory Harry,

15  FBI.

16       THE COURT:  Any objection, Mr. Coan?

17       MR. COAN:  Your Honor, the concern here is that

18  Mr. Harry was -- Officer Harry, Detective Harry, TFO Harry

19  was never identified as a witness by the Defendant, so he has

20  been present in the courtroom for the duration of the trial.

21       THE COURT:  Mr. Yoo, was Mr. Harry disclosed as a

22  witness?

23       MR. YOO:  No, sir.  But all of my subpoena for

24  witnesses had been denied, so the only person that -- that --

25  that is here who can possibly strengthen my argument would be

1   Gregory Harry since my subpoena had been denied because I was

2   not declared in forma pauperis, even though I lost everything

3   upon arrest.

4           THE COURT:  Did you serve a subpoena -- or request

5   to serve a subpoena on Mr. Harry specifically?

6           MR. YOO:  No, sir.  But I would like him to take

7   the witness stand on -- on about three questions.

8           Well, I did file subpoena on the actual witnesses

9   regarding my alleged commitments and all that, and they were

10  denied.  Like -- like -- like --

11          MR. COAN:  Your Honor, I'm going to object.  We are

12  not going into --

13          MR. YOO:  -- firsthand --

14          MR. COAN:  -- legal matters, pretrial matters.

15          THE COURT:  I think we are.  So is it the

16  Government's position --

17          MR. COAN:  I am just advising the Court of that set

18  of circumstances.  The Defendant is welcome to waive that

19  concern.

20          THE COURT:  All right.  So Mr. Harry has been in

21  the courtroom throughout the course of the trial, Mr. Yoo.

22  That, I guess, implicitly violates the Rule which you invoked

23  that witnesses who were going to testify would not be present

24  in the courtroom during the testimony of other witnesses.

25          Obviously, you didn't disclose him as a witness you

1  sought to call.  So -- but with that understanding, if the

2  Government doesn't object, I will permit the witness to

3  testify.

4          MR. COAN:  No objection.

5          THE COURT:  All right.  Please come forward and be

6  sworn.

7          (Witness sworn.)

8          GREGORY HARRY, DEFENDANT'S WITNESS, SWORN,

9                    DIRECT EXAMINATION

10 BY MR. YOO:

11 Q.   So Task Force Officer Gregory Harry, good morning, sir.

12 A.   Good morning.

13 Q.   So you have visit my -- my premise prior to my arrest

14 once, correct?

15 A.   That's correct.

16 Q.   That is -- that is, I believe, 2018-03-23 at around I

17 would say around 1000 or 1100 hours; is that correct?

18 A.   I don't remember the specific time, but March 23rd,

19 2018, does sound correct.

20 Q.   Yes, sir.  Was your intention to search my premise?

21 A.   No.

22 Q.   Then could you explain to me the reason why you noted my

23 firearm possession on your report, if it wasn't your

24 intention to search my premise?

25 A.   Well, it was my observation the firearm you are

1   referring to is the 12-gauge shotgun that was presented

2   yesterday was in your bedroom leaning up against the wall.

3   Q.   Did you inform me that -- those -- those will be used

4   against?

5   A.   I am sorry, I am not familiar with -- what are you

6   referring to?

7   Q.   Did you inform me prior to -- prior to that interview

8   and filling out that report, that those evidences would be

9   used against me or those supposed evidences?

10  A.   At the time, you hadn't been charged with any kind of

11  crime, so, no, I didn't inform you that was evidence against

12  you.

13  Q.   Were you looking to charge me?

14  A.   At the time, we were conducting an investigation, an

15  assessment of you.  That was the purpose of my visit to you

16  was to interview you.  There was no known crime at that

17  time.

18  Q.   What was your legal basis for investigation?

19  A.   So one of the main things that we do -- would it be

20  helpful if I kinda explain my role with the FBI?

21  Q.   Proceed, sir.

22  A.   So, as Mr. Yoo stated and has been addressed, I am a

23  detective with the Tyler Police Department.  I am currently

24  assigned to the FBI as a task force officer on the Joint

25  Terrorism Task Force.

1            One of the things that we do, one of our most

2    important roles these days is the role of kind of a threat

3    assessment, if you will.  When allegations are made, people

4    of concern are identified.  Those -- I don't know if you

5    could call it a case, but those instances are flowed down to

6    us.

7            They want us to take an assessment of those

8    threats, those individuals.  And that is what we were doing.

9    An assessment had been flowed down to us regarding Mr. Yoo,

10   multiple had.  So the purpose of my meeting with him was to

11   get an in-person interview with him, get a feel for him, is

12   there anything here, is there anything we need to be

13   concerned about?

14           That was the purpose for why I came to speak with

15   you, along with those two UT Tyler Police Department

16   officers.

17   Q.   I understand.  But have I ever been convicted of a

18   violent crime or any terroristic threats or anything of that

19   nature?

20           THE COURT:  Mr. Yoo, that violates the motion in

21   limine, sir, that you agreed to.

22           MR. YOO:  Sir, the Prosecution has already violated

23   motion in limine by submitting my CHL status.  That actually

24   pertains to character reference, nothing of the nature of the

25   charge.  So -- so that limine is gone, sir, at this point.

1    MR. MACHICEK:  The limine is very much still on

2  file, Your Honor.  The questions propounded by the Government

3  did not violate that motion.  This question, in fact, does

4  and is inadmissible.

5    MR. YOO:  Sir --

6    THE COURT:  I'm going to sustain the objection.

7    Move along, Mr. Yoo.

8    MR. YOO:  Yes, sir.

9  BY MR. YOO:

10  Q.  All right.  So when -- when you visited my premise, did

11  I hide any firearm possession from you?

12  A.  We didn't really discuss your firearm possession at all,

13  so I'm not sure what you were hiding or intentionally

14  showing.

15  Q.  You had asked me about my firearm possession, correct?

16  A.  We did discuss your firearms, yes.

17  Q.  And then I -- I revealed everything to you, correct?

18  A.  We discussed what -- well, as I recall, we discussed

19  what firearms you did have.  I think you mentioned two rifles

20  and a shotgun that we had already saw.

21  Q.  And I did -- I did disclose some -- some things about

22  pistols that I own too; is that correct?

23  A.  To the best of my recollection was that we talked about

24  a firearm in your car.

25    MR. YOO:  Can we look at your --

1    Permission to approach the witness.

2    THE COURT:  Yes.

3    BY MR. YOO:

4    Q.   Is this the correct report?

5    THE COURT:  Can you identify for the record,

6    Mr. Yoo, what you have handed the witness?

7    MR. YOO:  This is the FBI 302 report filled out by

8    Agent Gregory Harry -- Task Force Officer Gregory Harry

9    himself, back in 2018-03-27.  And I would like to mark this

10   as an exhibit.

11   THE COURT:  What is the question?  What is the

12   question for the witness?

13   BY MR. YOO:

14   Q.   Did I -- so you said that I did reveal my firearm

15   possession, correct?

16   A.   Yes, we did discuss your firearms briefly.  That wasn't

17   the subject of the interview, yes.

18   Q.   So the subject of the interview was threat assessment,

19   basically?

20   A.   (Witness nods) That's correct.

21   Q.   Does having a -- does having a fourth position political

22   view count as a threat?

23   A.   I'm sorry.  I missed the something position political

24   view.

25   Q.   Can someone -- is someone eligible to be assessed with

1   threat -- threat assessment just for having an outside

2   political views out of mainstream?

3   A.   Well, I think it is far more broad than just a political

4   view.

5   Q.   Have I remained a terroristic threat, to the best of

6   your knowledge?

7                MR. MACHICEK:   Your Honor, I believe that question

8   calls for a legal conclusion.

9                THE COURT:   Can you rephrase the question, Mr. Yoo?

10  BY MR. YOO:

11  Q.   What is the definition of a terroristic threat?

12               MR. MACHICEK:   Your Honor, that calls for a legal

13  conclusion.

14               THE COURT:   Can you rephrase the question so that

15  it doesn't call for a legal conclusion Mr. Yoo?

16               MR. YOO:   All right.

17  BY MR. YOO:

18  Q.   Which -- what kind of statements did you hear me

19  making?

20  A.   Did I personally hear you make?

21  Q.   Yes.   Personally, what is your firsthand knowledge of

22  statements that I -- that you personally hear me making?

23  A.   The information that I was looking into was all either

24  made on social media, YouTube, SnapChat, things like that.

25  You and I had not personally interacted until that day.

1  Q.   Okay.  On your arrest report, you said that you were

2  aware of my mental illness or mental instability; is that

3  correct?

4  A.   That sounds right.  I mean, I was aware of it.  I don't

5  recall if that is in my report or not.

6  Q.   Are you qualified to determine whether someone is

7  mentally unstable?

8  A.   No.

9  Q.   Okay.  Did I show any sign of psychotic or neurotic

10  symptoms during the arrest?  Did I show any -- did I have any

11  outbursts during the arrest, violent outburst?

12  A.   I am not a medical expert in what the psychotic or

13  neurotic things that you would consider, so I --

14  Q.   But you claim that I am mentally unstable; is that

15  correct?

16  A.   I certainly am aware of your history of mental

17  instability.

18  Q.   Do you know for a fact that those history is true and

19  accurate?

20  A.   I make the decision based on the information that I have

21  in front of me, the information that I had at the time prior

22  to your arrest, and since that time is that you had been

23  committed on two occasions for mental health issues, for

24  several issues.  I am happy to discuss those if you would

25  like.  So, yes, I was aware of those issues and those

1    concerns.  Those are always a concern any time law

2    enforcement makes an arrest with anybody.

3    Q.   Can it be perjured?

4    A.   Can what be perjured?

5    Q.   Can those -- is there a possibility that those reports

6    can be perjured?

7    A.   Mr. Yoo, as Dr. Larsen said yesterday, anything is

8    possible.  Is it likely, is it probable, I don't believe

9    so.

10   Q.   Okay.  Is RUPD report and RWJUH -- RUPD reports and

11   RWJUH triage reports consistent and screener reports?

12   A.   That is very broad question.  Can you be more specific?

13   Q.   So -- all right.  So are those two -- so you have viewed

14   both of those files; is that correct?  You have viewed

15   Rutgers Police reports and RWJUH reports; is that correct?

16        MR. MACHICEK:  Your Honor, I am going to object to

17   the Defendant asking the witness to testify from documents

18   that are not in evidence.

19        MR. YOO:  I object to his -- his -- his objection.

20   He has submitted all of those documents as -- as exhibit

21   lists, and he is only objecting because he is cornered.

22        MR. MACHICEK:  Your Honor, my objection is based in

23   law.  Those items of evidence have not been offered or

24   admitted into evidence in this proceeding.

25        MR. YOO:  I am not displaying those --

60

```
 1          THE COURT:  What is the question, Mr. Yoo, what

 2  exactly is the question?

 3          MR. YOO:  Sir, are you objecting on behalf of the

 4  Prosecution?

 5          THE COURT:  No, sir, I am trying to rule on the

 6  objection that has properly been made to a question I am

 7  trying to determine whether the question is appropriate or

 8  not.  Can you rephrase it, or tell me what it was again?

 9          MR. YOO:  Yes, sir.

10  BY MR. YOO:

11  Q.  Are all those reports consistent with each other, to the

12  best of your knowledge?

13  A.  So, generally yes, sir, I do think they are

14  consistent.

15  Q.  Oh, okay.  Can you take a -- do you mind if we take a

16  look at one -- one exhibit that I have?

17          THE COURT:  You can show it to him.  I don't want

18  it published to the jury though.

19          MR. YOO:  Well, how do I publish it to the jury?

20          THE COURT:  No, I am saying you show it to the

21  witness.  Don't show it to the jury on the overhead screen.

22  BY MR. YOO:

23  Q.  Is this the correct RUPD report regarding one of my

24  supposed, alleged commitments?

25  A.  Yes, I am familiar with this report.
```

1    Q.   Does it say anything about me making a homicidal

2    threat?

3              MR. MACHICEK:   Your Honor, I'm going to object.

4    Yet again, these documents haven't been admitted into

5    evidence.  Requesting that the witness can review them and

6    asking them if they form the basis of an opinion, is one

7    thing; but having him testify to inadmissible hearsay is

8    quite another.

9              THE COURT:   I sustain the objection, Mr. Yoo.

10             MR. YOO:   I have actually -- I have actually

11   admitted this -- this report within the exhibit list, and

12   this is a pertinent evidence to whether I have been committed

13   or not pursuant to New Jersey law.

14             THE COURT:   That exhibit is not in evidence.  And

15   you are welcome to ask the witness whether he reviewed it and

16   whether it formed the basis of, you know, any of the work

17   that he did in this case or not.  But the witness has not

18   testified to anything for which that would support his

19   impeachment.  I'm not quite sure what you are trying to do

20   here.  But that document is not in evidence.

21             MR. YOO:   He did testify that he is aware of my

22   mental instability, but on what legal basis?

23             THE COURT:   Let me give you an opportunity to

24   rephrase your question, and we will see where we go from

25   there.

1          MR. YOO:  Okay.

2   BY MR. YOO:

3   Q.   So this is the report that led to the Exhibit, I

4   believe, 9 of the Government's screening document; is that

5   correct?

6   A.   I am not sure if it links to Exhibit 9, but I am

7   familiar with this report.

8   Q.   This report is -- is regarding twenty -- 2013?

9   A.   I do believe that this report references the incident

10  that kind of, I guess, was the catalyst to your 2013

11  commitment.  If that is what you are saying, yes.

12  Q.   Catalyst or the cause?

13  A.   Whatever started it.

14  Q.   Whatever started it.

15          MR. YOO:  Your Honor, at this point I would like to

16  submit this into the evidence?

17          THE COURT:  Mr. Machicek?

18          MR. MACHICEK:  Your Honor, that document contains

19  inadmissible hearsay evidence under Federal Rules of Evidence

20  803.

21          THE COURT:  Can I see the document?

22          MR. YOO:  This entire --

23          THE COURT:  Mr. Yoo --

24          (Bench conference held.)

25          MR. YOO:  It has been authenticated, sir.

1          THE COURT:  How has it been authenticated?

2          MR. YOO:  It is just police report.

3          THE COURT:  Is there an affidavit --

4          MR. YOO:  The Government document.  I mean, police

5     reports are self-authenticating, according to Federal Rules

6     of Evidence.

7          (Pause.)

8          MR. YOO:  That is what leads to my alleged

9     involuntary commitment, and it says "voluntary," and it does

10    not say anything about homicidal threats.  So I am trying to

11    challenge the nature of -- nature of this supposed

12    involuntary commitment according to New Jersey law.

13         THE COURT:  This is not the witness to do that

14    with.

15         MR. YOO:  He is the one that actually conducted all

16    of the investigations.

17         THE COURT:  He has got absolutely nothing to do

18    with what happened in New Jersey, Mr. Yoo.  This is

19    completely irrelevant to what happened in New Jersey.  If you

20    are trying to attack the validity of your commitment in

21    New Jersey, this is not the witness to do that with.

22         MR. YOO:  All right.  Then I will reserve

23    that -- that report for self-testifying.

24         THE COURT:  Well, we will see how that works out.

25         (Bench conference concluded.)

1  BY MR. YOO:

2  Q.   So was I respectful and cooperative during the arrest?

3  A.   Absolutely, yes.

4  Q.   Why didn't you display the arrest warrant?

5  A.   Mr. Yoo, at the time of your arrest, I didn't have your

6  arrest warrant in my physical possession.  Not only that, it

7  is the standard policy during any type of arrest, officer

8  safety, your safety, the safety of the general public is

9  paramount.  It is our number one concern.  It would be

10  impractical for me to have your warrant in my hand.  I need

11  to have my hands free and ready for whatever may come my

12  way.

13  Q.   So how many people were there during my arrest?

14  A.   How many officers?

15  Q.   Yes.

16  A.   I believe on the original contact was myself and two

17  other officers that physically took you into arrest.  There

18  were several other agents and officers in the area, one for

19  safety in the event that you should flee the scene, and that

20  were also there for any follow-up investigation that came

21  pursuant to that arrest.

22  Q.   So was this a planned arrest?

23  A.   Yes, I would say so.

24  Q.   What is the legal basis for not having an arrest warrant

25  at a planned arrest pursuant to Federal Rules of Criminal

1   Procedure Rule 4?

2          MR. MACHICEK:  Your Honor, I'm going to object that

3   that calls for a legal conclusion.

4          THE COURT:  Sustained.

5          You can ask facts about it, Mr. Yoo, but let's

6   don't get into the legality of it.

7          MR. YOO:  Okay.

8   BY MR. YOO:

9   Q.  So, also, you didn't sign the return of the arrest

10  warrant?

11         MR. MACHICEK:  Your Honor, I'm going to object to

12  relevance.

13         THE COURT:  Sustained.

14         Move along, Mr. Yoo.

15         MR. YOO:  This is relevant to this case, sir.

16         THE COURT:  It is not.  Move along.

17  BY MR. YOO:

18  Q.  So I was completely -- so I was completely cooperative

19  and non-violent during the arrest; is that correct?

20  A.  I would say so, yes, sir.

21  Q.  I was polite; is that correct?

22  A.  Oh, absolutely yes.

23  Q.  Which vehicle was I in when I was transported to the

24  federal courthouse?

25  A.  My recollection is that you were transported in a Tyler

1    Police -- one of our Tahoes, a marked police unit.

2    Q.   Did you have a search warrant at the time of the

3    arrest?

4         MR. MACHICEK:  Your Honor, I'm going to object to

5    relevance.

6         THE COURT:  Sustained.

7         Move along.

8         MR. YOO:  All right.  I pass the witness.

9         THE COURT:  Any cross-examination?

10        MR. MACHICEK:  Your Honor, the Government has no

11   questions for this witness.  May he be excused?

12        THE COURT:  You may be excused.

13        MR. YOO:  Yes, sir.

14        THE COURT:  Call your next witness.

15        MR. YOO:  That's it, sir.  I would like to

16   self-testify.

17        THE COURT:  Take the stand.

18        MR. YOO:  May I testify from there?

19        THE COURT:  No, you take the witness stand.

20        MR. YOO:  Oh, well, I need to present.

21        THE COURT:  You can take it to the witness stand.

22   If you will raise your right hand, and Mrs. Schroeder will

23   swear you in.

24        (Oath administered.)

25        MR. YOO:  I am not a Christian, ma'am.  But I do

1    solemnly affirm in the name of President Washington.

2             So, Your Honor, since this is narrative testimony,

3    is it okay if I, you know, use the projector?

4             THE COURT:  No, no.

5             MR. YOO:  Where are the --

6             (Pause in proceedings.)

7               HEON JONG YOO, DEFENDANT, AFFIRMED,

8                      DIRECT EXAMINATION

9             MR. YOO:  All right.  This is the Defendant's

10   narrative -- narrative testimony as a Pro Se Defendant.

11            So -- so everything started back in 2013-04-05

12   around 0100 hours.  That was the -- that was the poisonous

13   tree of this case.  Everything else is a fruit.

14            What happened then was -- so let me describe the

15   New Jersey law to y'all.

16            MR. COAN:  Your Honor, object.

17            THE COURT:  Mr. Coan -- I mean, Mr. Yoo, this is a

18   factual narrative.  You can present facts to the jury; but I

19   think as we've discussed before, this is not an opportunity

20   for you to present argument.

21            MR. YOO:  I am -- I object to his objection because

22   I am trying to present the facts pursuant to what actually

23   happened.

24            THE COURT:  The objection of the Government is

25   sustained.  You may present facts, but we are not going to

1   talk about what New Jersey law is.

2           MR. YOO:  So, in terms of involuntary commitment,

3   what happened back in 2013-04-05 was I was casually just

4   talking about guns, owning guns, getting a firearms license

5   with my friends at the dining hall.

6           And then -- and then these two dining hall staff

7   employees named Panagioti Dafnos and Stefanie Oates, they

8   reported me saying that --

9           MR. COAN:  Objection.  Hearsay.

10          THE COURT:  Sustained.

11          You can't testify to what other people said,

12  Mr. Yoo.

13          MR. YOO:  It is in the proof -- authenticated

14  record, sir.

15          THE COURT:  You may not testify to what other

16  people said.

17          MR. YOO:  Okay.  So the police --

18          THE COURT:  Unless there is an exception to the

19  hearsay rule; and if you have, you know, got an exception you

20  want to cite, I'm glad to hear it.

21          MR. YOO:  Sir, a lot of Prosecution's witnesses

22  were hearsay, and you never sustained any of those.

23          THE COURT:  Did you object on the basis of hearsay?

24  I don't recall that you did, Mr. Yoo.

25          MR. YOO:  Several times I objected on the basis of

1   relevance and several times I objected based on the character

2   reference.

3          THE COURT:  Mr. Yoo, I try to respond to each

4   objection fairly and impartially regardless of who has raised

5   it.  The Government has raised an objection to your testimony

6   on the basis of hearsay that someone else said something.

7   And that is classic hearsay unless there is an exception that

8   permits it, and I am open to any argument you have got in

9   that regard, but --

10         MR. YOO:  Recorded recollection.  Public records.

11  Article VIII, Federal Rules of Evidence Rule 803(5)(a) --

12         THE COURT:  (5) relates to a recorded recollection

13  of a statement that a witness had made who is unable to

14  recall that testimony or that statement when testifying.  So

15  it is basically like refreshing a witness's recollection.

16  That exception does not apply here.

17         MR. YOO:  What about (8)?  I mean, this is an

18  actual self-authenticating police report, sir.

19         THE COURT:  Mr. Coan?

20         MR. COAN:  No foundation.

21         THE COURT:  Can you lay a foundation for that

22  report?

23         MR. YOO:  This is -- I did lay a -- a foundation as

24  I walked in.  This is what led to -- what -- what led to

25  my -- my alleged charges that I am facing right now, the

1    involuntary -- alleged involuntary commitment that the

2    Prosecution --

3            THE COURT:  Do this, for the record, Mr. Yoo, go

4    ahead and lay the foundation for what that report is you seek

5    to read from.

6            MR. YOO:  This report is the Rutgers Police Report,

7    which is the cause of the --

8            THE COURT:  What is the date of the report?

9            MR. YOO:  2013-04-0 --

10           THE COURT:  Who prepared the report?

11           MR. YOO:  Officer E. Ruff, Badge No. 3768.

12           THE COURT:  All right.

13           Mr. Coan, any reason to suspect the trustworthiness

14   of this document?

15           MR. COAN:  No, Your Honor.  There are still hearsay

16   concerns within the document.

17           THE COURT:  Mr. Yoo, I am going to permit you to

18   read whatever you want to read from it.

19           MR. YOO:  Yes, sir.  So --

20           MR. COAN:  Your Honor, just one other objection,

21   for record purposes, relevance.

22           THE COURT:  Absolutely.  That is noted.

23           MR. YOO:  This is relevant to the -- this leads

24   up -- this describes the nature of my alleged commitment that

25   they are accusing me of.

1          THE COURT:  Okay.

2          MR. YOO:  This pertains --

3          MR. HAAS:  He is letting you read it.  Go ahead.

4          MR. YOO:  This pertains every bit of New Jersey

5  Law.

6          Okay.  So then -- then Stephanie Oates and Dafnos

7  reported around 2101 hours that they overheard me talking

8  about guns, owning guns, and my family sells guns.  I have

9  not said such things.

10         And, also, 2101 hours is a lot later than when I

11  was actually physically present at the dining hall.  So there

12  was no probable cause to -- to involuntarily me transport him

13  to the RWJ hospital at that time.

14         MR. COAN:  Your Honor, objection.  Argumentative.

15  Calls for a legal conclusion.

16         THE COURT:  That is sustained.

17         Only facts, Mr. Yoo.

18         MR. YOO:  The report specifically states that Yoo

19  did not specifically threaten to cause harm to anyone or

20  state that he was going to.

21         The report further states that the RUPD allowed

22  me -- me to change into three-piece suit before getting

23  transferred -- transported to the Robert Wood Johnson

24  Hospital.  And then the -- the report states:  Yoo expressed

25  a strong desire to purchase guns legally in a manner which

1    seemed to obsess over the issue over obtaining a gun.  It

2    also states --

3              MR. COAN:  Your Honor, I am unclear here.  I know

4    it is a narrative format, but we are just now reading from

5    documents.

6              THE COURT:  Is there something about that document

7    that is important to you, Mr. Yoo?

8              MR. YOO:  Yes.

9              THE COURT:  Let's focus on that and read that.

10             MR. YOO:  I believe Prosecution is abusing their

11   discretion on objections, Your Honor, and to purposely

12   delaying prompt proceeding of trial.

13             THE COURT:  Your objection is overruled.  Please

14   move along.

15             MR. YOO:  It is stated that Yoo voluntarily --

16   voluntarily was transported to the Robert Wood Johnson

17   Hospital via --

18             MR. COAN:  We are still reading from the report.

19             MR. YOO:  -- ambulance.

20             MR. COAN:  Your Honor, I renew my objection.

21             THE COURT:  Move along.

22             MR. YOO:  So this is not -- pursuant to RUPD

23   reports, this is not -- not involuntary transport to the --

24   to the hospital.  And -- and in the -- the Robert Wood

25   Johnson UH Hospital reports it -- it -- the Robert Wood

1    Johnson reports completely contradict these RUPD reports.

2              MR. COAN:  Your Honor.  Hearsay, not in evidence.

3              MR. YOO:  Permission to submit them as evidences

4    pertaining to this -- this alleged commitment record.

5              THE COURT:  Are those reports not in evidence?

6    They are not; is that correct?

7              MR. COAN:  That's correct.

8              THE COURT:  All right.  Do you have copies of

9    those, Mr. Yoo?

10             MR. YOO:  Yes, sir.  They are among the

11   Government's exhibits.

12             THE COURT:  Mr. Coan?

13             MR. COAN:  They haven't been introduced.

14             MR. YOO:  That's why --

15             MR. COAN:  They are in the notebook, Your Honor.

16             MR. YOO:  -- permission to enter into the

17   evidence.

18             THE COURT:  Any objection to entering them?

19             MR. COAN:  I would ask for a foundation.

20   Relevance.

21             THE COURT:  Can you lay a foundation for them?

22             MR. YOO:  Credibility of the medical, quote,

23   unquote, professionals as Dr. Larsen -- Dr. Larsen testified

24   that they are highly unlikely to lie.

25             THE COURT:  Okay.  Here is what I am going to

1  permit you to do, Mr. Yoo, you are testifying right now as a

2  fact witness.  I am going to permit you to finish your

3  testimony.  You can talk to the jury about the facts.  And

4  then after that, I will give you an opportunity to admit

5  whatever evidence you believe is appropriate, as long as it

6  complies with the Federal Rules of Evidence.  So let's

7  confine our discussion right now to the facts.

8         MR. YOO:  Yes, sir.  Among submitted evidences,

9  which are Exhibit 9 of the -- Exhibit 9 of the Prosecution's

10  evidences from Middlesex County Court, Kenneth Kaufman, who

11  actually screened me, wrote down on his report that Yoo

12  threatened to kill his RA.

13         That statement completely contradicts what

14  this -- this report -- Kenneth Kaufman has specifically

15  stated --

16         MR. COAN:  Now, we are making credibility

17  determinations.  Objection.

18         MR. YOO:  I am just -- I am just presenting facts,

19  sir.  I am not --

20         MR. COAN:  Argumentative.

21         MR. YOO:  -- contesting credibility.  Prosecution

22  is abusing its discretion of raising objections.

23         THE COURT:  Just move along, Mr. Yoo.

24         MR. YOO:  Kenneth Kaufman has stated that RUPD

25  Rutgers Police transported me to the Robert Wood Johnson

1    Hospital because I have threatened to kill my RA with a gun.

2            It is completely incontradictory with -- with this

3    report.  Also, I have never --

4            MR. COAN:  Again, legal argument, Your Honor.

5    Object.

6            MR. YOO:  That's a factual argument, Your Honor.

7            THE COURT:  Move along, Mr. Yoo.

8            MR. YOO:  At a mental health commitment hearing,

9    the burden of proof lies on the state --

10           THE COURT:  Mr. Yoo.  Mr. Yoo, I am not going to

11   permit you to make a legal argument.  I have told you that

12   now half a dozen times.

13           MR. YOO:  Yes, sir.

14           THE COURT:  I am going to let you make your legal

15   argument when the Government presents their legal argument,

16   closing statement at the end of all of the evidence.  Okay?

17   Right now I am confining you to your testimony about the

18   facts.

19           MR. YOO:  Facts.

20           THE COURT:  Facts.

21           MR. YOO:  The RUPD never noted that I have ever,

22   ever threatened anyone nor -- nor they -- they -- they stated

23   that I -- I was a threat to myself or others.  That is only

24   defined in those two -- two confinements at the hospital.

25           And I don't know the origin of those -- those

1    alleged homicidal threats that I made, which is stated in the
2    screening documents.

3         I also have -- so on -- so on 2015 -- 2015-09-21,
4    the RUPD responded to a call of a Rutgers student that I was
5    making a -- a terroristic threat on the phone at the -- at
6    the location called College Avenue Gym.

7         I had told RUPD what -- honestly and truthfully
8    what I have said.  I have explained that I yelled, "death to
9    Middle East" -- I had a heated discussion with my friend on
10   the phone saying, "death to Middle East."

11        And then I have explained to the -- the RUPD I was
12   not targeting a person, I was not targeting an individual,
13   but I hate the culture of Middle East, and I hate the
14   constitutional incompatibility of Middle Eastern culture and
15   the laws of Middle Eastern nations --

16        THE COURT:  Mr. Yoo, what is this relevant to?  Why
17   do you want the jury to hear this?

18        MR. YOO:  Dr. Larsen testified yesterday that
19   through personal observation of RUPD -- sorry.  Through
20   personal observation of law enforcement, there has to be --
21   the law enforcement has to believe that a person is a threat
22   to himself or others to be involuntarily transported to the
23   hospital.  I am -- the grounds for what -- what -- what --
24   what the facts were and what their interpretation was.

25        MR. COAN:  Your Honor, the only objection I have is

1   the mischaracterization of the testimony with respect to

2   stating that Dr. Larsen testified that involuntary transport

3   was required.  That is not her testimony.

4           THE COURT:  Mr. Yoo, I am just cautioning you about

5   getting into your opinions that aren't particularly relevant

6   to this proceeding.  I don't -- I don't see that there is

7   much benefit to you in doing that.

8           MR. YOO:  Sir, I wasn't stating -- stating my

9   opinions.  That is what I -- that is the facts that I told

10  Rutgers Police on that report.

11          THE COURT:  Okay.

12          MR. YOO:  Yes.

13          So then -- then -- and -- a -- an -- a -- a -- an

14  emergency service unit lieutenant from Rutgers Police

15  evaluated me, and then he determined that I was in further

16  need of evaluation, transported me to the RWJUH.  And on

17  the -- on the RWJUH report, it is stated that I was -- that I

18  was also -- I was also -- sorry, I had been involuntarily

19  committed back in 2011 for making a homicidal threat.  And I

20  was making a terroristic threat -- threat against -- against

21  Middle East and the Middle Eastern people.

22          However, back in 2011, I was attending an

23  international school in South Korea near Army base.

24  And -- and I was not present at New Jersey.  The only place

25  in the United States that I visited back in -- back in 2011

1   was Texas; Dallas, Texas.

2           Proceeding on.

3           On twenty -- so the -- the FBI -- on -- sorry.  On

4   those two involuntary commitments, supposed accounts and when

5   those Middlesex County Adjuster forwarded those records to

6   the FBI NICS, NICS database, I was not informed of their

7   entry proceeding at all.  I was not informed of that entry

8   proceeding, nor that -- that -- that entry until this case

9   started through the criminal complaint affidavit of Agent

10  James Reed.

11          On 2016-01-19 around 1400 hours, I was there --

12  sorry, not 1400.  1600 hours I was at Fort Worth Gun -- to

13  the best of my knowledge, 1600 hours.  I was at the Fort

14  Worth Gun Shop attempting to purchase a shotgun.

15          I -- I entered incorrect name, address, and the --

16  and the date of birth.  And I ran -- ran that shotgun through

17  the NICS background check.  It came back denied.  And the

18  gun -- the firearms licensee informed me how to appeal that

19  decision.

20          I promptly appealed it.  Stated -- stated -- may I

21  review the documents, Your Honor?  I -- I -- I do not want to

22  commit perjury.  That is why.

23          THE COURT:  Sure.

24          (Pause in proceedings.)

25          MR. YOO:  I apologize to the jurors for unnecessary

1   delay.

2           32.  All right.  This had been -- this had been

3   entered into evidence by the Prosecution.

4           THE COURT:  What is the exhibit number?  Do you

5   know?

6           MR. YOO:  32.

7           THE COURT:  Okay.  Thank you.

8           MR. YOO:  I have never been convicted of any

9   criminal offense.  I am a green card holder.  Also, I had --

10  I only had been recently charged with a misdemeanor,

11  disorderly conduct.  However, I dropped the charge because

12  that was a false accusation.  Today I tried to purchase a

13  firearm but got denied.  May I note the reason why I got

14  denied, so I can take care of it and appeal it?

15          And then they subsequently -- subsequently

16  responded on 2016-01-26 stating all of the different factors,

17  prohibiting factors why a -- why a person can be denied of a

18  firearm -- firearm transaction.  They, however, did not

19  specify any reason why my entry was -- was denied

20  specifically, nor -- nor whether any of these factors

21  specifically applied to me.  Nor -- nor have they ever

22  informed me of -- of this 922(g)(4) entry any time during

23  this inquiry/appeal.

24          On -- on -- on 2016-01-0 -- sorry.  On 2016-01-26,

25  I swore into the United States Army at Dallas MEPCOM.  And

1　around 2016-04-26, about four months before I -- I was --

2　sorry.  A little less than four months before I was scheduled

3　to ship out to boot camp, I was disqualified.

4　　　　　And -- and only through this case I have realized

5　that I was disqualified because of this NICS entry.  I have

6　even -- I have even contacted Congressman Sam Johnson to make

7　an inquiry/appeal on my firearm denial and military

8　disqualification.

9　　　　　MEPCOM just told him, oh, it was because of his --

10　　　　　MR. COAN:  Objection.  Hearsay.

11　　　　　MR. YOO:  -- mental reasons.

12　　　　　THE COURT:  I will sustain that.

13　　　　　MR. YOO:  I have visited several gun stores, and I

14　have visited several gun stores at Tyler, Texas, and I have

15　purchased -- I have purchased firearms.  And I have

16　overridden -- I have overridden NICS background checks by

17　exhibiting my Texas Concealed Handgun License.

18　　　　　I have never been convicted of any crime.  I have

19　never yet -- I have never been convicted of any crime.  I

20　have never been a fugitive from justice.

21　　　　　MR. COAN:  This violates the in limine.

22　　　　　THE COURT:  Mr. Yoo, this violates the motion in

23　limine, which you agreed to.  You have informed the jury on a

24　number of occasions throughout this trial that you have never

25　been convicted of a crime.  I think they understand that now.

1  Let's -- let's move along.

2          MR. YOO:  Sir, the Prosecution has waivered their

3  limine first because they submit a character reference, and

4  they also have submitted irrelevant references that would

5  be -- that would be considered character references.

6          THE COURT:  Mr. Yoo, I think you brought up the

7  question of your lack of criminal history in your opening

8  statement for the record.

9          MR. YOO:  Yes, sir.

10         THE COURT:  Let's just move along.

11         MR. YOO:  I am just going along the list of what

12 the FBI NICS had.  Thank you, sir.

13         I am not an unlawful user of or addicted to any

14 control substance --

15         MR. COAN:  That is argument.  It calls for legal

16 conclusion.

17         MR. YOO:  I am just reading off of --

18         THE COURT:  Overruled.

19         Go, ahead Mr. Yoo.

20         MR. YOO:  I was not informed of that entry that I

21 had -- that I have entered as adjudicated as mentally

22 defective or have been committed to a mental institution.  I

23 am not an alien and are illegally or unlawfully in the United

24 States.

25         I have not been discharged from United States

1    military under dishonorable conditions.  I have never

2    renounced U.S. citizenship.  I have never been a subject of

3    court order that -- that -- that restrains the person from

4    harassing, stalking, or threatening an intimate partner or

5    engaging in other conduct that would place the partner or

6    child in a reasonable fear of bodily injury.

7          I have never been convicted of a -- well, yeah --

8    okay.

9          So back in 2016-01-26, looking at these, this list,

10   I was -- I was completely unaware that any of these -- these

11   entries had been made to my record.

12         So -- and there had been a -- several law -- law

13   enforcement visits to my premise, including local, state, and

14   federal.

15         However, they have never confiscated and kept my

16   firearms.  They were well aware of my firearm possessions.

17   However, they have never confiscated it.  They have never

18   raised any issues in terms of my firearm ownership throughout

19   the course of almost three years of my firearm ownership.

20         And regarding adjudicated mentally defective

21   committed to a mental institution entry, I was discharged

22   administratively from the hospital well before the hearing

23   date.  All of my supposed commitments had occurred throughout

24   ex parte communication.

25         I have never even met the counsel that -- of those

1  Somerset Superior Court of -- of new Jersey had -- has

2  appointed me to represent me throughout those hearing.

3            I have never been served a proper due process.  I

4  have never examined any evidences -- I have never examined --

5            MR. COAN:  That is legal argument.

6            THE COURT:  I'm sorry?

7            MR. COAN:  Legal argument.

8            MR. YOO:  Sir, I would just submitting facts.

9            THE COURT:  Okay.  Move along.

10           MR. YOO:  Yes.

11           I have never examined any of the -- any of the

12  evidences nor documents.  They have never -- after they

13  have -- after the discharge, they haven't even gave me any

14  paperwork they have processed to the court whatsoever, so I

15  was completely uninformed of this -- these supposed entries.

16           On 2018-04-06, I was arrested, and then I was

17  placed under U.S. Marshal custody, and then I was transported

18  to Smith County Jail and then -- then transported to Gregg

19  County Jail around 21 days later.  And I have been

20  incarcerated there ever since.

21           Then I started examining bunch of evidences and

22  discoveries, both the Prosecution and my previous attorneys

23  have made.

24           From there I discovered through -- firstly through

25  Agent Reed's criminal complaint affidavit of those two NICS

1  entries, adjudicated mentally defective/committed to a mental
2  institution.

3        I was confused and surprised to, like, find out
4  that I had been labeled adjudicated mentally
5  defective/committed to a mental institution because around --
6  the only plausible medical record -- I'm sorry, mental health
7  record, only voluntary mental health record that I have of
8  any form of assessment or evaluation that I have gone through
9  that I chose to do, consented to do was -- happened back in
10  November -- October and November of 2015.

11        And on those -- those reports I was deemed high
12  functioning --

13        MR. COAN:  Objection.  Hearsay.

14        MR. YOO:  -- and completely mentally sane.

15        MR. COAN:  Relevance.

16        MR. YOO:  Actually, that has been submitted --

17        THE COURT:  Hold on just a moment, Mr. Yoo.

18        I'm going to overrule the objection.

19        Move along, Mr. Yoo.

20        MR. YOO:  Yes, sir.

21        So that report has specifically stated that I have
22  high I.Q.  I do not have any emotional disturbance nor
23  neurological disorder.  So that was the only report that I
24  could have gone by until I found this discovery.

25        And, yeah.  That concludes my testimony, sir.

1       THE COURT:  Okay.  Thank you, Mr. Yoo.  You may

2  step down.

3       I will permit the Government to cross-examine

4  Mr. Yoo when we return from our break.

5       Ladies and Gentlemen, don't forget not to discuss

6  the case among yourselves until all of the evidence has been

7  presented, and I have instructed you on the law.

8       We will be in recess about 15 minutes.

9       COURT SECURITY OFFICER:  All rise for the jury.

10       (Jury out.)

11       (Recess was taken at this time.)

12       (Jury out.)

13       THE COURT:  Mr. Yoo, on the stand.  Thank you very

14  much.

15       I think for the purposes of any objections to

16  questions on cross-examination, Mr. Yoo, what I will ask you

17  to do is just address those to me.

18       So if Mr. Coan asks you something on

19  cross-examination that you, in your role as Pro Se Counsel,

20  think is an inappropriate question, I will just ask you to

21  turn and direct your objection to me, and I will rule on it.

22       MR. YOO:  Yes, sir.

23       THE COURT:  Okay let's have the jury brought in.

24       (Jury in.)

25       THE COURT:  Please be seated.

1          Mr. Coan, you may cross-examine the witness.

2              MR. COAN:   Thank you, Your Honor.

3                        CROSS-EXAMINATION

4     BY MR. COAN

5     Q.   Good morning, Mr. Yoo.

6     A.   Good morning, sir.

7     Q.   You are not a United States citizen, correct?

8     A.   No, I am not.

9     Q.   You have falsely represented your citizenship in

10    connection with firearms purchases; is that correct?

11    A.   Yes.

12    Q.   You have made these statements to federally licensed

13    firearms dealers?

14    A.   Yes, I did.

15    Q.   And those federally licensed firearm dealers were

16    located in the Eastern District of Texas; is that correct?

17    A.   Yes, I did.

18    Q.   And you made those false statements by lying on ATF Form

19    4473s; is that correct?

20    A.   Yes, sir.

21    Q.   On September 13th of 2016, you went to Superior

22    Firearms; is that correct?

23    A.   Yes.

24    Q.   You completed an ATF Form 4473; is that right?

25    A.   Yes.

1   Q.   On the form you falsely stated that you are a United
2   States citizen; is that correct?
3   A.   Yes.
4   Q.   You signed the form attesting that all information was
5   true and correct; is that right?
6   A.   Yes.
7   Q.   On November 3rd of 2016, you went to First Cash Pawn in
8   Tyler, Texas; is that right?
9   A.   Yes.
10  Q.   You completed an ATF Form 4473; is that right?
11  A.   Yes.
12  Q.   On the form you falsely stated that you are a United
13  States citizen; is that right?
14  A.   Yes.
15  Q.   You signed the form attesting that all information was
16  true and correct; is that right?
17  A.   I never testified.  That wasn't testifying.  But I did
18  sign, yes.
19  Q.   On November 17th of 2016, you went to First Cash Pawn;
20  is that right?
21  A.   Yes.
22  Q.   And you completed an ATF Form 4473; is that right?
23  A.   Yes.
24  Q.   On the form you falsely stated that you are a United
25  States citizen; is that right?

1  A.    Yes.

2  Q.    On November 17th of 2016, you went back to First Cash

3  Pawn; is that right?

4  A.    Yes.

5  Q.    And you completed an ATF Form 4473; is that right?

6  A.    Yes.

7  Q.    And on the form you falsely stated that you are a United

8  States citizen; is that right?

9  A.    Yes.

10  Q.    On November 18th of 2016, you went to Academy Sports in

11  Tyler, Texas; is that right?

12  A.    Yes.

13  Q.    And you completed an ATF Form 4473; is that right?

14  A.    Not fully.  I mean, what happened was I -- I exhibited

15  an identification.  But I did -- did fill out that -- that

16  part, United States citizen.

17  Q.    Okay.  And on the form you falsely stated you are a

18  United States citizen; is that right?

19  A.    Yes.

20  Q.    On November 6th of 2017, you went to Cash America Pawn

21  in Tyler, Texas; is that right?

22  A.    Yes.

23  Q.    And you completed an ATF Form 4473; is that right?

24  A.    Well, again, I exhibited my identification and it was

25  mostly completed by the person at the counter.  But, yes, I

1    did -- did say I am a United States citizen because

2    that -- that -- that fact -- fact is not shown --

3    Q.    And you signed the form attesting that all of the

4    information was true and correct?

5    A.    Testifying, no.

6    Q.    Signed the form stating --

7    A.    Signing, yes.

8    Q.    Okay.  And the certification is that all of the

9    information contained in the ATF Form 4473 that you completed

10   is true and correct; is that right?

11   A.    Yes.

12   Q.    On November 7th of 2017, you went back to Cash America

13   Pawn; is that right?

14   A.    Yes.

15   Q.    And you completed an ATF Form 4473; is that right?

16   A.    Yes.

17   Q.    And on the form you falsely --

18   A.    Wait.  Again, I exhibited an ID, but I did fill out,

19   yes, I am a United States citizen.

20   Q.    And you signed the form confirming, certifying that the

21   answers you provided on the ATF Form 4473 were true and

22   correct?

23   A.    I signed, yes.

24   Q.    You have been committed to a mental institution; is that

25   right?

A.    Negative.

Q.    You have been committed to a mental institution in the

State of New Jersey on two occasions; is that correct?

A.    No.   Define "commitment"?   Is it -- are you saying

commitment pursuant to federal standards or what?   Further

define.

Q.    In April of 2013, were you transported to a university

hospital in New Jersey by Rutgers University police?

A.    Voluntarily or involuntary?

Q.    Were you transported by university police to a hospital

in New Jersey in or about April of 2013?

A.    Please define the condition of that -- that

transportation condition and nature.

Q.    Were you transported by university police to the

emergency room of the hospital in New Jersey in April of

2013?

            MR. YOO:  Objection, Your Honor.

            THE COURT:  So, Mr. Yoo, Mr. Yoo, you either can

answer the question "yes" or "no"; or you can explain to

Mr. Coan why you cannot answer the question "yes" or "no."

            MR. YOO:  Okay.

            THE COURT:  Then at that point he can rephrase his

question if he wants to.

A.    I cannot answer your question because you have not

identified whether voluntarily or involuntarily.

1    BY MR. COAN:

2    Q.    Were you examined by certified mental health officials

3    and medical doctors in April of 2013 at a hospital in New

4    Jersey?

5    A.    April 2013?  Yes.

6    Q.    How did you get there?

7    A.    RUPD transferred me there voluntarily.

8    Q.    Those certified mental health officials and medical

9    doctors conducted examinations and evaluations of you during

10   your time in the hospital; is that right?

11   A.    Yes.

12   Q.    And based on those examinations, they concluded that you

13   suffer from a mental illness; is that right?

14   A.    Based on lies, yes.

15   Q.    And they also concluded that you presented a danger to

16   others; is that right?

17   A.    Yes.

18   Q.    They also concluded that you were unwilling to be

19   admitted voluntarily for care; is that right?

20   A.    Yes.

21   Q.    And then subsequent to that, you were involuntarily

22   committed to treatment at an inpatient facility, specifically

23   the Carrier Clinic; is that right?

24   A.    No.

25   Q.    In September of 2015, you were transported by Rutgers

1  University Police to the emergency room; is that right?

2  A.   I cannot answer that question without you defining

3  what -- identifying the conditions.  Was it voluntary or

4  involuntary?

5  Q.   On or about September 20th of 2015, were you evaluated

6  and examined by certified mental health officials and

7  medical -- and psychiatrists at Rutgers University Behavioral

8  Health Care?

9       MR. YOO:  Objection, Your Honor.  Please compel the

10  Prosecution to rephrase the question.

11       THE COURT:  I can ask him to rephrase that

12  question.  You explained to him that you could not answer the

13  previous question without him rephrasing it, and he decided

14  to ask a different question.  So I am going to give him a

15  chance to rephrase his different question, and see if you can

16  answer that.

17       MR. YOO:  Oh, in terms of different question, can

18  you just repeat it?

19  BY MR. COAN:

20  Q.   On or about September 20th of 2015, were you evaluated

21  and examined by certified mental health officials and

22  psychiatrists at Rutgers University Behavioral Health Care?

23  A.   Evaluated, no; examined, yes.

24  Q.   How did you get there?

25  A.   Rutgers Police transported me there voluntarily.

1   Q.   Based upon these evaluations and examinations --

2   A.   On false pretenses.

3   Q.   Did those mental health officials and medical doctors

4   conclude that you suffer from a mental illness?

5   A.   Based on lies of the hospital staff completely

6   disregarding my testimony -- I mean, not testimony but

7   statements, and completely, completely disregarding RUPD

8   reports, yes.  Based on complete hearsay, yes.  No factual

9   evidentiary basis.

10          MR. COAN:  Your Honor, I'll move to strike the

11   nonresponsive portions of the answer there.

12   BY MR. COAN:

13   Q.   Did those mental health official and medical doctors --

14          MR. YOO:  Objection, Your Honor.  It was actually a

15   factual determination to what the validity of the -- of the

16   facts answering Prosecution's question.

17          THE COURT:  We will handle this the way we did

18   before.  We will handle this the way we did before, Mr. Yoo.

19   I am going to give Mr. Coan an opportunity to ask the

20   question again.  If you can answer it with a "yes" or "no"

21   answer, please do that.  If you cannot, explain to him that

22   you cannot.

23          MR. YOO:  Sir --

24          THE COURT:  No.  First, let him rephrase the

25   question or ask the question again, and then you decide

1   whether you can answer it "yes" or "no."

2           MR. YOO:  I was objecting to motion to strike.

3           THE COURT:  I understand that.  We will move on.

4   Let's see if we can fix it.

5   BY MR. COAN:

6   Q.   During this September 2015 visit to the emergency room

7   at Rutgers University Behavioral Health Care, were you

8   evaluated by certified mental health officials and medical

9   doctors?

10  A.   No, I was never evaluated.  I was examined.

11  Q.   And based upon those examinations, did those officials

12  determine that you suffer from a mental illness?

13  A.   Again, based on lies and the hearsay of the hospital

14  staff, yes.

15          MR. COAN:  Again, Your Honor, I just asked for a

16  "yes" or "no."

17          THE COURT:  Can you not answer the question with a

18  "yes" or "no," Mr. Yoo.

19          MR. YOO:  Sir, you never compelled other witnesses

20  to answer questions just "yes" or "no."

21          THE COURT:  I am not compelling you.  I am

22  absolutely not compelling you.  What I am telling you is if

23  you can, please do so.  And if you cannot, please explain

24  that to Mr. Coan and give him a chance to rephrase his

25  question if he wants to.

 1   A.    Mr. Coan, that -- that -- that might mislead the jury to

 2   the validity of those examinations.

 3           MR. COAN:  Is that testimony or argument?  It is

 4   just a "yes" or "no" question.

 5           THE COURT:  Just rephrase the question.

 6           MR. YOO:  Rephrase it.

 7   BY MR. COAN:

 8   Q.    Did they conclude that you suffer from a mental

 9   illness?

10           THE COURT:  Mr. Yoo, if you can answer "yes" or

11   "no," please do so.  If you cannot, explain that to Mr. Coan,

12   and he can rephrase his question.

13   A.    Again, please re -- please rephrase it.  Please add

14   something like "truthfully."

15           THE COURT:  Mr. Yoo, if you cannot answer "yes" or

16   "no," just tell him that you can't answer "yes" or "no."

17   A.    I can't answer "yes" or "no" without further defining

18   factors.

19   BY MR. COAN:

20   Q.    As part of that September 2015 visit to the hospital did

21   certified mental health officials and medical doctors

22   conclude that you were a danger to others?

23   A.    Again, I cannot answer "yes" or "no" without further

24   defining factors.

25   Q.    Based upon those findings, did they also determine that

1   you were unwilling to be admitted voluntarily for care?

2   A.   Again, I cannot -- actually, yes, that is yes.

3   Q.   And then based upon those findings that you suffered

4   from a mental illness, that you were a danger to others, and

5   unwilling to be admitted voluntarily for care, did those

6   officials recommend that you be involuntarily committed to a

7   mental institution?

8   A.   Recommend?  Did you say "recommend"?

9   Q.   That was the question, yes.

10  A.   Yes.

11  Q.   And then subsequently a court ordered for you to be

12  involuntarily admitted to Carrier Clinic; is that right?

13  A.   No.

14  Q.   Have you sought relief from your prohibited person

15  status through New Jersey's relief from disabilities

16  program?

17  A.   I cannot answer that question because you asked two

18  different questions in one question.  Prohibiting factor is

19  federal.  Did I sought -- have I sought to expunge those

20  hospital confinement records, yes, I actually have.

21  Q.   And what is the status of that?

22  A.   I don't know.  I haven't talked to my family

23  attorney -- attorney Matthew Jeon in New Jersey in a long

24  time.

25  Q.   You told us on direct that you knew that you were

| | |
|---|---|
| 1 | prohibited by federal law from possessing the firearms; is |
| 2 | that right? |
| 3 | A.    No.   Wait.   Did I know it?   What? |
| 4 | Q.    You received a letter in or about January of 2016 from |
| 5 | the FBI telling you that you were a prohibited person under |
| 6 | federal law from possessing a firearm; is that right? |
| 7 | A.    No. |
| 8 | Q.    I think you testified to that fact on direct. |
| 9 | A.    I testified to the -- to receiving the letter.  I did |
| 10 | not testify on them informing me.  Those two are completely |
| 11 | different things. |
| 12 | Q.    You mentioned a couple of different times about some |
| 13 | connection to the United States Military.  You have attempted |
| 14 | to enlist in the U.S. Army on multiple occasions; is that |
| 15 | right? |
| 16 | A.    Yes. |
| 17 | Q.    And you have been denied every time; is that right? |
| 18 | A.    Because of that fraudulent NICS entry, yes, it has |
| 19 | ruined my life for last six years. |
| 20 | Q.    Actually, you were denied entry in the United States |
| 21 | Army because you were evaluated in the State of New Jersey in |
| 22 | September of 2015 and determined by licensed health |
| 23 | professionals that you were not psychologically suited for |
| 24 | the United States Army.  Is that right? |
| 25 | A.    That was the ultimate reason why I was denied for the |

1  United States Army.  That was -- that was only submitted to
2  my -- one of my recruiters name of Sgt. Sean Lawhead.
3         I was denied even prior to that, and the actual
4  reason is Army uses the NICS background check system, and I
5  had been fraudulently entered as not -- committed to a mental
6  institution, adjudicated mentally defective.
7         Army and all military recruiting statements
8  actually use -- use the FBI NICS background check system.
9  They took my fingerprint everything.  So, no, that is not --
10  actually that is not the ultimate reason why I was
11  disqualified.
12  Q.   You recall the mental health evaluation that took place
13  at the Institute for Forensic Psychology in September of
14  2015; is that right?
15  A.   I do recall that.  However, that does not conclude me as
16  adjudicated mentally defective nor committed to a mental
17  institution.  That happened prior to that, and the FBI NICS
18  entry is the reason why I was denied of military entrance
19  from the start.
20         I -- I had been trying to enlist since January of
21  2015.  That happened all the way in September.  Even prior to
22  that recruiter, I was disqualified based on the NICS entry.
23  Q.   But the conclusion of this evaluation in September 2015,
24  is that you were not psychologically suited to enlist in the
25  United States Army; is that right?

1  A.   Mr. Gallegos, who was completely biased towards me,

2  yeah and -- yeah.

3  Q.   In fact, you told the FBI in August of 2016 that you had

4  been permanently disqualified from entering the Army and

5  would never be allowed to join; is that right?

6  A.   That is what the MEPCOM informed me, because of that --

7  that fraudulent entry.  But I still -- I still tried to join

8  afterwards.

9  Q.   You testified on direct that you obtained a Texas

10 Concealed Carry Permit for the purpose of overriding the NICS

11 background check?

12 A.   For the purpose of it, no.  The purpose for -- for --

13 for obtaining CHL was to carry a gun.  Period.

14 Q.   When you applied for -- well, let me ask you this:  You

15 applied for this state carry permit in early February of

16 2016; is that right?

17 A.   Yes, I have.

18 Q.   This was shortly after you received the letter from the

19 FBI informing you that you were prohibited under federal law

20 from possessing a firearm; is that right?

21 A.   Again, that is false.  No one informed me that I -- that

22 I was prohibited under federal law from possessing a -- a

23 firearm until this case commenced.

24          Also, the -- I believe that -- that the

25 Constitution is the supreme authority of this country.  So

1   right to bear arms, no, I am not prohibited.  No one is

2   prohibited.

3   Q.   So when you applied for your state carry permit here in

4   Texas, you lied about having received psychiatric treatment;

5   is that right?

6   A.   Did I lie?  No.  Because that wasn't a lie.  Do you know

7   why?  Because I have never consented to any form of

8   psychiatric treatment, nor have I been ordered by any

9   legal -- legal authority to be put under constant psychiatric

10  treatment.  So, no, that was not a lie.

11  Q.   In September of 2016, your concealed carry permit was

12  revoked; is that right?

13  A.   They attempted to -- to revoke it, but it was not

14  revoked until March 17th of 2017.

15  Q.   And it was revoked because the Medical Advisory Board of

16  the Texas Department of State Health Services had determined

17  that you were not capable of exercising sound judgment with

18  respect to the proper use and storage of a handgun; is that

19  right?

20  A.   Again, I appealed.  I filed appeal, and then the -- the

21  person who examined me for -- for November 2015 -- the

22  allegation actually -- actually recommended me to --

23  recommended that -- the Medical Board to retain my CHL.

24          But there was three supposed doctors from --

25  supposed physicians from the Advisory Board.  They have never

1  met me before.  However, they ruled.  Yeah.

2  Q.  After you filed your appeal of the September 2016

3  revocation, that revocation was affirmed in March of 2017; is

4  that right?

5  A.  Yes.

6  Q.  And you have used your revoked concealed carry permit on

7  at least two occasions to purchase firearms; is that right?

8  A.  Yes, I have.  I used my revoked concealed carry permit

9  to purchase -- no, no.  One was purchased, one was exchanged.

10  And that was a shotgun for home defense.  Also, also, I

11  should never have been prohibited, denied of any form of

12  background check to begin with.

13  Q.  One of the times that you used a revoked Texas Concealed

14  Carry Permit to acquire a firearm was on November 6th of 2017

15  at Cash America Pawn; is that right?

16  A.  Yes.

17  Q.  And the other time that you used a revoked Texas Conceal

18  Carry Permit to acquire a firearm was on November 7th of

19  2017, also at Cash America Pawn; is that right?

20  A.  Yes.  And also it was fraudulently revoked because they

21  had -- they violated my due process.  And while -- while they

22  had pending aggravated assault charge, they were supposed to

23  delay -- postpone the hearing after that charge has been

24  disposed of.  That charge was dismissed in July.  But they

25  purposely did not postpone the hearing.  The felony

1  Indictment is grounds for suspension, not revocation of

2  CHL.

3              MR. COAN:  Your Honor, I will pass the witness.

4              THE COURT:  All right.

5              Mr. Yoo, do you have anything that you wish to

6  testify to in redirect examination?

7              MR. YOO:  Yes, sir.

8                        REDIRECT EXAMINATION

9              MR. YOO:  So briefly describing that aggravated

10  assault incident, basically, what happened was -- I -- I was

11  with this -- this individual named -- named Matt Lack and two

12  others and then he --

13             MR. COAN:  Your Honor --

14             MR. YOO:  -- displayed --

15             MR. COAN:  -- to protect the record I am going to

16  object.

17             THE COURT:  And the basis?

18             MR. COAN:  In limine.

19             THE COURT:  Okay.  I think the door on this to some

20  degree got opened.

21             MR. COAN:  I agree, but I am going to object.

22             THE COURT:  Very well.  Your objection is noted.

23             Mr. Yoo, please proceed.

24             MR. YOO:  So I was the -- the important factor here

25  is that Matt Lack took my pistol without -- without my

1  permission, put it in his jacket, and when -- when he was

2  having that confrontation with supposed victims, in the

3  middle of it, he took it out.  I don't know if he pointed it

4  at them.  To the best of my knowledge, he did not point at

5  them.

6          I approached him, took the pistol away from him,

7  and put that pistol in my pocket, and I forced him to

8  disengage and return to the truck.

9          Yes, I did -- I did yell out some racial slurs to

10  the victim.  Yes, I did yell out some insults, but that was

11  about it in terms of my -- my engagement with him.  I forced

12  Matt Lack to disengage.  I took the pistol away from

13  Matt Lack.

14          Lucas Machicek was the prosecutor for that case --

15          MR. COAN:  Your Honor, object --

16          THE COURT:  Mr. Yoo, I don't particularly see how

17  that is relevant.

18          MR. YOO:  Okay.

19          My CHL revocation contest hearing should have been

20  postponed until that -- that Indictment was disposed of.

21  That Indictment was dismissed on January -- on July 29th of

22  2017, because I did not commit an aggravated assault.  In

23  fact, I committed no crime that day.

24          So after that -- but -- sorry.  But this CHL

25  revocation hearing happened way prior to that.  It was a

1   severe violation of my due process because it happened March

2   17th, 2017, in violation to the Texas Government code.

3           And that is what -- that is what Mr. Coan is

4   referring to.  And, yes, I did use my -- use my CHL to

5   override denial because -- because I was not informed of any

6   of the federal firearm prohibiting factors that had applied

7   to me, at all.

8           I thought it was just a -- either a technical error

9   when I filed the inquiry/appeal because they had never

10  informed me and -- yeah.

11          Also -- also, after being -- after being

12  transported to the Smith County Jail and the Gregg County

13  Jail, upon reading my -- my discovery, I found it out.

14          I do not even have access to law library nor my

15  docket there.  I am completely --

16          MR. COAN:  Your Honor, object.

17          THE COURT:  Mr. Yoo --

18          MR. YOO:  -- without --

19          THE COURT:  Mr. Yoo --

20          MR. YOO:  --- able to figure it out.

21          THE COURT:  Let's just focus on the facts.

22          MR. YOO:  Yes, sir.  I am saying the fact that even

23  though I was deprived of law library and docket access, I was

24  still able to figure out the federal laws and the federal,

25  you know, disqualification factors and all that.

1           And then I realized that that adjudicated mentally

2    defective and committed to a mental institution factor is

3    922(g)(4), after -- well after commencement of this case.

4           And what else did Mr. Coan address?

5           Again, I did state I was a United States citizen,

6    but I gave proper name.  I never gave fictitious name,

7    fictitious date of birth, nor fictitious address.

8           Thank you.  That's all.

9           THE COURT:  You may step down.

10          Mr. Coan, I didn't give you an opportunity to

11   recross.  Do you want to recross the witness on anything?

12          MR. COAN:  No additional questions.  Thank you.

13          THE COURT:  Mr. Yoo, you may step down.

14          MR. YOO:  Yes, sir.

15          Sorry if I was like facing this way (indicating).

16   I kind of had to face you and the jury at the same time.

17          THE COURT:  You did fine.

18          MR. YOO:  Thank you.

19          THE COURT:  You may step down.

20          Okay.  The Defendant may call its next witness.

21          MR. YOO:  That's about it, Your Honor.

22          THE COURT:  No additional witnesses?

23          MR. YOO:  No additional witnesses.

24          THE COURT:  Okay.  Any additional evidence you wish

25   to submit?

1          MR. YOO:  No, Your Honor, that is pretty much it.

2          THE COURT:  Thank you, Mr. Yoo.

3          Mr. Coan, does the Government wish to call any

4   rebuttal witnesses?

5          MR. COAN:  No.

6          THE COURT:  Does the Government rest on its entire

7   case?

8          MR. COAN:  Yes.

9          THE COURT:  Mr. Yoo, Does the Defendant rest on its

10   entire case.

11          MR. YOO:  Yes.

12          THE COURT:  Subject to closing arguments.  The

13   Defendant does rest on its entire case; is that correct?

14          MR. YOO:  Yes.

15          THE COURT:  Okay.  Ladies and Gentlemen of the

16   Jury, the attorneys and Mr. Yoo and I have some final things

17   we have to discuss before we begin our presentation of the

18   Court's instructions to you and the closing arguments.

19          Your lunch should be ready.  We can go ahead and

20   have lunch now.  Is that your preference?  Seems to be the

21   preference.

22          All right.  So we will go ahead and break for lunch

23   now.  Hopefully, somewhere in about an hour we will be ready

24   to begin closing instructions and argument.

25          So we will be in recess.

1          COURT SECURITY OFFICER:  All rise for the jury.

2          (Jury out.)

3          MR. YOO:  Your Honor?

4          THE COURT:  Hold on just a moment.

5          Yes, Mr. Yoo.

6          MR. YOO:  Permission to call one -- one witness.

7          THE COURT:  No, sir.  I gave you every opportunity

8    to call additional witnesses, Mr. Yoo.  You closed, the

9    Government announced no rebuttal witnesses.  I asked whether

10   the Government rested on its entire case, and I asked you

11   twice whether you rested on your entire case, and you

12   indicated that you did.

13          So the time has passed for calling additional

14   witnesses.

15          The instructions are nearly complete.  We will

16   provide you with written copies of them.  We will resume in

17   about an hour, and I will give you some time to put any

18   objections to the instructions on the record at that time

19   before -- before we begin with the jury.

20          MR. HAAS:  Thank you, Your Honor.

21          MR. YOO:  Thank you.

22          THE COURT:  Any questions, Mr. Coan?  Or, Mr. Yoo?

23          MR. COAN:  No, Your Honor.  Thank you.

24          THE COURT:  Let me ask -- if I could ask the

25   Marshals that Mr. Haas be able to visit with Mr. Yoo over the

1  noon hour so they can discuss any questions or concerns they

2  have with the instructions.

3           Can we accommodate that?

4           MARSHAL:  Absolutely, Your Honor.

5           THE COURT:  Okay.  Thank you all.

6           (Recess was taken at this time.)

7                          AFTER LUNCH

8           (Jury out.)

9           THE COURT:  Please be seated.

10          When we broke for lunch, we provided each side with

11  a copy of the Court's final jury instructions.  Any

12  objections to those instructions need to be put on the record

13  at this time.

14          Mr. Coan?

15          MR. COAN:  No objections from the United States.

16          THE COURT:  All right  Thank you, Mr. Coan.

17          Mr. Yoo?

18          MR. YOO:  Sir, I object to the jury instruction

19  Calendar 7, first, second, and third because it mentions --

20  it mentions ATF Form 4473 rather than the information

21  required to be kept, and I reserve my right to appeal.

22          THE COURT:  Okay.

23          MR. YOO:  And also at the end for the No. 23, it

24  says reach a verdict, it has guilty or not guilty rather than

25  guilty or innocent when I pled "innocent."

1          THE COURT:  Well, can you explain to me why it

2     matters, Mr. Yoo?

3          MR. YOO:  Well, because those terms have core

4     differences in -- at the founding of our country, it was

5     guilty or innocent, not guilty or not guilty.

6          THE COURT:  I think the Federal Rules of Criminal

7     Procedure provide -- and I know that you pled "innocent"

8     pursuant to your request, but I think the Federal Rules of

9     Criminal Procedure provide for a plea of guilty, not guilty,

10    or nolo contendere.

11          Mr. Coan, do you know if that is right?

12          MR. COAN:  That's correct, Your Honor.

13          THE COURT:  Well --

14          MR. YOO:  I still plead "innocent."

15          THE COURT:  Okay.  I am going to leave the verdict

16    form as it is.

17          MR. YOO:  Yes, sir.  Well, I object and I reserve

18    my right to appeal.

19          THE COURT:  Thank you.

20          MR. YOO:  And I will respectfully withdraw from

21    podium at this point.

22          THE COURT:  Okay.  Thank you, Mr. Yoo.

23          Anything before we have the jury brought in?

24          I think the parties have requested, and we have

25    agreed, that 30 minutes is a sufficient amount of time for

1  closings.

2       Does the Government wish to split its closing?

3       MR. MACHICEK:  Yes, Your Honor.  We would ask for

4  20 minutes for the initial close and 10 minutes for

5  rebuttal.

6       THE COURT:  Fair enough.

7       All right.  Let's have the jury brought in.

8       (Jury in.)

9       THE COURT:  Please be seated.

10       Ladies and Gentlemen of the Jury, sort of a roadmap

11  of the afternoon, at this time I am going to go over the

12  Court's jury instructions to you; and then following that,

13  the attorneys will have an opportunity to present their

14  closing arguments to you.  And then following that, you will

15  retire to the jury room to begin your deliberations.

16       Each of you when you retire to the jury room will

17  have a copy of the jury instructions I am about to read to

18  you.  You are more than welcome to take any notes during my

19  reading of the instructions, but I did want you to know that

20  you will all have your own individual copy when you go back

21  to the jury room.

22       Members of the Jury, in any jury trial there are,

23  in effect, two judges.  I am one of the judges and the other

24  is the jury.  It is my duty to preside over the trial and to

25  decide what evidence is proper for your consideration.

1          It is also my duty at the end of the trial to

2     explain to you the rules of law that you must follow and

3     apply in arriving at your verdict.

4          First, I am going to give you some general

5     instructions which apply in every case, for example,

6     instructions about the burden of proof and how to judge the

7     believability of witnesses.

8          Then I will give you some specific rules of law

9     about this particular case.

10          And, finally, I will explain to you the procedures

11     you should follow in your deliberations.

12          You, as the jurors, are the judges of the facts.

13     But in determining what actually happened, that is in

14     reaching your decision as to the facts, it is your sworn duty

15     to follow all of the rules of law as I explain them to you.

16          You have no right to disregard or give special

17     attention to any one instruction or to question the wisdom or

18     correctness of any rule I may state to you.

19          You must not substitute your -- or follow your own

20     notion or opinion of what the law is or ought to be.  It is

21     your duty to apply the law as I explain it to you, regardless

22     of the consequences.

23          It is also your duty to base your verdict solely

24     upon the evidence, without prejudice or sympathy.  That was

25     the promise that you made and the oath that you took before

1   being accepted by the parties as jurors, and they have the
2   right to expect nothing less.

3          The Superseding Indictment, or formal charge,
4   against the Defendant is not evidence of guilt.  Indeed, the
5   Defendant is presumed by law to be innocent.  The Defendant
6   begins with a clean slate.  The law does not require a
7   Defendant to prove his innocence or produce any evidence at
8   all.

9          The Government has the burden of proving the
10  Defendant's guilt beyond a reasonable doubt.  And if it fails
11  to do so, you must acquit the Defendant.

12         While the Government's burden of proof is a strict
13  or heavy burden, it is not necessary that the Defendant's
14  guilt be proven beyond all possible doubt.  It is only
15  required that the Government's proof exclude any reasonable
16  doubt concerning the Defendant's guilt.

17         A reasonable doubt is a doubt based upon reason and
18  common sense after careful and impartial consideration of all
19  of the evidence in the case.

20         Proof beyond a reasonable doubt, therefore, is
21  proof of such a convincing character that you would be
22  willing to rely and act upon it without hesitation in making
23  the most important decisions of your own affairs.

24         As I told you earlier, it is your duty to determine
25  the facts.  And to do so, you must consider only the evidence

1  presented during the trial.  Evidence is the sworn testimony

2  of the witnesses, including stipulations and the exhibits.

3  The questions, statements, objections, and arguments made by

4  the lawyers or the parties are not evidence.

5        The function of the lawyers and the parties is to

6  point out those things that are most significant or most

7  helpful to their side of the case, and in so doing, to call

8  your attention to certain facts or inferences that might

9  otherwise escape your notice.

10        In the final analysis, however, it is your own

11  recollection and interpretation of the evidence that controls

12  in this case.  What the lawyers or the parties say is not

13  binding upon you.

14        During the trial I sustained objections to certain

15  questions and exhibits.  You must disregard those questions

16  and exhibits entirely.  Do not speculate as to what the

17  witness would have said if permitted to answer the question

18  or as to the contents of an exhibit.

19        Also, certain testimony or other evidence has been

20  ordered stricken from the record, and you have been

21  instructed to disregard this evidence.

22        Do not consider any testimony or other evidence

23  which has been stricken in reaching your decision.  Your

24  verdict must be based solely on the legally admissible

25  evidence and testimony.

1        Also, do not assume from anything I may have done

2   or said during the trial that I have any opinion concerning

3   any of the issues in this case.  Except for the instruction

4   to you on the law, you should disregard anything I may have

5   said during the trial in arriving at your own findings as to

6   the facts.

7        In considering the evidence, you are permitted to

8   draw such reasonable inferences from the testimony and

9   exhibits as you feel are justified in the light of common

10  experience.

11       In other words, you may make deductions and reach

12  conclusions that reason and common sense lead you to draw

13  from the facts that have been established by the evidence.

14       Don't be concerned about whether evidence is direct

15  evidence or circumstantial evidence.  You should consider and

16  weigh all of the evidence that was presented to you.

17       Direct evidence is the testimony of one who asserts

18  actual knowledge of a fact, such as an eyewitness.  And

19  circumstantial evidence is proof of a chain of events and

20  circumstances indicating that something is or is not a fact.

21       The law makes no distinction between the weight you

22  may give to either direct or circumstantial evidence.  But

23  the law does require that you, after weighing all of the

24  evidence, whether direct or circumstantial, be convinced of

25  the guilt of the Defendant beyond a reasonable doubt before

1    you can find him guilty.

2           I remind you that it is your job to decide whether

3    the Government has proven the guilt of the Defendant beyond a

4    reasonable doubt.  In doing so, you must consider all of the

5    evidence.  This does not mean, however, that you must accept

6    all of the evidence as true or accurate.

7           You are the sole judges of the credibility or

8    believability of each witness and the weight to be given the

9    witness's testimony.  An important part of your job will be

10   making judgments about the testimony of the witnesses,

11   including the Defendant who testified in this case.

12          You should decide whether you believe what each

13   person had to say and how important their testimony was.

14          In making that decision, I suggest that you ask

15   yourself a few questions:  Did the person impress you as

16   honest?  Did the witness have any particular reason not to

17   tell the truth?  Did the witness have a personal interest in

18   the outcome of the case?  Did the witness have any

19   relationship with either the Government or the Defense?  Did

20   the witness seem to have a good memory?  Did the witness

21   clearly see or hear the things about which he testified?  Did

22   the witness have the opportunity and the ability to

23   understand the questions clearly and answer them directly?

24   Did the witness's testimony differ from the testimony of

25   other witnesses.

1          These are a few of the considerations that will

2     help you determine the accuracy of what each witness said.

3          The testimony of a Defendant should be weighed and

4     his credibility evaluated in the same way as that of any

5     other witness.

6          Your job is to think about the testimony of each

7     witness you have heard and decide how much you believe of

8     what each witness had to say.

9          In making up your mind in reaching a verdict, do

10    not make any decisions simply because there were more

11    witnesses on one side than the other.  Do not reach a

12    conclusion on a particular point just because there were more

13    witnesses testifying for one side on that point.

14         You will always bear in mind that the law never

15    imposes upon the Defendant in a criminal case the burden or

16    duty of calling any witnesses or producing any evidence.

17         The testimony of a witness may be discredited by

18    showing that the witness testified falsely concerning a

19    material matter or by evidence that at some other time the

20    witness has said or done something or has failed to say or do

21    something which is inconsistent with the testimony the

22    witness gave at his trial.

23         Earlier statements of a witness were not admitted

24    in evidence to prove that the contents of those statements

25    are true.  You may not consider the earlier statements to

1    prove that the content of an earlier statement is true.  You

2    may only use earlier statements to determine whether you

3    think the earlier statements are consistent or inconsistent

4    with the trial testimony of the witness and, therefore,

5    whether they affect the credibility of that witness.

6         If you believe that a witness has been discredited

7    in this manner, it is your exclusive right to give the

8    testimony of that witness whatever weight you think it

9    deserves.

10         During the trial, you heard the testimony of expert

11    witnesses.  If scientific, technical, or other specialized

12    knowledge might assist the jury in understanding the evidence

13    or in determining a fact in issue, a witness qualified by

14    knowledge, skill, experience, training, or education may

15    testify and state an opinion concerning such matters.

16         Merely because a witness has expressed an opinion

17    does not mean, however, that you must accept this opinion.

18    You should judge such testimony like any other testimony.

19    You may accept it or reject it or give it as much weight as

20    you think it deserves, considering the witness's education

21    and experience, the soundness of the reasons given for the

22    opinion, and all of the other evidence in the case.

23         You will note that the Superseding Indictment

24    charges that the offense was committed on or about a

25    specified date.  The Government does not have to prove that

1   the crime was committed on that exact date, so long as the

2   Government proves beyond a reasonable doubt that the

3   Defendant committed the crimes on dates reasonably near the

4   dates stated in the Superseding Indictment.

5           You are here to decide whether the Government has

6   proven beyond a reasonable doubt that a Defendant is guilty

7   of the crimes charged.  The Defendant is not on trial for any

8   act, conduct, or offense not alleged in the Superseding

9   Indictment.  Neither are you concerned with the guilt of any

10  other person or persons not on trial as a Defendant in this

11  case, except as you are otherwise instructed.

12          A separate crime is charged in each count of the

13  Superseding Indictment.  Each count, and the evidence

14  pertaining to it, should be considered separately.  The fact

15  that you may find the Defendant guilty or not guilty as to

16  one of the crimes charged should not control your verdict as

17  to any other.

18          In determining whether any statement claimed to

19  have been made by the Defendant outside of court and after an

20  alleged crime has been committed was knowingly and

21  voluntarily made, you should consider the evidence concerning

22  such a statement with caution and great care.  You should

23  give such weight to the statement as you feel it deserves

24  under all of the circumstances.

25          You may consider in that regard such factors as the

1     age, sex, training, education, occupation, and physical and

2     mental condition of the Defendant, his treatment while under

3     interrogation, and all of the other circumstances in evidence

4     surrounding the making of the statement.

5              In any criminal case the Government must prove not

6     only the essential elements of the offense or offenses

7     charged as hereinafter defined -- as hereafter defined, but

8     must also prove beyond a reasonable doubt the identity of the

9     Defendant as the perpetrator of the alleged offenses.

10             In evaluating the identification testimony of a

11    witness, you should consider all of the factors already

12    mentioned concerning your assessment of the credibility of

13    any witness in general and should also consider whether the

14    witness had adequate opportunity to observe the person in

15    question at the time or times about which the witness

16    testified.

17             You may consider all matters, including the length

18    of time the witness had to observe the person in question,

19    the prevailing conditions at that time in terms of visibility

20    or distance and the like and whether the witness had known or

21    observed the person at earlier times.

22             You may also consider the circumstances surrounding

23    the identification itself, including, for example, the manner

24    in which the Defendant was presented to the witness for

25    identification and the length of time that elapsed between

the incident in question and the next opportunity the witness

had to observe the Defendant.

If, after examining all of the testimony and

evidence in this case you have a reasonable doubt as to the

identity of the Defendant as the perpetrator of the offense

charged, you must find the Defendant not guilty.

You have heard evidence of acts of the Defendant

which may be similar to those charged in the Superseding

Indictment but which were committed on other occasions.

You must not consider any of this evidence in

deciding if a Defendant committed the acts charged in the

Superseding Indictment.  However, you may consider this

evidence for other very limited purposes.

If you find beyond a reasonable doubt from the

other evidence in the case, that a Defendant did commit the

acts charged in the Superseding Indictment, then you may

consider evidence of the similar acts allegedly committed on

other occasions to determine whether a Defendant had the

state of mind or intent necessary to commit the crime charged

in the Superseding Indictment; or

Whether a Defendant had a motive or the opportunity

to commit the acts charged in the Superseding Indictment; or

Whether a Defendant acted according to a plan or in

preparation for commission of a crime; or

Whether a Defendant committed the acts, for which

1    he is on trial, by accident or mistake.

2           These are the limited purposes for which any

3    evidence of other similar acts may be considered.

4           "Possession" as that term is used in these

5    instructions, may be one of two kinds:  Actual possession or

6    constructive possession.

7           A person who knowingly has direct physical control

8    over a thing at a given time is in actual possession of it.

9           A person who, although not in actual possession,

10   knowingly has both the power and the intention at a given

11   time to exercise dominion or control over a thing, either

12   directly or through another person or persons, is in

13   constructive possession of it.

14          Possession may be sole or joint.  If one person

15   alone has actual or constructive possession of a thing,

16   possession is sole.  If two or more persons share actual or

17   constructive possession of a thing, possession is joint.

18          You may find that the element of possession is

19   present if you find beyond a reasonable doubt that the

20   Defendant had actual or constructive possession either alone

21   or jointly with others.

22          The word "knowingly" as that term has been used

23   from time to time in these instructions, means that the act

24   was done voluntarily and intentionally, not because of

25   mistake or accident.

1        You may find that a Defendant had knowledge of a

2    fact if you find a Defendant deliberately closed his eyes to

3    what would otherwise have been obvious to him.

4        While knowledge on the part of the Defendant cannot

5    be established merely by demonstrating that the Defendant was

6    negligent, careless, or foolish, knowledge can be inferred if

7    the Defendant deliberately blinded himself to the existence

8    of a fact.

9        "Interstate commerce" means commerce or travel

10   between one state, territory, or possession of the United

11   States and another state, territory, or possession of the

12   United States, including the District of Columbia.

13       Commerce includes travel, trade, transportation,

14   and communication.

15       If a Defendant is found guilty, it will be my duty

16   to decide what the punishment will be.  You should not be

17   concerned with punishment in any way.  It should not enter

18   your consideration or discussion.

19       Counts 1 through 7 of the Superseding Indictment

20   charge that the Defendant, Heon Jong Yoo, with making false

21   statements with respect to information required to be kept by

22   a federal firearms licensee, in violation of 18 USC, Section

23   924(a)(1)(A).

24       Title 18, United States Code, Section 924(a)(1)(A),

25   makes it a crime for anyone to make any false statement or

1   representation with respect to the information required by

2   this chapter to be kept in the records of a person licensed

3   under this chapter or in applying for any license or

4   exemption or relief from disability under the provisions of

5   this chapter.

6           For you to find the Defendant guilty of these

7   crimes, you must be convinced that the Government has proved

8   each of the following beyond a reasonable doubt:

9           First, that the Defendant made a false statement in

10  the ATF Form 4473.

11          Second, that the Defendant made the statement to a

12  federally licensed firearms dealer.

13          Third, that the Defendant knew that the statement

14  was false.

15          A statement is false if it was untrue when it was

16  made.

17          Count 8 of the Superseding Indictment charges that

18  the Defendant, Heon Jong Yoo, with possession of a firearm by

19  a prohibited person, in violation of 18 USC, Section

20  922(g)(4).

21          Title 18, United States Code, Section 922(g)(4),

22  makes it a crime for any person who has been committed to a

23  mental institution to possess, in or affecting commerce, any

24  firearm or ammunition.

25          For you to find the Defendant guilty of this crime,

1   you must be convinced that the Government has proved each of

2   the following beyond a reasonable doubt:

3           First, that the Defendant knowingly possessed a

4   firearm, as charged in the Superseding Indictment.

5           Second, that the Defendant had been committed to a

6   mental institution before the Defendant possessed the

7   firearm.

8           Third, that the firearm possessed traveled in

9   interstate commerce.

10          As a matter of law, Count 8 does not include a

11  person who is hospitalized for observation and examination

12  where they were not found to be mentally ill.

13          It is not necessary for the Government to prove

14  that the Defendant possessed all five firearms which he is

15  alleged to have possessed.  It is only necessary that you

16  find that the Government has proven beyond a reasonable doubt

17  that the Defendant possessed a firearm.

18          To reach a verdict, whether it is guilty or not

19  guilty, all of you must agree.  Your verdict must be

20  unanimous on each count of the Superseding Indictment.  Your

21  deliberations will be in secret.  You will never have to

22  explain your verdict to anyone.

23          It is your duty to consult with one another and to

24  deliberate in an effort to reach agreement, if you can do

25  so.  And each of you must decide the case for yourself, but

1   only after an impartial consideration of the evidence with

2   your fellow jurors.

3        During the deliberations, do not hesitate to

4   reexamine your own opinions and change your mind if you are

5   convinced that you are wrong.

6        But do not give up your honest beliefs as to the

7   weight or effect of the evidence solely because of the

8   opinion of your fellow jurors or for the mere purpose of

9   returning a verdict.

10       Remember at all times you are judges of the facts,

11  and your duty is to decide whether the Government has proved

12  the Defendant guilty beyond a reasonable doubt.

13       When you go to the jury room, the first thing that

14  you should do is to select one among your number as your

15  foreperson who will help to guide your deliberations and

16  speak for you here in the courtroom.

17       A form of verdict has been prepared for your

18  convenience.

19       The foreperson will write the unanimous answer of

20  the jury in the space provided for each count of the

21  Superseding Indictment, either guilty or not guilty.  And at

22  the conclusion of your deliberations, the foreperson should

23  date and sign the verdict.

24       If for any reason you need to communicate with me

25  during your deliberations, the foreperson should write a

1    message and give it to the CSO, and I will either reply in

2    writing or bring you back into the courtroom to answer your

3    message.  I will always consult with the attorneys and the

4    parties before answering your questions.

5            You should bear in mind that you are never to

6    reveal to any person, not even to me, how the court (sic)

7    stands numerically or otherwise on any count on the

8    Superseding Indictment until after you have reached your

9    unanimous verdict.

10           As I said, each of you will have your own copy of

11   the jury instructions, and there will be one copy of the

12   verdict form that will go back with you during your

13   deliberations.  I will go over that with you very briefly.

14           It just says at the top:  Verdict of the Jury.  And

15   then thereafter:  As to Count 1 of the Superseding

16   Indictment, we, the jury, find the Defendant, Heon Jong Yoo,

17   also known as Hank Yoo, and there is a space for guilty and

18   space for not guilty.

19           And then the foreperson will check or X in either

20   of those boxes, and then it follows down all the way through

21   all eight of the counts.  And then at the bottom there is a

22   place for the foreperson to sign and date the verdict form.

23           So those are my instructions.

24           At this time, the Government may begin its closing

25   argument.

1          MR. YOO:  Oh, just for the record, after I have

2    seen this, I object to the last part of jury instructions,

3    21, Count 8 also.  It should have ended as a matter of law on

4    Count 8 does not include a person who is hospitalized for

5    observation and examination.  Period.  Because -- because --

6    because that means this -- this count should be solely based

7    on a court hearing, not a -- not a medical determination by a

8    hospital.  And as I have noted before, I object to the jury

9    instruction number --

10          THE COURT:  Thank you, Mr. Yoo.

11          Mr. Machicek, you may proceed.

12          MR. MACHICEK:  Thank you, Your Honor.  If it

13   pleases the Court.

14          Mr. Haas.

15          Members of the Jury.

16          They say never ask a lawyer for a time estimate.  I

17   want to thank everybody here this afternoon for your careful

18   attention throughout the last couple of days of trial.  I

19   want to thank y'all for very carefully paying attention to

20   the witnesses on the witness stand and the evidence they

21   presented throughout the case.

22          I promised you during the opening statement that

23   this case would be fairly straightforward and simple.  We

24   have hit a couple of snags.  But I submit to you that the

25   evidence that you have heard has been very straightforward

1    and simple.

2            The roadblocks that we have encountered along the

3    way, the snags and the time frame have come from the

4    incessant argument that the law is not what it actually is.

5            Well, thankfully, the Judge has just read to each

6    and every one of you, and each and every one of you is going

7    to be provided --

8            MR. YOO:  Objection.

9            THE COURT:  Mr. Yoo, if you need to approach the

10   bench to make some objection during the Government's closing,

11   you may do that, if that is absolutely necessary.

12           (Bench conference held.)

13           MR. YOO:  The Prosecution is not the Judge.  The --

14           MR. MACHICEK:  Neither is the Defendant, Your

15   Honor.

16           THE COURT:  Neither are you, Mr. Yoo.

17           MR. YOO:  I agree.  But Mr. Machicek is trying to

18   make a judicial determination rather than legal

19   determination.

20           MR. MACHICEK:  I was referencing the laws that the

21   judge read to the jury contained in the jury charge.

22           MR. YOO:  Yes, but, but.

23           MR. MACHICEK:  You disagree.  It is fine.

24           MR. YOO:  It is improper to say the Defendant has

25   argued the law.

1          MR. MACHICEK:  You have throughout trial.

2          MR. YOO:  For -- for what it is not.

3          MR. MACHICEK:  That is my argument.

4          MR. YOO:  That is up to judicial determination.

5          THE COURT:  Mr. Yoo.

6          MR. YOO:  Stop interrupting me, please.

7          THE COURT:  I am going to tell you this one time.

8    I am not going to permit a bunch of objections during the

9    Government's closing.

10         Mr. Machicek, Mr. Coan, whoever is going to present

11   the argument on behalf of the Government, they have the right

12   to argue whatever they want to argue.  If you want to protect

13   the record, you may ask to approach the bench, and we will

14   get those objections on the record.

15         At the same time, I am going to permit you to make

16   the argument you want to make in your closing, and I am going

17   to require Mr. Machicek and Mr. Coan to be very sensitive to

18   not objecting during your closing.  If they feel like they

19   have to do something to protect the record, they can ask to

20   approach the bench.  This goes both ways.

21         MR. YOO:  Okay.  No objection.

22         THE COURT:  And I am not telling you that you

23   cannot object.  If you can limit those.  This is essentially

24   argument, and you are -- I'm going to permit both you and the

25   Government relatively wide latitude in the argument you make.

1          MR. YOO:  Yes, sir.

2          THE COURT:  And I will instruct you, just as I will

3     instruct Mr. Machicek and Mr. Coan, that if you feel like you

4     must object to preserve your record, you may ask to approach,

5     and we will get the objections on the record.

6          (Bench conference concluded.)

7          MR. MACHICEK:  Members of the jury, here is the

8     good news, the law that you are required to follow in this

9     case is contained in the charge that has been read to you

10    that you will receive in your deliberations in the

11    deliberation room.

12          And there is a reason for that.  And the reason --

13    there is a reason why the Judge is the arbiter of the law and

14    the jury is the trier of the facts.  Right?  We don't let

15    Defendants cherry-pick statutes and definitions of

16    inapplicable laws to apply to their own cases.  Thieves don't

17    do it, drug dealers don't do it, and murders don't do it, and

18    we are not starting that here today.  Okay?

19          So the questions before you are, what are the facts

20    of the case?  What is the evidence that you have heard from

21    the witness stand?  And how does that apply to the laws we

22    are being asked to determine whether or not the Defendant is

23    guilty?

24          So let's look at the first seven counts of the

25    Indictment.  These are false statements with respect to

information required to be kept by federal firearms licensees.

There are three elements to each of these seven counts in the Indictment.  These three elements are:  Did the Defendant make a false statement in the ATF Form 4473?

Second, the Defendant made the statement to a federally licensed firearm dealer.

And, third, the Defendant knew the statement to be false.

Count 8 of the Indictment has three elements as well:  The Defendant knowingly possessed a firearm as charged.

Second, the Defendant had been committed to a mental institution before the Defendant possessed that firearm.

And the firearm possessed, traveled in interstate commerce.

So let's look at some of the evidence and the testimony that you heard throughout the course of the trial.

The Defendant's immigration documents are pertinent to the Counts 1 through 7, in that the subject of the lie against him is that he filled out Form 4473 on seven separate occasions indicating that he is a U.S. citizen.  He is not a U.S. citizen.  This is his green card.  This is his permanent resident card.

1    You heard from Special Agent Brian Noack with the

2    Department of Homeland Security.  He told you that these two

3    things do not equal citizenship.  He told you that he did

4    research on the Defendant.

5    He pulled up the Defendant's A-file.  He took a

6    look at it and ran it through all of the databases.  What did

7    he learn?  The Defendant is not at U.S. citizen.  He was born

8    in South Korea, his parents are South Korean.  He does not

9    have derivative citizenship.

10    The question was raised at one point in time about

11    U.S. nationality.  Special Agent Noack told you that

12    nationality means you were born in the Northern Mariana

13    Islands or American Samoa.  That doesn't apply to Mr. Yoo.

14    Mr. Yoo has also indicated on several occasions

15    through the testimony of certain witnesses that he has

16    claimed U.S. citizenship on a bunch of occasions.

17    Well, that does not confer any special status on

18    him either.  It is not a possibility for a non-citizen alien

19    to enter this country, just say a bunch of times or say a set

20    of magic words, and then magically become a citizen.  Okay?

21    That doesn't happen.  He is not a U.S. citizen, and he knows

22    it.

23    How do we know this?  Because he has filled out a

24    whole bunch of these Form 4473s.  The seven that are

25    contained in the Indictment are the ones where he has falsely

1     identified himself as a United States citizen.

2              The first one comes on September 13th, 2016, at

3     Superior Firearms here in Tyler, Texas.  He fills out this

4     form during the acquisition of a firearm.  He fills out that

5     he is a United States citizen.  He signs the next page

6     saying:  I certify that the information that I provided to

7     this federal firearms licensee is, in fact, true, correct,

8     and complete.

9              He then testifies on the witness stand before you

10    here today, and he says, that's a lie.  I didn't tell the

11    truth there.  But he is going to get up here in a minute and

12    tell you he is not guilty.

13             He is going to give you a bizarre argument about

14    the law, about how federal firearms licensees aren't required

15    to keep this type of information.  And I want to ask the jury

16    for a practical consideration.

17             We told you during voir dire that you could use

18    your common sense, right?  Why would there be questions on

19    the form that a federal firearms licensee is not required to

20    keep?  Why would we do that?  Why would we say, as long as

21    you tell the truth on these three pieces of information, you

22    lie about everything else, and you can even sign your name

23    and certify it is all true and correct?  Why would we allow

24    that?  Why would that be a possibility?  It is not.  It is

25    ludicrous.  It is wrong.

1    Next we have November 3rd, 2016, at First Cash Pawn
2    here in Tyler, Texas.  This is Government's Exhibit 5.
3    Pertains to Count 2 of the Indictment.
4    The Defendant once again goes into a pawn shop in
5    order to purchase a firearm, and he indicates that he is a
6    United States citizen.  He has admitted on the witness stand
7    under oath that that was not true.  He signed the form
8    stating that it was, that it is correct, complete, and true.
9    Guilty of Count 2.
10    Count 3, November 17th, 2016, at First Cash Pawn in
11    Tyler, Texas.  The Defendant indicates that he is a United
12    States citizen, certifies that that is true, correct, and
13    complete.  He testifies on the witness stand that that was,
14    in fact, false information provided to a firearms dealer.
15    Guilty of Count 3.
16    We look at Count 4, same day, second visit,
17    November 17th, 2016, First Cash Pawn in Tyler, Texas.  He
18    filled out Form 4473.  He indicates that he is a United
19    States citizen.  He is not a United States citizen.  But in
20    spite of that fact, he certifies by his signature that it is
21    true, correct, and complete.  He is guilty of Count 4 of the
22    Indictment.
23    Next we look at Count 5 of the Indictment.  This is
24    Government's Exhibit 6 here, the 4473 filled out by the
25    Defendant on November 18th, 2016, at Academy Sports +

1  Outdoors in Tyler, Texas where the Defendant indicates he is,

2  again, a United States citizen.  He is not a United States

3  citizen.  In spite of that fact, he signs his name certifying

4  it is true, complete, and correct.  He is guilty of Count 5

5  of the Indictment.

6          Count 6 happens at Cash America Pawn on November

7  6th of 2017.  The Defendant indicates that he is a United

8  States citizen.  He indicates that his place of birth is

9  Fort Worth, Texas, and he signs the form certifying that all

10  of that is true, correct, and complete.

11          And what is interesting about this form, as well as

12  the form that pertains to Count 7 of the Government's

13  Indictment, is that the Defendant testified on the witness

14  stand, he told you another thing about this transaction here.

15  He told you he also provided a License to Carry Permit from

16  the State of Texas during the transaction, and he also gave

17  you the reason why he did that.  He told you, I did that to

18  override the background check.

19          Lie after lie after lie for that singular purpose.

20  He knows he is a prohibited person.  He was told in January

21  of 2016 from the FBI that he was.  He knows that the

22  background check will flag him as such.  He knows that is a

23  reality.

24          It is inconvenient reality for him.  He does not

25  want it to be so, so he attempts to circumvent that reality

1   by lying, lying to obtain a firearm as a prohibited person.

2           He is guilty of Count 6.

3           We look at Count 7, the final count of the first

4   set of charges in the Indictment.  This is, again, Cash

5   America Pawn in Tyler, Texas on November 7th of 2017.  The

6   Defendant fills out the Form 4473.  He indicates that he is a

7   United States citizen.  He is not a United States citizen.

8   He indicates that he was born in Fort Worth, Texas.  We know

9   that he was born in South Korea.  And he signs certifying

10  that the information is true and correct.

11          And, Members of the Jury, you are going to be able

12  to take a lot of this evidence back to the jury room with

13  you.  I want you to look at this certification closely.

14          As to each of the first seven counts of the

15  Government's Indictment, there is a certification on there,

16  and it explicitly admonishes the person signing that form

17  that any oral or written statements given by the person at

18  the point of sale of that firearm that is not true, that is

19  false, or a misrepresentation, is a violation of federal law.

20          So at the point in time that he is staring at that

21  piece of paper, at the point in time that he has filled all

22  of those answers out and has the opportunity to stand over it

23  and sign it, he knows, he knows that if he signs his name

24  right there and he submits that form, that information is

25  false, he knows that this circumstance sitting in this

1    courtroom in front of folks like y'all being accountable for
2    that conduct, he knows that is going to happen.

3           We look at Count 8 of the Government's Indictment,
4    the count that alleges possession of a firearm by a
5    prohibited person.  We talk about those three elements of
6    that crime, that Defendant knowingly possessed a firearm,
7    that the Defendant had previously been committed to a mental
8    institution, and that the firearm was possessed and traveled
9    in interstate commerce.

10          As far as the commitment to a mental institution,
11   this is back in April of 2013 prior to the Defendant's
12   possession of the firearms listed out in the Government's
13   Indictment, here is a commitment order from a court in
14   Somerset County, New Jersey that says:  Temporary order for
15   the involuntary commitment of an adult.

16          You have been given some instructions by the Court
17   about what a commitment is, and you have also been given some
18   exhibits in evidence that you will be able to inspect in the
19   deliberation room.

20          Exhibit 9, Page 21 sets out one of two
21   certifications for that commitment.  And the certifications
22   are important because they say that they personally examined
23   the patient.  They found him to be suffering from a mental
24   illness as defined under New Jersey state law.  And they find
25   that he is unwilling to submit himself to the commitment.

1          He is committed for treatment for a mental illness

2     on an involuntary basis.  He is committed under federal law.

3     Whether the Defendant likes that fact or not is not a

4     question for the jury to answer.  The fact that he was

5     committed is proven beyond a reasonable doubt.

6          We look at September 2015, the involuntary

7     commitment order.  We look at the title of the order signed

8     by a judge from Somerset County, New Jersey.  It is a

9     temporary order for the involuntary commitment of an adult,

10    Heon Jong Yoo.

11         We look at the certifications that accompany that

12    order.  The certifications are also contained in Exhibit 9,

13    Page 56 and 71, and they indicate that the patient suffers

14    from a mental illness.  They indicate that the patient, if

15    not committed, would be a danger to himself or others.  And

16    that the patient is unwilling to be admitted to the required

17    treatment program.

18         This is an involuntary commitment for treatment

19    purposes.  This is not observation.  This is not evaluation.

20    This is commitment to treat a mental illness.  This is what

21    makes the Defendant a prohibited person.  This is what

22    prevents him from possessing firearms.

23         These are the firearms that Mr. Yoo possessed

24    subsequent to those two commitments in New Jersey.  You saw

25    them all.  You heard Special Agent James Reed speak about all

1  of them during his testimony.  He described them to you.  He

2  described where he found them.

3       The Defendant stipulated that he possessed all of

4  these firearms.  The Defendant admitted on the witness stand

5  that he possessed all of these firearms.  These are the

6  firearms that are subject to the Government's Indictment.

7       Did they travel in interstate commerce?  You heard

8  from Special Agent Warren Keener.  And Special Agent Keener

9  told you about each of the five firearms listed out in the

10  Government's Indictment.  He told you that he did a trace

11  analysis to determine whether or not those firearms had

12  previously traveled in interstate commerce, and he gave you

13  the trace reports for each one of those five firearms, and he

14  confirmed for you all that each of these firearms did, in

15  fact, travel in interstate commerce from where they were

16  manufactured to where they were subsequently shipped, whether

17  to a distribution center or to a retailer and then eventually

18  to the apartment of Hank Yoo on April of 2018.

19       You know, you look at Count 7 and then you look at

20  Count 8 and you ask yourself at the outset of the trial, you

21  know, what is it that we are doing here?  Why is it important

22  why we are here?

23       I think if you look at how the Indictment is laid

24  out, I think if you look at how each of these charges comes

25  to be, and then how you get to the last Count 8 of the

1    Indictment, you understand.  That understanding starts

2    becoming clearer and clearer and clearer why it matters, why

3    it matters that at the point of sale of a firearm a person

4    can go in a store and lie and lie and lie in order to get a

5    firearm when they are otherwise a prohibited person from

6    possessing one.

7              That is the danger to the community.  That is why

8    we care.

9              THE COURT:  Mr. Machicek, you have used 15

10   minutes.

11             MR. MACHICEK:  Thank you, Your Honor.

12             The last thing I want to talk about, the last form

13   that the Court is going to provide to the jury as y'all go

14   into deliberations is this verdict form that contains the

15   jury's -- the blanks for the jury's verdict as to each count

16   of the Indictment.  There is two blanks for each count,

17   guilty and not guilty; and a place for the foreperson of the

18   jury to sign.

19             As you see on your screen this is how the

20   Government is going to ask you to complete that form.  We are

21   going to ask you to mark "guilty" as to each count of the

22   Indictment, have your foreperson sign at the bottom because

23   that is exactly what the Defendant -- what the evidence has

24   shown and what the Defendant is.

25             The evidence has shown that it doesn't matter how

1   many times you lie about something, it doesn't alter the

2   truth or the reality of the situation.  The Defendant is a

3   prohibited person.  The Defendant is not a United States

4   citizen.  The Defendant repeatedly lied.  And he told you

5   that the reason he did that was to override a background

6   check that would have prevented him from owning firearms.

7           Thank you for your time, and thank you for your

8   careful consideration of the evidence, and I look forward to

9   receiving your verdict this afternoon.

10          THE COURT:  Thank you, Mr. Machicek.

11          Mr. Yoo.

12          MR. YOO:  Good afternoon, sir, and, ma'am.

13          First of all, I would like to address four -- four

14  points of the Prosecution.

15          First of all, Mr. Machicek had -- had been

16  misleading the definition for a U.S. national pursuant to

17  8 -- 8 United States Code, Section 11 -- 1101.  I am a

18  permanent resident.  I am not just like any regular green

19  card holder, any alien.  I am a permanent resident who swore

20  into the United States Army back in 2016 and got declined

21  because of that fraudulent record, was not informed of that

22  record until this case commenced.

23          Second, Lucas Machicek did -- did just state that I

24  was specifically informed by FBI back in January 2016.  That

25  is a lie.  That is a complete lie.  You have seen the -- the

1    exhibit, and they have told me general disqualification

2    factors.  They have not told me which of those factors they

3    have labeled me as, even though I have submitted to them

4    specific denial code that pertains to my case.

5         Third, lies after lies after lies.  People don't

6    just walk into America and claim to be an American citizen

7    and -- no, of course, not.  I agree.  I am not a documented

8    United States citizen.  However, I am a true American who is

9    loyal to our founding fathers and who is loyal to -- has the

10   full loyalty to the United States Constitution.

11        And Lucas Machicek just -- just informed y'all that

12   I have lied as a -- a United States -- I have admitted as a

13   United States citizen to override the background check.  That

14   is a false.  I don't need to identify as a United States

15   citizen to override -- override the background check.

16        I have -- I have presented the Texas -- revoked CHL

17   to override the background check.  First of all, I should

18   have never been denied a background check in the first place.

19        For second, that CHL should never have been revoked

20   in the first place.  That revocation of my CHL was a severe

21   violation of my due process even pursuant to the Texas -- the

22   Government code.

23        Now -- now, I will address to you why I do not have

24   a PowerPoint that I can present to you all so that -- to make

25   your life easier.  I have been fighting this case with both

1    hands tied behind my back.  They -- I have requested for bail
2    over and over again.

3         My -- my original attorney said, no, Hank, you are
4    not -- the Judge is going to deny the appeal motion, but that
5    was the case.  I received the -- the appeal hearing on 2018
6    and 10.

7         Now, the Gregg County Jail is severely below
8    federal standards.  I have been denied access to a law
9    library.  I have been denied access to even docket access.
10   The Court knows this.  I have informed the Court of how Gregg
11   County Jail is -- is depriving my -- my Sixth Amendment
12   rights and Fifth Amendment rights over and over again.

13        The Court did not take any actions to it.  And
14   while they -- while -- while -- while the federal courts all
15   over the country bail out murderers, pedophiles, and drug
16   dealers, they refused to bail me out, not based on factual
17   evidentiary basis but based on hearsay.

18        I have been communicating with my
19   friend -- friends, who are bright -- bright about the law
20   for -- past seven months.  And -- and I have -- as a
21   25-year-old -- as a 25-year-old who has never even been to a
22   trial as a juror, even a juror or any legality prior to this
23   case, to represent myself because I believe in the
24   constitutional rights granted by our founding father; my
25   constitutional right to bear arms, my constitutional right to

1  due process, that is what I believe in.

2          So, as I have stated, I have lived in every single

3  one of those addresses, and I -- I -- I have spelled out my

4  name -- name correctly, and I have spelled out my date --

5  date correctly.

6          How can the Prosecution label me as -- as dishonest

7  when they are dishonest about the law?  When they are -- they

8  lie about the law, and they are accusing me of lying about

9  the minor factor.  I am not an illegal immigrant.  I love

10 this country.  There is nothing more -- more that would make

11 me proud than to claim that I am true American, true follower

12 of the Constitution.

13         This fraudulent misentry had dragged my life on,

14 ruined my dream career since middle school.  Since 6th grade

15 I wanted to join the U.S. military.  6th grade.  This NICS

16 entry has denied my dream career from me.  And I have never

17 been to a hearing for it, and I was never informed of it.

18 This is a severe violation of my due process.

19         Now, it is not the Prosecution's job nor is it

20 anyone's job in this Court, including myself, to interpret,

21 interpret the -- the Constitution.  And -- and to -- to I

22 would say, enforce that Constitution accordingly to their own

23 interpretation.  It is our duty as Americans to defend the

24 Constitution against all enemies foreign and domestic and to

25 follow the Constitution, not to interpret the Constitution.

1          The Bill of Rights are not up to interpretation.

2     It is clearly, clearly defined.  In the -- in -- in the

3     Second Amendment, a well-regulated militia, being necessity

4     to the defense of a state, therefore, the rights of the

5     people to bear arms shall not be infringed.

6          I have never even been to a hearing, and I have

7     never even been given the chance to contest their -- their

8     argument regarding why I am mentally defective when they are

9     clearly mentally defective, I mean, those screeners who

10    evaluated me.  Such as Dr. Kaufman over here, Kenneth Kaufman

11    who labeled me on Axis -- on Axis 5 as 25.  Axis 5, 20 means

12    you are smearing feces on the wall.

13         Please ask yourself this:  Would -- would someone

14    who smears his or her feces on the wall, should that person

15    be allowed to represent him or herself?  Should that -- can

16    that person speak this articulately?  Can that person truly

17    follow the Constitution of America and actually follow to the

18    letter and the color of the law?

19         It is -- yes, it is my -- my opinion, sound opinion

20    based on the Constitution that the Gun Control Act of 1968 is

21    unconstitutional.  However, I have not broken the purpose of

22    Gun Control Act of 1968.  I have never -- I have never hurt

23    someone other than -- other than self-defense.  I will never

24    hurt someone other than self-defense.

25         But I do have a common law right and the

1    constitutional law right to defend myself against someone who

2    is trying to kill me, up to deadly force.  That is defined

3    within our Constitution, and that is a natural law of a

4    person.

5           To completely deprive me of my Second Amendment

6    right to bear arms and -- and -- excuse me.  To completely --

7    sorry.  At the same time not like to -- like to completely

8    make me not aware of that fact is severely unconstitutional

9    and severely unlawful too.

10          I have -- I have demonstrated to y'all through NICS

11   Improvement Amendments Act of 2007, where it very clearly

12   states the standards for commitment and standards for

13   adjudication.  A commitment and -- and adjudication deprives

14   a person's rights significantly.  Individual liberty is at

15   the paramount of -- of this country.

16          Thank you.

17          However, to deprive individual liberty with -- with

18   complete lack of due process, that is unconscionable.

19          For a second I would like to briefly approach on

20   what RUPD did.

21          Back in 2013 RUPD has exploited my trusting nature

22   and my respect for the law enforcement to completely -- to

23   completely deprive me of my constitutional right to life,

24   liberty, and -- and property, committed a criminal conspiracy

25   to deprive my constitutional right based on a hearsay from

1  two people eavesdropping on the conversation of my -- my --
2  my desire to obtain a firearms license, my desire to lawfully
3  own -- own a firearm.

4        As -- as several of the Prosecution's witnesses
5  have testified, these are not prohibited weapons.  Yes, it is
6  my view that civilians should be even allowed to own
7  automatic firearms and missile launchers because right to
8  bear arms means right to bear arms.

9        However, I am still following the law.  I have not
10  possessed any prohibited weapons.  Where in the Constitution
11  does it say it is illegal to be -- to be tactical?  It is
12  illegal to -- to have a desire to create your own militia?
13  It is illegal to defend the Constitution against all enemies
14  foreign and domestic?  I may not be a U.S. citizen, but I am
15  true American.  And I swear this under the penalty of perjury
16  in front of President George Washington, our founder and our
17  eternal leader of this country.

18        Also, I have shown y'all -- y'all have all seen the
19  codes.  I am not just pulling these -- these -- these out of
20  my behind, you know.  I am not just making these up.  These
21  are the laws.  These are what the -- the law -- law states.

22        Under 922(b)(5), 922 Bravo 5, it clearly states
23  information that -- no, sorry.  Required to be kept pursuant
24  to this chapter, and it lists three informations out, name,
25  age, and place of residence.

1      Well, in that code, yes.  I never disputed the --

2  I've never disputed the fact that 4473 is not an information

3  required to be kept -- I mean, sorry.  I have never

4  disputed the -- I've never disputed the fact that federal

5  firearms license dealers are not required to keep 4473.

6      But the entire point of 4473 is whether this person

7  is eligible or prohibited to purchase a firearm, and the

8  entire purpose of recordkeeping is, if there is a violent

9  crime arising out of this -- this particular firearm listed

10  in the form -- or in the record, it would aid the law

11  enforcement to track that person down to aid in their

12  investigation of the crime.

13      This is stated in the Gun Control Act of 1968.  It

14  is clearly stated that the purpose of that act is not to

15  infringe on the law -- law -- law-abiding citizens to possess

16  firearms for the purpose of hunting, self-defense, or like

17  any of those lawful reasons.

18      I am a lawful person.  I have never, ever actually

19  made terroristic threats.  Yes, I have points of view which

20  are -- are very -- very radical.  But that is covered under

21  the First Amendment of our Constitution.

22      To be completely labeled mentally ill, to be

23  completely -- to be labeled mentally ill and to be deprived

24  of right to bear arms, due to my -- my -- my political views,

25  which it arises from my belief in every single individual's

1  right to bear arms.

2          The sole reason why RUPD took me to the -- to the

3  Robert Wood Johnson Hospital giving me false pretenses

4  saying:  Oh, Hank, it's going to be like a 20-minute

5  interview.

6          That is the exact reason why I put on a three-piece

7  suit to be transported to the Robert Wood Johnson Hospital.

8  I did not expect to be in ER.  Once I got there, I told the

9  ER staff over and again, I need to leave.  I have finals.  I

10  have to leave.

11          They said, no, you are not allowed to leave.  And

12  then on -- on those reports it does say, oh, yeah, he is

13  agitated.  Well, of course, I am agitated.  I am held there

14  against my will when the RUPD clearly stated I was

15  voluntarily transported there.

16          And the -- and -- and the cops clearly have stated

17  that I have not specifically threatened to harm anyone.  That

18  is within the RUPD reports.  And even on -- even in the 2017

19  reports, "death to the Middle East" is a political view.  It

20  is not a terroristic threat, but the hospital staff labeled

21  them as terroristic threats.  That is a lie.  That is a

22  severe incompetency in their profession where -- where --

23  where they have gone through extensive education for and they

24  are paid six figures to -- per year to do their jobs

25  properly, and they have not done their jobs properly.

1          Ask yourselves, I have been told numerous times by

2     several different attorneys, take a plea deal, take a plea

3     deal.  Hank, Hank, Hank, take a plea deal, or they are going

4     to railroad you.  I told them, no, I am not betraying our

5     founding fathers.  I am not giving up my rights.  No matter

6     what you think, I am American.  I am going to stand up for my

7     rights.  I am going to fight for my rights.  If you are not

8     going to represent me properly, I am going to represent

9     myself.  That is why I -- I -- I fired three different

10    attorneys, one court-appointed, two paid.

11         And I -- after I started to represent myself, I

12    raised over 180 different motions, barely any of them got

13    ruled or granted.  Most of them got denied.  But not denied

14    as frivolous or moot.  Like three of them were -- were denied

15    as moot, but none of them were denied as frivolous.  They

16    were denied according to traditional interpretation.

17         Now, I will -- I will -- I will leave it up to

18    y'all to be the judge -- to be the correct judgment of

19    character for this Court and the Prosecution.

20         Now, the Prosecution has labeled me that I am going

21    to be a threat to the community.  I own a gun safe, first of

22    all.  I do not put my finger on the trigger until I have a

23    clear target in my line of sight, and I am ready to fire.  I

24    am one of the safest gun owners out there.  I have -- I have

25    never pointed my gun at someone, nor -- nor do I intend to

1   unless I am going to defend myself.

2          That is -- that is a lawful way of using a gun.

3   Yes.  Everyone should carry a gun.  Everyone.  However, as a

4   person who is -- who is enlightened through common sense, we

5   all know what -- what kind of situation is -- is self-defense

6   and what kind -- what kind of situation requires deadly

7   force.

8          Like, I am not going to shoot a person just because

9   someone punched me in the face.  I am going to punch them

10  back.  That is force for force.  However, if someone brings a

11  knife at me, yes, I am going to shoot them.  That is -- that

12  is granted to me even by the United States Code and even by

13  the Texas code and even by the -- and especially by our

14  Constitution.  I have right to defend myself.  I have right

15  to bear arms.  I have right to due process.

16         However, this everything in this case results from

17  this poisonous tree.  Everything else is a fruit.  Everything

18  else is a fruit.

19         As a 19-year-old kid, I did not know my rights.  I

20  did not know law -- law enforcement would be malicious.  As a

21  19-year-old kid I had trusting nature.  My grandfather was an

22  attorney general of South Korea.  He trusted judicial system.

23  He trusted law -- law enforcement.  I was raised under my

24  grandfather.

25         My grandfather told me from a young age law

1    enforcement is good.  You have to respect the law

2    enforcement.  That is exactly what I did.  I respected the

3    law enforcement.

4         I -- I have never questioned that they had

5    malicious intent.  I have never questioned their competency

6    in their job.

7         Look what happened to me.  Six years of being

8    unaware of this -- no, five years of being unaware of this

9    fraudulent entry, getting denied of my dream profession

10   since -- since -- since my years in -- in middle school.

11        Why would I have filled out 4473 and gave correct

12   name, age, and address and correct Social Security number,

13   correct driver's license number, every single factor that --

14   that a -- a law enforcement can use to track me down.  Every

15   single factor.  If my intention was to deceive, if my

16   intention was to go out there and commit violent crimes, if

17   my intention was to use those firearms while -- while I am

18   dealing drugs -- I don't even smoke.  I don't drink alcohol.

19   Do you know why?  As a gun owner I believe that I have to be

20   in a clear mind at all times if I am -- I am around guns.  At

21   all times.

22        Yes, Mr. Machicek have pointed out that yesterday

23   through Jonathan Hossier, so is 400 Old Grande, would that

24   address be current?  No.  But, however, I have corrected that

25   mistake at the first available opportunity.  When Mr. Coan

1  sent me those documents to the jail on September 25th of this

2  year, I have mailed them to the Academy Sports, I have mailed

3  them to the -- what was it, the First Cash Pawn -- no, not

4  First Cash Pawn.  Cash America Pawn.

5       And I swore this under penalty of perjury.  I have

6  informed the Court.  They cannot bring that argument against

7  me at that point because on the 4473 form it allows the

8  transferee or the -- or transfers to correct their own

9  mistakes, correct their own mistakes, yeah.  But I have lived

10 under every single one of those addresses, and they weren't

11 like outdated addresses by five years or even a year, you

12 know.

13      And they could still track me down through my

14 driver's license number.  What I did was I walked into the

15 pawn shop and displayed my -- my CHL.  Yes.  Yeah.  I mean, I

16 knew that if I use a CHL, I would override the background

17 check.  You know why?  Because I have right to bear arms.  I

18 am not a felon.  I am not a drug user.  I don't even drink.

19 And to -- to the -- the letter and color of the law, I am not

20 adjudicated mentally defective nor committed to a mental

21 institution.  I have right to bear arms.  They do not have

22 right to deny me of my -- my -- my arms.

23      I am not -- I can't really cite 18 United States

24 Code, Section 925 Alfa right off top of my head, but it

25 describes some remedy for erroneous denial of firearm.  I

1   believe that, to the best of my knowledge, I am not going to

2   come in -- I am not going to state false -- false information

3   as true like they do.

4           To the best of my knowledge, to the best of my

5   knowledge, I believe that if a firearm transaction is denied,

6   the responsibility of correction and remedy relies on the

7   Government, not -- not -- not the civilian.

8           THE COURT:  Mr. Yoo, you have five minutes

9   remaining.

10          MR. YOO:  Thank you, sir.

11          How can I be committed to a -- a mental institution

12  and get permanently deprived of my -- my right to bear arms

13  in absentia.  I was never allowed to face my -- my accusers

14  in the so-called commitment process.  I can guarantee you

15  that Dr. Kaufman who wrote that screening process, I can

16  guarantee you he has some political bias against me.  He has

17  never even read the RUPD reports.  He has never examined any

18  of the evidences.  Yeah.

19          As my friend Jonathan Hossier has noted, yes, I

20  tell people that I am a United States citizen.  I am not

21  ashamed to be a citizen or even a national of other country.

22          So, according to the 8 USC 1101, the definition of

23  a U.S. national means permanent allegiance.  I can guarantee

24  you no one has more permanent allegiance to the Constitution

25  than I do.

1      Through this case it only strengthened my respect

2   for our Constitution.  It only strengthen my love for this

3   country because if I was in any other country, I would have

4   been screwed.  I would not have had right to appeal.  Even

5   with malice of the Prosecution and the Court, I was -- I was

6   still able to preserve my rights by representing myself.

7   And -- and no matter what the disposition of this case is, I

8   plan to file a million dollar civil lawsuit for loss of my --

9   my life for past six years.

10      And I would -- I will insist, I will respectfully

11   insist all of you fair jurors to actually deem me innocent,

12   not even not guilty, innocent, actually innocent, so I can

13   get back to being a decent citizen, so I can get back to

14   living my life.  So I can clear my name as soon as possible.

15      Because even according to the federal laws, the

16   federal code that the Prosecution has cited, 27 Code of

17   Federal Regulation Section 124, it does not state anything

18   about inform -- any specific information required to be kept.

19   It does state about informations that -- that the dealer

20   should -- informations that should be contained in the ATF

21   4473 form and the manner of how ATF 4473 form should be kept.

22      The records for disposition -- so the information

23   required to be kept for the records of disposition and the

24   receipt of firearms is actually noted in 478.125.  And

25   nothing in there states citizenship.  Nothing in 922(b)(5)

1  states citizenship.

2         And even then, I still have my constitutional right

3  to bear arms.  No law is above the Constitution of America.

4  No law.  I don't care about any other country.  I don't care

5  what they do.  But in this country we have right to bear

6  arms.  We have right to due process.  We have right to free

7  speech.

8         We have right to politically believe in whatever we

9  want.  And I -- I -- I beseech President Washington to

10  protect every single future American generation to -- to be

11  protected from political persecutions that I have suffered

12  for the last five years.

13         Thank you.  And long live America.

14         THE COURT:  Thank you, Mr. Yoo.

15         Mr. Coan.

16         MR. COAN:  Thank you, Your Honor.

17         Well, here right before the end, I finally get a

18  chance to say hello and good-bye.  I am going to thank you on

19  behalf of Prosecution team for your attention during this

20  trial, and we know that you are going to follow the Judge's

21  instructions and carry out your duty to deliberate.

22         I want to touch on a couple of things here.  First

23  off, I want to remind you that each of you told us during

24  voir dire that you were not going to hold the fact that the

25  Defendant was representing himself against the Defendant, and

1   you told all of us that you weren't going to hold that fact

2   against the Government either.  Okay.  I am just going to

3   remind y'all of that.  And we recognize that y'all gave us

4   those assurances.

5          I agree with the Defendant that he is a permanent

6   resident.  He may even be a true American.  I don't know.

7   But what the evidence has shown is that he is not a United

8   States citizen, and that is what he lied about on the ATF

9   Form 4473s again and again and again and again, seven times.

10   That is what he is charged with.

11          It is not -- it is not whether he said his name

12   correctly on the forms or whether he said his address

13   correctly on the forms.  The charges in Counts 1 through 7

14   are he lied about his country of citizenship on the ATF Form

15   4473.  He did.  He did.  He is guilty on Counts 1 through 7.

16          As to Count 8, the Defendant argues that he wasn't

17   specifically told by FBI the individual code section that

18   made him a prohibited person under federal law.  He

19   acknowledged, hey, I was told I was prohibited under federal

20   law, but you didn't tell me exactly which section of 922 of

21   Title 18 that I was a prohibited person.

22          Well, that is not an element that was contained in

23   the Judge's instructions.  The question before the jury for

24   your consideration is whether he had been committed to a

25   mental institution prior to possessing firearms that had

1    traveled in interstate commerce.  He was.  And he has

2    admitted to possessing the firearms.  The evidence, the

3    testimony, the records all show that the firearms traveled in

4    interstate commerce.

5          Let's talk about the commitments.  He was, he was

6    committed two times in the state of New Jersey pursuant to

7    Court orders.  He was involuntarily committed for treatment.

8    And the basis for that -- of those commitments were that he

9    suffered from a mental illness; that if not committed, he

10   would be a danger to himself or others or property by reason

11   of such mental illness in the foreseeable future; and that he

12   was unwilling to be admitted to the recommended treatment

13   program or facility voluntarily for care.  Those certificates

14   with those findings are contained in Exhibit 9, and you will

15   recall the testimony of Dr. Larsen about what the process is

16   in New Jersey for an involuntary commitment.

17         So where does that leave us at the end of the day?

18   What is the argument here?  Everybody is lying, everybody is

19   incompetent, law enforcement, trial witnesses, certified

20   mental health screeners, medical doctors.  As you were

21   instructed, it is your job to determine the credibility of

22   the witnesses in this case.  Okay?  I can't tell you that.

23   The Defendant can't tell you that.  That is your job, Ladies

24   and Gentlemen.

25         What I would submit to you is what the evidence has

1   shown in this case is that the person who has lied is the

2   Defendant, on the ATF Form 4473s, seven times.  And why did

3   he do it?  To obtain firearms.  And why did he lie to obtain

4   firearms?  Because he was a prohibited person because he had

5   been committed to a mental institution on two prior

6   occasions.

7           Ladies and Gentlemen, we ask you to return a

8   verdict of guilty on all counts.

9           Thank you very much.

10          THE COURT:  Thank you, Mr. Coan.

11          Ladies and Gentlemen of the Jury, it is now time

12  for you to retire to the jury room for your deliberations.

13  Each of you will have a copy of the Court's instructions, and

14  one copy of the verdict form will be provided to you.

15          When you go to the jury room, the first thing you

16  should do is select one among your number as your foreperson,

17  who will help guide your deliberations and speak for you here

18  in the courtroom.

19          As I told you earlier, if you need to communicate

20  with me at any time during your deliberations, you should

21  write out a message on some forms that we will provide for

22  you, and give it to the Court Security Officer.  I will

23  either reply in writing or bring you back into the courtroom

24  so I can address you orally.

25          I would also at this time like to ask our

1     alternates, Ms. Davenport and Mr. South, if you would remain

2     in the courtroom with me when the jury retires to begin their

3     deliberations, and I can visit with you about your role at

4     this point.

5              It is now time for the jury to retire to the jury

6     room.

7              (Jury out for deliberations.)

8              THE COURT:  All right.  Please be seated.

9              Ms. Davenport, and, Mr. South, you all can stay

10    there.  I do want to tell you, at this point the jury has

11    retired to begin its deliberations.  You all have served

12    faithfully as our alternates throughout the trial.  Your

13    service is not yet complete.

14             What I would ask you to do is to remain under the

15    rules that I have previously instructed you about, regarding

16    your conduct during the trial.

17             In the event that one of the 12 members of the jury

18    is unable to complete their service on the jury, it may

19    become necessary for us to recall you.  And if that is the

20    case, I want you to continue to follow the rules during your

21    absence from the courtroom.

22             So, again, don't discuss the case with anyone, not

23    among yourselves, not among your family.  Don't do any

24    independent research.  Don't post anything about the case.

25             Mrs. Schroeder has a way to contact you, and she

 1    will contact you, obviously, if we require your services, and

 2    likewise she will contact you if the jury reaches a verdict

 3    and it is no longer necessary for you to remain under the

 4    rules of the Court.  So you will hear from Mrs. Schroeder one

 5    way or the other.

 6              I do want you to know how profoundly grateful I am

 7    on behalf of the Eastern District of Texas, the parties, the

 8    United States, and Mr. Yoo and the attorneys that are here,

 9    how much we appreciate your presence and your patience and

10    your attention throughout the course of the trial.

11              As I said in the beginning of this trial, I really

12    do believe that jury service is one of the most important,

13    highest forms of public service you as citizens can render to

14    your country.

15              And, you know, our Sixth Amendment to the

16    Constitution and our Seventh Amendment to the Constitution

17    wouldn't work day in and day out as a practical matter if we

18    did not have citizens who were willing to heed the call of

19    jury service.

20              So thank you for being here.  And you may -- you

21    are welcome to stay if you want to stay, but you are also

22    welcome to go about your business, and Mrs. Schroeder will

23    contact you if we need you to return, and likewise we will

24    let you know otherwise if the jury has reached a verdict.

25              THE COURT:  Any questions?

1          JUROR DAVENPORT:  We have some personal items.

2          THE COURT:  All right.  Mr. Richards can arrange to

3   get your personal items.  Do you know what they are?

4          JUROR SOUTH:  I have a brown leather jacket.

5          JUROR DAVENPORT:  My purse is right next to his

6   jacket.

7          What would you like for us to do with these.

8          THE COURT:  Mrs. Schroeder will collect those.

9          Mrs. Schroeder also has some certificates thanking

10  you for your service as alternates.

11          Thank you both very much.

12          (Alternate jurors leave the courtroom.)

13          THE COURT:  Okay.  The forfeiture instructions in

14  the event that the jury comes back with a guilty verdict?

15          MR. LOCKER:  Yes, Your Honor, I will be handling

16  the forfeiture matter.  I don't think we have prepared -- we

17  have prepared forfeiture instructions.  We will give that to

18  the Court.

19          We intend to call Special Agent Reed to the stand

20  briefly.  All that remains is -- that is in the Government's

21  forfeiture allegation is the one 1911 firearm and ammunition.

22  The remainder of the firearms were forfeited

23  administratively and --

24          MR. YOO:  Unlawfully.

25          MR. LOCKER:  So the Government is going to do its

1   best with the jury's time and only call Special Agent Reed

2   for the limited purpose of establishing the elements of the

3   forfeiture.

4            THE COURT:  Does the Government desire opening

5   statement on the forfeiture part?

6            MR. LOCKER:  No, Your Honor, I will waive that.

7            THE COURT:  Okay.  Mr. Yoo, obviously, will have an

8   opportunity to open on that.

9            MR. YOO:  I contest on every single forfeiture, and

10  I respectfully request the Court to, upon -- upon return of

11  not guilty, innocent, or upon reversal of conviction, that

12  all of my seized items return to me, including the firearms

13  supposedly administrative -- administratively forfeited, but

14  I have never received any notice upon --

15           THE COURT:  Mr. Yoo, if the Government returns a

16  verdict of not guilty, then we can address that.  What we are

17  discussing now is what occurs if the -- if the jury returns a

18  verdict of guilty.

19           MR. YOO:  And I contest the -- contest the

20  forfeiture pending appeal, and then --

21           THE COURT:  You are more than welcome to do that.

22           The Government provided copies of the forfeiture

23  instructions either over the weekend or on the first day of

24  trial.  I know they were provided to Mr. Haas.  We had a

25  discussion on the record about that.

1      But you all need to take a look at those.  In the

2  event you are found guilty, we will move into the forfeiture

3  phase, and I will need to instruct the jury.

4      So, if you have got any objections to the

5  Government's instructions, you need to let me know that.

6      Okay.  We will be in recess.

7      (Recess was taken at this time.)

8      (Jury out.)

9      THE COURT:  Okay.  We have received a note.  The

10  first note indicated that the Foreperson was Ms. Goolsbee,

11  and the second note indicated that the jury had reached a

12  verdict.

13      Anything we need to raise before the jury is

14  brought in?

15      MR. COAN:  Nothing from the Government, Your

16  Honor.

17      MR. YOO:  No, Your Honor.

18      THE COURT:  All right.  Let's have the jury brought

19  in.

20      COURT SECURITY OFFICER:  Yes, sir.

21      (Jury in.)

22      THE COURT:  Please be seated.

23      Ms. Goolsbee, I understand you are our foreperson;

24  is that correct?

25      FOREPERSON:  Yes.

1        THE COURT:  Would you please stand?

2        FOREPERSON:  I'm sorry.

3        THE COURT:  You are all right.

4        Has the jury reached a verdict?

5        FOREPERSON:  Yes.

6        THE COURT:  Is the verdict unanimous?

7        FOREPERSON:  Yes.

8        THE COURT:  I'm going to ask that you hand the

9   Verdict Form to Mr. Richards, who will hand it to

10  Mrs. Schroeder, who will hand it to me.

11        (Verdict Form given to The Court.)

12        THE COURT:  All right.  I am going to hand the

13  Verdict Form back to Mrs. Schroeder, and Mrs. Schroeder is

14  going to read the verdict at this time.

15        Ladies and Gentlemen of the Jury, I would ask that

16  you listen carefully to Mrs. Schroeder as she reads the

17  verdict because at the conclusion of the reading of the

18  verdict, I am going to ask you all to stand if indeed it was

19  each of your individual verdicts, so that I can verify the

20  unanimity.

21        Mrs. Schroeder, if you would, please read the

22  verdict.

23        THE CLERK:  As to Count 1 of the Superseding

24  Indictment, we, the jury, find the Defendant, Heon Jong Yoo,

25  a/k/a Hank Yoo:  Guilty.

1       As to Count 2 of the Superseding Indictment, we,

2  the jury, find the Defendant, Heon Jong Yoo, a/k/a Hank Yoo:

3  Guilty.

4       As to Count 3 of the Superseding Indictment, we,

5  the jury, find the Defendant, Heon Jong Yoo, a/k/a Hank Yoo:

6  Guilty.

7       As to Count 4 of the Superseding Indictment, we,

8  the jury, find the Defendant, Heon Jong Yoo, a/k/a Hank Yoo:

9  Guilty.

10      As to Count 5 of the Superseding Indictment, we,

11  the jury, find the Defendant, Heon Jong Yoo, a/k/a Hank Yoo:

12  Guilty.

13      As to Count 6 of the Superseding Indictment, we,

14  the jury, find the Defendant, Heon Jong Yoo, a/k/a Hank Yoo:

15  Guilty.

16      As to Count 7 of the Superseding Indictment, we,

17  the jury find the Defendant, Heon Jong Yoo, a/k/a Hank Yoo:

18  Guilty.

19      As to Count 8 of the Superseding Indictment, we,

20  the jury, find the Defendant, Heon Jong Yoo, a/k/a Hank Yoo:

21  Guilty.

22      Signed and dated.

23      THE COURT:  All right.  Ladies and Gentlemen of the

24  Jury, if this was indeed your individual verdict, I would ask

25  that you please stand at this time.

1          (Jury stands.)

2          All right.  You may all be seated.

3          And let the record reflect that all 12 members of

4    the jury stood in response to my request to poll the jury.

5          The verdict is confirmed and is accepted and will

6    be filed by the Clerk of the Court.

7          Ladies and Gentlemen of the Jury, in view of your

8    verdict that the Defendant is guilty of the counts charged in

9    the Superseding Indictment, you have one more task to perform

10   before you are discharged.

11         What you must now decide is whether there is a

12   nexus or a connection between property that the United States

13   alleges should be forfeited to the United States, and the

14   conduct for which you have already found the Defendant

15   guilty.

16         I have given the parties an opportunity to present

17   short opening statements in that regard, and I understand it

18   is the intention of the United States to waive that right to

19   present an opening statement.

20         Is that correct?

21         MR. LOCKER:  That's correct, Your Honor.

22         THE COURT:  Thank you, Mr. Locker.

23         Mr. Yoo, do you wish to present an opening

24   statement?

25         MR. YOO:  Your Honor, regarding forfeiture?

1         THE COURT:  I'm sorry?

2         MR. YOO:  Regarding forfeiture?

3         THE COURT:  Yes, regarding forfeiture.

4         MR. YOO:  Yes, I am going to appeal the jury's

5   decision, and it is my -- it is my rights as I pled

6   "innocent," granted by our great founding fathers.  I intend

7   to exercise that right, and notice of appeal I file it now

8   orally.  And so please inform the Fifth Circuit Court.

9         And while -- while appeal is pending, I contest the

10  forfeiture of all of my unlawfully confiscated firearms

11  pursuant to rule -- rule -- well, 31 -- 32.2 describes

12  criminal forfeiture.  I -- pursuant to Rule 3242 Delta, I

13  file a motion to stay the forfeiture pending appeal.

14        THE COURT:  The motion is denied.  Do you wish to

15  present any further opening statement?

16        MR. YOO:  Yes.  So I object to that -- that denial

17  and present -- preserve my right to appeal, and then I do

18  believe that I would like to tell the jury that though --

19  though -- though the weapons are lawfully purchased by me and

20  then lawfully owned by me.  So those -- since I have right to

21  appeal, I do believe that those weapons should not be

22  forfeited.

23        THE COURT:  Okay.  Does that complete your opening

24  statement, Mr. Yoo?

25        MR. YOO:  Yes.  Oh, also regarding those rest of

1    the firearms that the Government supposedly -- supposedly

2    administratively -- administratively forfeited, I have never

3    received any notice.  It just further proves that they are

4    conspiring to revoke my gun rights.

5            Thank you.

6            THE COURT:  Thank you.  Mr. Locker, you may present

7    your first witness.

8            MR. LOCKER:  Government calls Special Agent Reed.

9        JAMES REED, GOVERNMENT'S WITNESS, PREVIOUSLY SWORN,

10                      DIRECT EXAMINATION

11   BY MR. LOCKER:

12   Q.   Good afternoon, Special Agent Reed?

13   A.   Good afternoon.

14   Q.   Just for the benefit of the record, you are the same

15   Special Agent James Reed who has previously testified in this

16   case and still under oath?

17   A.   Yes, sir.

18   Q.   Special Agent Reed, laid before the Members of the Jury

19   here at the table to my left is the Para-Ordnance 1911 and

20   various rounds of ammunition; is that correct?

21   A.   Yes, sir.

22   Q.   And that Para-Ordnance firearm, that 1911 firearm, that

23   is the same as Government's 28 that was previously admitted

24   during the trial in guilt or innocence; is that correct, sir?

25   A.   Yes, sir.

1   Q.   The ammunition that the Government -- that the

2   Government has laid out and is before the jury now, where did

3   this come from?

4   A.   The residence of Mr. Yoo.

5   Q.   So is this the same ammunition that was referred to

6   during the remainder of the trial that had been stored in

7   that blue crate to my left during the rest of the trial?

8   A.   Yes, sir.

9   Q.   Now, the Members of the Jury saw other firearms that

10  were discussed at length during the course of the trial, four

11  other firearms.  What is the status of those, and why are

12  they not laid out during this forfeiture proceeding?

13  A.   My understanding is that they have gone through another

14  forfeiture process, administrative forfeiture.

15  Q.   So those have been resolved and no longer a matter for

16  the jury; is that correct?

17  A.   Yes, sir.

18  Q.   Now that the jury's verdict has been rendered and has

19  been accepted by the Court, is Mr. Yoo a prohibited person

20  for the purposes of possessing a firearm under federal law

21  and also ammunition?

22  A.   Yes.  Mr. Yoo is a prohibited person and can no longer

23  possess a firearm or ammunition.

24  Q.   And the Government's allegation pertaining to that

25  includes that Mr. Yoo having been determined to be a person

1    who had been committed to a mental institution is now also

2    supplemented by the fact that he has been convicted of the

3    charges in the Indictment; is that correct?

4    A.    Yes, sir, he has now been convicted of felony charges.

5    Q.    So whether or not it is this ammunition or this gun or

6    any other gun or any other ammunition, is Mr. Yoo by law

7    permitted to possess any of it by virtue of the jury's

8    verdict?

9    A.    No, sir.  He can no longer possess firearms or

10   ammunition.

11            MR. LOCKER:  At this time, Your Honor, I would

12   reoffer these exhibits for the purposes of the forfeiture

13   proceeding.

14            THE COURT:  Any objection?

15            MR. YOO:  No objections.

16            THE COURT:  Very well.  They will be received.

17   BY MR. LOCKER:

18   Q.    So can you explain to the jury how these particular

19   items relate to any of the counts within the Indictment, as

20   in how do these various firearms and the various calibers of

21   ammunition relate to the different counts in the Indictment?

22   A.    These were possessed by Mr. Yoo after he had been

23   previously committed to a mental institution.

24   Q.    So the Para-Ordnance 1911 that is specifically alleged

25   as one of the firearms that he possessed in Count 8; is that

1  correct?

2  A.   Yes.

3  Q.   Each of the various types of ammunition laid out here,

4  do they pertain to at least one firearm that was possessed by

5  Mr. Yoo that was seized from him during the execution of the

6  search warrant at his home?

7  A.   Yes, sir.

8  Q.   And the 12-gauge shotgun ammunition and .45 ammunition,

9  .40 Smith & Wesson ammunition, .308 ammunition, and 5.56

10  ammunition; is that correct?

11  A.   Yes, sir.

12  Q.   And each of those calibers relates to a firearm that was

13  the subject of Count 8 of the Indictment; is that correct?

14  A.   Yes, sir.

15          MR. LOCKER:   I will pass the witness.

16          THE COURT:   Cross-examination.

17                    CROSS-EXAMINATION

18  BY MR. YOO:

19  Q.   Special Agent Reed, did you -- so what is the legal

20  grounds for administrative forfeiture?

21          MR. LOCKER:   Objection, Your Honor.   Relevance.

22          THE COURT:   How is this relevant?

23          MR. YOO:   Because -- because he has -- he has

24  mentioned that other four firearms were -- were

25  administratively forfeited.

1                    THE COURT:  Mr. Locker?

2                    MR. LOCKER:  Your Honor, those have been disposed

3    of.  The only reference to that was for the purpose of

4    identifying for the jury that those matters had been disposed

5    of.  They are no longer questions for the jury.

6                    THE COURT:  That's -- it's not relevant to the

7    decision the jury is going to be asked on forfeiture,

8    Mr. Yoo.

9    BY MR. YOO:

10   Q.   Am I still prohibited, if I get my commission overturned

11   at the appeal?

12   A.   I can't speculate.

13                   MR. LOCKER:  Objection, Your Honor.  It calls for a

14   conclusion of law.

15                   THE COURT:  To the extent the witness can answer

16   the question or has any knowledge, I will allow him to

17   answer.

18   A.   I would still view you as a prohibited person.  I

19   believe you have been committed to a mental institution and

20   are in violation of 922.

21   BY MR. YOO:

22   Q.   If I get my conviction overturned, which was

23   the -- which was the commitment to a mental institution was

24   the basis, doesn't it nullify the supposed commitment?

25   A.   I can't make a speculation on what the actual outcome of

1   your hypothetical situation would be.

2   Q.   Okay.  Were any of these -- these -- these firearms used

3   for unlawful purposes other than just possession?

4           MR. LOCKER:  Objection.  Relevance.

5           THE COURT:  How is it relevant, Mr. Yoo?

6           MR. YOO:  For the record.

7           THE COURT:  Okay.  How is it relevant to the issue

8   the jury is going to be asked to decide?

9           MR. YOO:  Because these -- these ammunitions and

10  the firearms were strictly possessed for lawful purposes.

11          THE COURT:  Sustain the objection.

12  BY MR. YOO:

13  Q.   Okay.  So -- so in terms of criminal forfeiture, you

14  know, none of these weapons are prohibited weapons by the

15  definition; is that correct?

16          MR. LOCKER:  Objection.  Relevance.

17          THE COURT:  Mr. Yoo?

18          MR. YOO:  He is an ATF agent.  He should know

19  the definition --

20          THE COURT:  I suspect he does.  The question is,

21  why is it relevant?

22          MR. YOO:  Why is it relevant?  Because if I get my

23  conviction overturned, I am entitled to get those -- those

24  weapons back.

25          THE COURT:  Well, the question you asked was

1   whether they are prohibited weapons by definition.

2           MR. YOO:  Correct, sir.

3           THE COURT:  The objection is sustained.

4           Move along, Mr. Yoo.

5           MR. YOO:  All right.

6           I will pass the witness.

7           THE COURT:  Any redirect?

8           MR. LOCKER:  No, Your Honor.

9           THE COURT:  You may step down.

10          Call your next witness.

11          MR. LOCKER:  Government rests.

12          THE COURT:  Mr. Yoo, do you wish to put on any

13  evidence in the forfeiture phase?

14          MR. YOO:  No, Your Honor.

15          THE COURT:  All right.  Let me ask Counsel to

16  approach.

17          (Bench conference held.)

18          THE COURT:  Mr. Yoo, do you wish to put any

19  objections to the record on the proposed instructions on the

20  forfeiture phase?

21          MR. YOO:  May I take --

22          THE COURT:  We provided you a copy a couple of days

23  ago.  Do you have your copy?

24          MR. HAAS:  I gave a copy to him.

25          MR. YOO:  Yes, I -- I object to the fact that

```
1   this -- this instruction stated that I was committed to a

2   mental institution, but, yeah.

3           THE COURT:  The jury has made that determination,

4   so --

5           MR. YOO:  I understand.

6           THE COURT:  -- that will be overruled.

7           Do you want to put any further objections on the

8   record?

9           MR. YOO:  No, sir.  But for the appeal, I would

10  like to make that -- that -- that objection to be noted by

11  the Court.

12          THE COURT:  Okay.

13          MR. YOO:  I reserve my right to appeal.

14          THE COURT:  You certainly -- you certainly may do

15  so.  And the basis of your objection is that you maintain you

16  were not committed to a mental institution.

17          MR. YOO:  Yes.  So -- so if I have my conviction

18  reversed, then I would have -- I would get -- I would be

19  entitled to get -- get these weapons back.

20          THE COURT:  Mr. Locker, anything you want to state

21  on the record?

22          MR. LOCKER:  No, Your Honor.

23          THE COURT:  All right.  Very well.

24          (Bench conference concluded.)

25          THE COURT:  All right.  Ladies and Gentlemen of the
```

1  Jury, as I told you, in view of your verdict that the

2  Defendant is guilty of the counts charged in the Superseding

3  Indictment, you have one more task to perform before you are

4  discharged.

5      What you must now decide is whether there was a

6  connection, a nexus, that is a connection, between property

7  the United States alleges should be forfeited to the United

8  States and the conduct for you have already found the

9  Defendant guilty.

10     I instruct you, however, that your previous finding

11 that the Defendant is guilty is final, conclusive, and

12 binding.  Because you are bound by your previous finding that

13 the Defendant is guilty, I direct you not to discuss in your

14 forfeiture deliberations whether the Defendant is guilty or

15 not guilty of any violations.

16     All of my previous instructions regarding direct

17 and circumstantial evidence, credibility of the witnesses,

18 and duty to deliberate apply with respect to your verdict

19 regarding forfeiture.

20     My previous instructions on the Government's burden

21 of proof regarding your verdict on the guilt of the Defendant

22 do not apply to your deliberations and verdict regarding

23 forfeiture.

24     In deliberating and deciding your verdicts

25 regarding forfeiture, the United States need only prove the

forfeiture by a preponderance of the evidence, that is, not
beyond a reasonable doubt.

To prove something by a preponderance of the
evidence is to prove that it is more likely true than not
true.  The decision is made by considering all of the
evidence on the subject and deciding which evidence you
believe.

Each party is entitled to the benefit of all
evidence received, regardless of who offered the evidence.

Preponderance of the evidence is a lesser standard
than the burden -- than the proof beyond a reasonable doubt.

Your job is to determine whether it is more likely
than not that the firearm and ammunition was involved in or
used in the knowing possession of a firearm by a person
committed to a mental institution.

While deliberating, you may consider any evidence
previously admitted, including testimony offered by the
parties at any time during this trial.

Under federal law any person who is convicted of
knowing possession of a firearm by a person committed to a
mental institution for which you have found the Defendant
guilty, is required to forfeit to the United States any
firearm or ammunition involved in or used in commission of
that offense.

I further instruct you that what happens to any

1   property that you find to be connected to the offense is

2   exclusively a matter for the Court to decide.  You should not

3   consider what might happen to the property.  Your task is to

4   find whether or not the Government has established by a

5   preponderance of the evidence that there is a substantial

6   connection between the property and the offense or offenses

7   for which the Defendant has been convicted.

8          If you find that such a connection exists, the

9   Court will decide what happens to the property.

10         In this connection, you should not be concerned

11  with who was the owner of the property, and you should

12  disregard any claims that other persons may have to the

13  property.

14         The interests that other persons may have in the

15  property will be taken into account by the Court at a later

16  time.  Similarly, you are not to consider whether the

17  property is presently available or whether the forfeiture of

18  the property would constitute excessive punishment.  Those

19  matters will be taken into account by the Court at a later

20  time.

21         Your sole concern now is to determine whether the

22  firearm and ammunition were involved in or used in the

23  offense which you have found the Defendant committed.

24         You must reach a unanimous verdict as to each

25  question on each special verdict form.  Everyone must agree

1   to any "yes" or "no" that you enter on a Special Verdict

2   Form.

3           The Special Verdict Form has been prepared for you

4   and lists the property that the Government asserts has a

5   nexus to the crime for which the Defendant has been

6   convicted.

7           You may answer each question by simply putting an X

8   or a checkmark in the space provided next to the words "yes"

9   or "no."  The Foreperson must then sign and date the Special

10  Verdict Form as before.

11          Mr. Locker, do you wish to present any closing

12  argument?

13          MR. LOCKER:  Yes, Your Honor.

14          Folks, I apologize.  Just when you thought you were

15  done, here we are.  I have the onerous task of taking even

16  more of your precious time, and I just want to say thank you

17  so much for your attention so far.  This is a very quick, in

18  terms of what you need to consider for this, in that you

19  already have all of the evidence before you.  And in addition

20  to the evidence under guilt/innocence, you also have the

21  testimony of Special Agent Reed that you may consider in

22  this.

23          So the question regarding these items to my left is

24  not, does all this ammo fit one gun, it is do all these items

25  relate to any count for which the Defendant has already been

1    convicted.

2            So when you look at Count 8 and you see the five

3    different firearms that he was convicted of possessing, you

4    have one of those here on the table and then you have

5    ammunition that relates to that firearm plus the other four

6    for which he was alleged to have -- and has been convicted of

7    possessing.

8            So the Verdict Form is in two parts.

9            The first is for the firearm, and then the second

10   is for all of the ammunition.  This is not a question of

11   parsing out individual rounds.  There are simply two forms,

12   one that says "yes" or "no" as to the firearm and ask that

13   you check "yes," and your foreperson sign and date at the

14   bottom.

15           And the second one is for the ammunition.  I ask

16   that you check "yes" and sign and date at the bottom.

17           And I thank you very much for your time.

18           THE COURT:  Mr. Yoo, do you wish to present a

19   closing argument?

20           MR. YOO:  The right to appeal is -- is engrained in

21   our Constitution granted by our great founding fathers.  So

22   since I just filed the notice of appeal, these firearms

23   forfeiture must be stayed because if -- Appellate Court is a

24   higher court in terms of judicial authority than -- than the

25   district court.

1    Even if the Appellate Court denies my appeal, there
2  is the Supreme Court.

3    So, therefore, if -- if appellate Court reverses
4  my -- my conviction is null and void, and then I have every
5  right to own these guns.  You have convicted me guilty.  But
6  show your last loyalty to the Constitution by staying
7  the -- staying the -- staying the forfeiture pending appeal.

8    THE COURT:  All right.  Ladies and Gentlemen of the
9  jury, just before you can retire now to the jury room to
10  begin your deliberations on this forfeiture issue, you will
11  have a copy of the special verdict form which indicates the
12  firearm and the ammunition on two separate forms that the
13  Government seeks forfeiture of and two blanks for a "yes" or
14  "no" on each -- on each form, and a place for the foreperson
15  to sign and date on both forms.

16    And we will get you a copy of the instructions as
17  well.  And you may now retire to the jury room to begin your
18  deliberations.

19    COURT SECURITY OFFICER:  All rise.

20    (Jury out.)

21    THE COURT:  We will be in recess.

22    (Recess was taken at this time.)

23    THE COURT:  All right.  We received a note from the
24  jury they have reached a verdict on the forfeiture issue.

25    Does anything need to be raised before we have the

1   jury brought in?

2           MR. LOCKER:  Not from the Government, Your Honor.

3           MR. YOO:  I request a transcript of the trial.

4           THE COURT:  Well, let's discuss that, Mr. Yoo,

5   after we have a verdict.

6           MR. YOO:  Okay.

7           THE COURT:  Let's have the jury brought in.

8           (Jury in.)

9           THE COURT:  All right.  Please be seated.

10          Ms. Goolsbee, has the jury reached a verdict on the

11  forfeiture question?

12          FOREPERSON:  Yes.

13          THE COURT:  Is it unanimous?

14          FOREPERSON:  Yes.

15          THE COURT:  Would you hand it to Mr. Richards, who

16  will hand it to Mrs. Schroeder, who will hand it to me?

17          (Verdict given to the Court.)

18          THE COURT:  All right.  I am handing it back to

19  Mrs. Schroeder.  And, as before, Ladies and Gentlemen, I am

20  going to ask her to read the verdict.

21          And, as she does so, I would ask that you pay close

22  attention so that when she completes it, I am going to ask

23  you to stand if it was your individual verdict so I can

24  confirm it was a unanimous verdict.

25          Mrs. Schroeder.

1          THE CLERK:  We, the jury, return the following

2    Special Verdict as to the property described below, Para 1911

3    Expert .45 caliber pistol, Serial No. 000210NW.

4          We, the, jury unanimously find by a preponderance

5    of the evidence that this property was involved in and used

6    in the knowing possession of a firearm by a person who has

7    been committed to a mental institution:  Yes.

8          Signed and dated.

9          We, the jury, return the following Special Verdict

10   as to the property described below, 458 rounds of unknown

11   manufacturer and caliber ammunition.

12         We, the jury, unanimously find by a preponderance

13   of the evidence that this property was involved in and used

14   in the knowing possession of a firearm by a person who has

15   been committed to a mental institution:  Yes.

16         Signed and dated.

17         THE COURT:  Thank you, Mrs. Schroeder.

18         Ladies and Gentlemen of the Jury, let me poll you

19   at this time to make sure this was the unanimous verdict of

20   the 12 members of the jury.

21         If this was your verdict as Mrs. Schroeder has read

22   it, would you please stand?

23         (Jury stands.)

24         THE COURT:  All right.  Please be seated.

25         And let the record reflect that all 12 jurors rose

1    in response to my request to poll the jury.

2           Ladies and Gentlemen of the Jury, this does now

3    complete the trial of this case for the -- from the very

4    beginning I instructed you repeatedly about not discussing

5    the case with anyone, including among yourselves, until you

6    retire at the end of the case to deliberate, and then only to

7    discuss it among yourselves.  I am now releasing you from

8    those obligations.

9           You are free to talk about it among yourselves, you

10   are free to talk about it with your family, your friends,

11   anybody you want to.  Likewise, you are just as free to not

12   say a word to anybody about it.  It is completely your

13   decision, and what you do about that is completely up to you.

14   So you are under no obligation to discuss it, but you may do

15   so, if you want to.

16          I have a practice in my Court that I ask the jury

17   to wait in the jury room for me once I have excused you.  I

18   have some certificates I want to present to you.  And I want

19   to visit with you very briefly, not about the case, not about

20   the facts, not about your verdict, but about the process we

21   follow as a Court and your experience as jurors.

22          And it is an opportunity for you to tell me if

23   there is anything I can do to be a better Judge and if there

24   is anything that we as a Court can be a better facility and

25   do a better job for the public.  So, if you wouldn't mind

1    waiting for just a few minutes, I have to visit with the

2    attorneys and Mr. Yoo, and I would like to briefly visit with

3    you.

4          I do want to thank you on behalf of the Eastern

5    District of Texas for your dedicated service as jurors in

6    this case.  I know how much I and the parties and the

7    attorneys involved appreciate all of your time and your

8    effort and attention throughout the course of the trial.

9          This is an important case to both parties, and I

10   say this regularly and I believe it more and more in every

11   trial that I have, I think there are three good pillars to

12   citizenship in America:  The first is answering the call of

13   military service when your nation calls you and needs you.

14   The second is jury service.  And the third, of course, is

15   being an active and informed voter.

16         You have clearly all responded to the call of good

17   citizens by serving as jurors in this case.

18         Our Constitution and, in particular, our Sixth

19   Amendment really depends on our having active citizens

20   willing to participate as jurors.

21         So I can't tell you how important this service is

22   to the Court and how much we appreciate it.

23         So thank you on behalf of the parties, the

24   attorneys involved in the case and the Eastern District of

25   Texas for your service in this matter.

1           You are dismissed.

2           COURT SECURITY OFFICER:  All rise.

3           (Jury out.)

4           THE COURT:  Okay.  Please be seated.

5           The Special Verdict Forms on the forfeiture matter

6   are confirmed and accepted and will be filed by the Clerk of

7   the Court.

8           Mr. Yoo, if you would, please rise.

9           Mr. Yoo, you have been found guilty by the jury.

10  And prior to the Court imposing a sentence, the Probation

11  Department must complete a presentence investigation for

12  which your cooperation will be needed.  And I encourage you

13  to cooperate with them in every way possible during that

14  process.

15          When you receive a copy of the Presentence Report,

16  you will have an opportunity to review that and thoroughly

17  discuss it with anyone you wish, including Mr. Haas or anyone

18  else who is providing advice to you.  And there will be a

19  time limit in which you will need to make objections to that

20  report, and you will have an opportunity to address the Court

21  at the sentencing hearing.

22          With respect to your request that a transcript be

23  prepared, I know that Ms. Sloan will be preparing it.  I

24  would ask that you file a motion.  I do know on the docket

25  you did comply with my request to complete your in forma

1    pauperis form, but I have not taken a look at that yet.

2         I think there is some question about whether you

3    are entitled to that status and that, of course, will govern

4    whether that request for the transcript be made at the

5    Government's expense or your own.

6         So let me suggest that you file a motion in that

7    regard, and we will take it up as quickly as we can.

8         Anything else that needs to be addressed?

9         MR. YOO:  In terms of sentencing, how long -- how

10   long is it going to take?

11        THE COURT:  Well, Mr. Yoo, I am not going to make

12   any promises in this regard.  And maybe Mr. Coan has had a

13   different experience, but my experience is it is generally

14   about 90 days, either 90 days from the time a Defendant

15   enters a guilty plea or 90 days from the time a jury returns

16   a guilty verdict.  It is certainly somewhere in that

17   neighborhood.

18        MR. YOO:  I request a prompt disposition.

19        THE COURT:  Well, I can assure you that I promptly

20   set scheduling -- set sentencing hearings as quickly as we

21   can.  There are oftentimes motions for extension of time to

22   file objections to the Presentence Report, and I honor those

23   when there are reasonable requests for extensions.

24        But assuming there are no requests for extension

25   like that and the initial draft of the Presentence Report is

1   provided and the objections are timely filed, once the

2   objection period has tolled and the Probation Office has made

3   a recommendation on how those objections will be dealt with,

4   there will be a final Presentence Investigation Report, and

5   it is that filing of the final Presentence Investigation

6   Report that really will kick off our scheduling of the

7   sentence -- sentencing hearing.

8          In general, we try to set them very quickly after

9   we receive the final PSR.

10         MR. YOO:  Yes, sir.  One more thing.  In terms of

11  my phone restriction, I would like -- like -- like the Court

12  to issue an order to Gregg County Jail to allow me to use the

13  phone for the purposes of legal calls for appeal.

14         THE COURT:  I am not going to do that at this time.

15  We are a ways away from that.  I am not giving you legal

16  advice about how to file your notice of appeal, but until you

17  are actually sentenced, I think any appeal you might file

18  would be premature.  I don't know whether you have had an

19  opportunity to visit with Mr. Haas about this, but I am sure

20  he will do his best to explain the appeal process to you.

21         So I don't think there is -- I don't think you are

22  going to need to do any work on the appeal right away until

23  after the sentencing has occurred, so --

24         MR. YOO:  Yes, sir.

25         THE COURT:  I did ask that the Marshals make a

1   request to the Gregg County authorities to lift those

2   restrictions so that you could prepare for trial.  Having

3   done that, I am certainly not going to dictate to them how

4   they handle their decisions in that regard.

5           MR. YOO:  Yes, sir.  Also I would like a copy of

6   every single thing on my docket.

7           THE COURT:  Mr. Yoo, sir, you represent yourself in

8   this.  Mr. Haas has performed as Standby Counsel.  One of the

9   things that I asked Mr. Haas to do was to facilitate getting

10  you anything you needed.  You are certainly welcome to get

11  copies in that -- in that -- in that regard.

12          MR. YOO:  And one last question, when -- when do

13  you plan to rule on motion for judgment of acquittal based on

14  statutes?

15          THE COURT:  Well, again, I am going to look at the

16  argument that has been made by you.  I have several times

17  noted in the record that I expect a written motion to be

18  filed.  I have been told one is coming.  And when it gets

19  filed, the Government will promptly file its response, which

20  I have been provided a copy of.

21          As soon as that happens, I will decide whether I

22  can handle that without a hearing.  My anticipation is that I

23  will be able to do so based on the argument that you

24  presented already and the written motion when it is filed.

25          I will also give you an opportunity obviously to

1  file any reply that you want to.  I am not sure that is

2  necessary since you have already seen a copy of the response,

3  but I will permit you to file a reply.

4         MR. YOO:  Yes, sir.  So you want the -- so I am

5  guessing the motion is already filed -- filed orally, but you

6  want -- you prefer reply to be filed through written and

7  submitted.  Correct, Your Honor?

8         THE COURT:  I think that is the agreement that we

9  had all reached late yesterday and again today in terms of

10  what the parties' desires were.  And if I have misstated

11  that, I would like to be corrected by either party at this

12  time.

13         MR. YOO:  All right.  That's fine.

14         MR. HAAS:  Now, Judge, if I may say something.

15  That is exactly what you did say.  I handed a signed motion

16  by Mr. Yoo.  He said, I will file it.  I handed it to him and

17  I certainly know he knows how to file motions.  So I

18  anticipate he can do that.

19         MR. YOO:  It is -- I have to file it 14 days

20  after --

21         MR. HAAS:  No, you file it as quick as you can.

22         MR. YOO:  I mean, like at maximum 14 days.

23         MR. HAAS:  Just file it as quick as you can.

24         THE COURT:  Okay.  Anything further?

25         MR. COAN:  No, Your Honor, thank you.

1          THE COURT:  All right.  The Defendant is remanded

2     into the custody of the United States Marshal.  Pending

3     preparation of the Presentence Report, will be again

4     delivered to this Court for the purposes of sentencing.

5          COURT SECURITY OFFICER:  All rise.

6          (Jury trial concluded.)

7

8

9                          CERTIFICATION

10

11          I HEREBY CERTIFY that the foregoing is a true

12    and correct transcript from the stenographic notes of the

13    proceedings in the above-entitled matter to the best of my

14    ability.

15

16    /s/ Shea Sloan _____                January 21, 2019
      SHEA SLOAN, CSR, RPR
17    Official Court Reporter
      State of Texas No.:  3081
18    Expiration Date:  7/31/20

19

20

21

22

23

24

25